Nicole C. Pearson (265350)
Email: nicole@fltjllp.com
LAW OFFICES OF NICOLE C. PEARSON
3421 Via Oporto, Suite 201
Newport Beach, CA 92663
Telephone: (424) 272-5526

Michael A. Yoder* (DC Bar No. 1600519)
Email: myoder@yoderlaveglia.com
YODER LAVEGLIA LLP
2001 L St NW, Suite 500
Washington, D.C. 20036
Telephone: (202) 875-2799
*pro hac vice forthcoming

Counsel for Plaintiff Katie Cappuccio

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATIE CAPPUCCIO,<br><br>    *Plaintiff,*<br><br>v.<br><br>CALIFORNIA STATE UNIVERSITY, FULLERTON,<br><br>    *Defendant.* | No.  8:23-cv-02026<br><br>1. Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.X. § 2oooe, *et seq.*)<br>2. Violation of the California Fair Employment and Housing Act (Cal. Gov't Code § 12940, *et seq.*)<br>3. Violation of the First Amendment to the U.S. Constitution<br>4. Violation of Article I of the California Constitution<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Katie Cappuccio files this Complaint for declaratory and injunctive relief and monetary damages against Defendant California State University, Fullerton ("CSUF" or "Defendant") pursuant to pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq*.) ("Title VII"), the California Fair Employment and Housing Act (Cal. Gov't Code § 12940, *et seq*.) ("FEHA"), the First Amendment to the U.S. Constitution, and Article I of the California Constitution, and in further support thereof, Plaintiff alleges as follows:

## **NATURE OF THE CASE**

This case involves a paradigmatic violation of legal protections for religious freedom and accommodation in the public workplace. Plaintiff is a Christian who has spent more than a decade serving and protecting CSUF, its students, and its community. As a woman of faith, Plaintiff lives by and adheres to the teachings of the Christian church require her to preserve and protect the sanctity of life and maintain a pure body in the image in which God created her. There is perhaps no greater example as to the sincerity with which one believes in the sanctity of life than the willingness to risk one's own life to save another—yet that is precisely what Plaintiff has done—and would still be doing—had CSUF not violated Plaintiff's federally protected right to be free from discrimination and retaliation in the workplace.

Specifically, a state-employer, Defendant University of California, Fullerton ("CSUF") terminated Plaintiff's employment simply because Plaintiff requested, and CSUF administration granted, a religious exemption to the COVID-19 Interim Policy (the "policy") CSUF's University Police Department ("UPD") was enforcing. On August 2, 2021, Plaintiff explained to CSUF that her sincerely held religious beliefs prohibit her from complying with the policy (as explained in more detail below).

On August 13, 2021, CSUF approved her request and Plaintiff was exempted from the policy. But this upset a few CSUF employees, including David Forgues, CSUF's Director of Human Resources, Diversity, and Inclusion ("Mr. Forgues"), and Michelle

Tapper, Head of CSUF's Labor Relations ("Ms. Tapper"), who set out to "make an example" out of Plaintiff because her sincerely held religious beliefs conflicted with their policy-based preferences and desire for CSUF to boast a 100% faculty/staff vaccination statistic.

Despite being exempted from the policy, Plaintiff began receiving generic emails from her supervisor, Lieutenant Mullaney, on August 19, 2021, advising that an unknown number of UPD officers had not yet uploaded vaccine and/or testing records to the Titan Health Portal ("THP"). Lt. Mullaney further stated that officers who failed to upload their records or results immediately would be subjected to adverse employment action. Problematic, however, is that the database from which the list of email recipients had been pulled did not include datapoints indicating why a given officer had not yet uploaded the records or results, nor did it indicate whether an officer such as Plaintiff had been exempt from the policy. It simply included information as to whether UPD officer had uploaded records or results or not.

Plaintiff, who had been working in-person and alongside Lt. Mullaney each week regarding UPD recruitment events and activities since August 2, 2021[1] and not once did Lt. Mullaney mention anything about Plaintiff's alleged non-compliance with the policy despite being with her, in-person. Plaintiff also received a $600 performance bonus for her exceptional work in September 2021, which she of course would not have received if she had violated any rules or otherwise engaged in unprofessional conduct or failed to perform her duties as a police officer. Based on these two factors, coupled with the approved policy exemption, Plaintiff had no reason to think or believe she was an intended recipient of the emails[2] directing her to comply with the policy.

On November 4, 2021, Plaintiff received another generic email from Lt. Mullaney; only this time, the generic email included a Letter of Reprimand ("LOR") for "failing to

---

[1] Plaintiff continued to work alongside Lt. Mullaney until November 2, 2021.

[2] Plaintiff received two additional generic emails, bringing the total to three emails, which were sent on August 19, September 22, and October 12, respectively.

comply" with the policy. For the same reasons as stated above, Plaintiff again, reasonably believed that the LOR was sent to her due to the administrative error and lack of datapoints delineating which officers were not compliant and which offers were exempt. Plainitff also was further led to believe and had no reason to doubt this was the case as under UPD protocol, officers who receive LORs are also provided hard copies thereafter. But Plaintiff never received a hard copy of the LOR, she was never asked to sign it, no follow up concerning the LOR and its required signature of acknowledgment took place, and Plaintiff was never involved in any discussions, conversations, meetings, or subjected to any questioning concerning the LOR she reasonably believed was sent due to administrative error.

Then, on December 15, 2021, Plaintiff's union representative sent her and an unknown number of other UPD officers in the union an email informing them that CSUF had contacted the union and stated that UPD would be issuing LORs to officers who had failed to comply with the policy and the emails Lt. Mullaney sent in regard to the same. Due to the fact that the email came from her union representative and not Lt. Mullaney, Plaintiff reached out to her representative just confirm that she was an unintended recipient.

The union representative's response blindsided Plaintiff. For the first time, Plaintiff learned that Mr. Forgues and Ms. Tapper had been singling her out, by name, as the most egregious offender of the policy because she had not uploaded "any" records or test results to the Titan Health Portal ("THP"). It was during this conversation that Plaintiff learned Mr. Forgues and Ms. Tapper wanted to "make an example" out of Plaintiff.

To cure for the discriminatory animus Mr. Forgues and Ms. Tapper held against her, Plaintiff sought to bolster her policy exemption and submitted additional documentation to her THP account to reiterate that her initial exemption request pertained to the entire policy, not merely a provision or two within it and in accordance with the very language included on the exemption request forms that explicitly stated: "I am requesting a religious

accommodation from the CSU's COVID-19 Vaccination Interim **Policy**." (emphasis added).

On January 3, 2022, Plaintiff's THP account verified the additional supporting documentation she had submitted on December 17 and 27, respectively, reaffirming that Plaintiff had indeed, been exempt from the entire policy. But it did not matter to CSUF, as its discriminatory animus towards Plaintiff due to her religion and sincerely held religious beliefs caused it to abjectly disregard the state and federal protections for religious persons to be free from discrimination, to be reasonably accommodated, and to be free of retaliation brought about by engagement in protected activity in the workplace.

On or about January 18, 2022, Plaintiff received a Notice of Proposed Removal—and unsurprisingly, Mr. Forgues and Ms. Tapper were the parties who caused it to be issued. On February 4, 2022, Plaintiff attended her Skelly hearing in regard to the Notice of Proposed Removal. Despite overwhelming evidence that she had obtained and received a policy exemption, CSUF nevertheless ignored this fact, placed Plaintiff on administrative leave for one week, and terminated her employment on February 4, 2022, effective immediately.

As a result, this action follows as it is well-established Title VII and FEHA broadly forbid employers (such as CSUF) from terminating an employee's (such as Plaintiff) employment because of the employees' sincerely held religious beliefs. What's more, in the face of a conflict between those beliefs and a job requirement, both Title VII and FEHA required CSUF at all times relevant to accommodate Plaintiff's beliefs absent proof of an undue hardship.

And in situations where the employer is a governmental entity as is the case here, the Free Exercise Clause of the First Amendment to the United States Constitution and Article I, Section 4 of the California Constitution further forbid a public employer from substantially burdening an employee's religious exercise absent a constitutionally valid defense.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

These broad protections notwithstanding, after Plaintiff requested and received an approved accommodation—an exemption to the policy—CSUF nevertheless insisted that she violate her sincerely held religious beliefs in order to maintain her employment.  And perhaps most egregious of all, Plaintiff was not the only USD officer who had not complied—but she *was* the only officer who was terminated. For these reasons and others detailed below, Plaintiff seeks a declaratory judgment, equitable relief, and damages to vindicate her constitutional and statutory rights.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

1.      On February 11, 2022, CSUF terminated Plaintiff's employment.

2.      Less than 300 days later, on November 14, 2022, Plaintiff filed a formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging CSUF discriminated against her on the basis of her religion and for retaliating against her for engaging in protected activity.

3.      On August 1, 2023, the EEOC issued Plaintiff a Notice of Right to Sue ("right-to-sue letter") in regard to the aforesaid Charge.

4.      Plaintiff also filed a charge with the California Civil Rights Department (formerly, Department of Fair Employment and Housing) and received a right-to-sue letter within the relevant time permitted to do so.

5.      As such, Plaintiff has exhausted all administrative remedies and complied with all conditions precedent to maintaining this action, in that Plaintiff filed her formal Charge of Discrimination with the EEOC within 300 days of the last date of discrimination, and she hereby initiates this action on October 30, 2023, which is within ninety (90) days of the date on which Plaintiff received her right-to-sue letter from the EEOC and within three years of the last date of discrimination committed against her, as required by FEHA.

## JURISDICTION & VENUE

6.     This action arises under 42 U.S.C. § 2000e-2 and therefore, jurisdiction is proper pursuant to 28 U.S.C. § 1331 because this claim is a civil action arising under the laws of the United States.

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States.

8.     This court has supplemental jurisdiction over Plaintiff's FEHA claim pursuant to 28 U.S.C. § 1367 as the facts are so closely related as to satisfy the Article III "same case or controversy" requirement.

9.     This Court also has jurisdiction over this action pursuant to 42 U.S.C. § 1983 as this action raises challenges alleging the deprivation of federal constitutional rights.

10.     This Court also has jurisdiction over this action pursuant to 42 U.S.C. § 1343(a)(4) because it is an action to recover damages or to secure equitable or other relief under an Act of Congress providing for the protection of civil rights

11.     Venue is proper in this district under 28 U.S.C. § 1391(b) & (c) and 42 U.S.C. § 2000e-5(f)(3), in that CSUF is a state government entity that maintains a principal place of business in this district and because the events described herein occurred within the District unless otherwise expressly stated.

12.     This Court is also authorized to grant Plaintiff's prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

## **PARTIES**

13.     Katie Cappuccio ("Plaintiff") is an adult resident of the State of California, and at all times relevant to this action, CSUF employed as a Plaintiff police officer until it unlawfully terminated her employment on or about February 11, 2022.

14.     Defendant California State University, Fullerton ("CSUF") is a public governmental entity within the State of California and an educational institution and recipient of federal financial assistance that employs more than 100 persons, thereby subjecting it to the anti-discrimination laws and provisions set forth under Title VII,

including Title VII's prohibition against workplace discrimination on the basis of religion and its requirement that covered employers (such as CSUF) reasonably accommodate its employees' (such as Plaintiff) sincerely held religious beliefs unless doing so would impose upon it an undue hardship.

## FACTUAL BACKGROUND

### I.  Overview & Plaintiff's Sincerely Held Religious Beliefs

15.    On or about July 13, 2011, CSUF hired Plaintiff and formed and employer-employee relationship with her.

16.    At the time CSUF hired Plaintiff, it did not have any COVID-19 policies.

17.    In late July 2021, CSUF advised Plaintiff that it now required its employees to become vaccinated against COVID-19 as a condition of continued employment.

18.    Under CSUF's newly promulgated COVID-19 policy, CSUF demanded its employees become "fully vaccinated" against COVID-19 or else CSUF would terminate their employment. Alternatively, CSUF employees could request an exemption to the policy based on their sincerely held religious beliefs.

19.    Plaintiff then requested a policy exemption on August 2, 2021, and CSUF granted her request on August 13, 2021, thereby exempting her from the entire *policy*, inclusive of all its provisions.

20.    In demonstrating her entitlement to the policy exemption, Plaintiff informed and otherwise placed CSUF on notice that she is a Christian and a Child of God who sincerely believes in the Bible. Plaintiff advised CSUF that the Bible and Church teachings inform her sincerely held religious beliefs, which *inter alia* require her to keep her body pure as her body is a temple of God and that the Holy Spirit lives within her. (1 Corinthians 6:19).

21.    Plaintiff also placed CSUF on notice that she holds the sincere religious belief that she must uphold, protect, and preserve the sanctity of life, which includes not only

maintaining the sanctity of her blood and body and maintain it in pure form, but also, life in and of itself. As a police officer, Plaintiff has demonstrated that this belief as she has dedicated her entire career to protecting the sanctity of life. Plaintiff also placed CSUF on notice that life necessarily includes all lives, including the unborn, and she explained that it is her sincere religious belief that abortion constitutes a sin as the Bible makes clear "Thou Shall Not Murder."

22.    Based on her sincerely held religious belief that she must maintain her body and blood in pure form as God created her and because the Holy Spirit resides within her, Plaintiff placed CSUF on notice that she sincerely believes it is a sin to seek medical intervention or undergo medical procedures[3] when she is not sick.

23.    Based on her sincerely held religious belief that she must protect and preserve the sanctity of life and that abortion constitutes a sin, Plaintiff placed CSUF on notice that she sincerely believes it is a sin to receive any of the COVID-19 vaccines because all such products were made, created, derived, produced, and otherwise could not exist but-for the use of aborted fetal cell line tissue.

24.    Plaintiff advised CSUF that she holds the sincere religious belief that acting contrary to these beliefs constitutes a sin that could impact her relationship with the Lord and her ability to ultimately go to Heaven and reside in a place with God.

25.    As of August 13, 2021, Plaintiff was exempt from the COVID-19 Vaccination Interim Policy, and all provisions included therein, inclusive of its testing-related provisions.

## II.  First Instance of Discrimination & Blatant Disregard of Accommodation

26.    Despite receiving a policy exemption, Plaintiff received an email just six days later regarding mandatory compliance with the testing provisions of the policy. Specifically, Plaintiff's supervisor, Lieutenant Mullaney, sent a generic email on August 19, 2021 to an undisclosed number of UPD officers who had not been marked in the system

---

[3] The term "medical procedures" includes, without limitation: injections, tests, treatments and other care administered by someone other than Plaintiff herself.

as having submitted test results. In his email, Lieutenant Mullaney directed the officers to comply or otherwise they would be subject to discipline. Lieutenant Mullaney sent two more generic emails of the same "comply or be punished" nature on September 22 and October 12, respectively.

27.     Of course, Plaintiff was exempt so therefore, she had no reason to believe she was an intended recipient. This was further corroborated by the fact that notwithstanding having already received the exemption, Plaintiff worked directly alongside Lieutenant Mullaney at UPD recruitment activities from August 4, 2021, through November 2, 2021, —and not once during this time was any alleged non-compliance issue raised or discussed.

28.     Moreover, Plaintiff received a monetary performance bonus in September of 2021 for her "Exceptional Performance" and this bonus was awarded after already having received an email regarding her alleged "non-compliance."

29.     Based the bonus she earned and Lieutenant Mullaney's silence on the issue, and most significant, the fact that Plaintiff had received an exemption to the policy, Plaintiff had no reason to think that she was an intended recipient of the emails directing her to comply with the policy to which she had been exempted.

30.     On November 4, 2021, Plaintiff again received an email from Lieutenant Mullaney regarding the policy; only this time, a Letter of Reprimand ("LOR") for not complying with the very policy to which she had been exempted was attached. But in similar fashion as before, Plaintiff had no reason to believe she was the intended recipient, and the letter was issued as an administrative error. Lieutenant Mullaney never provided Plaintiff with a hard copy of the LOR, followed up with a request for her to sign it, nor did he ever meet with her to discuss, counsel, or question her.

31.     Moreover, the LOR stated in pertinent part:

> Effective immediately, you are expected to comply with the following: A. You will immediately schedule an appointment and complete testing through the University's testing program this week."

But as stated above, Plaintiff certainly was not required to do this as not only was she exempt from the entire policy; Plaintiff specifically articulated her sincerely held religious beliefs conflicted with the vaccination provisions as well as the testing provisions of the policy as her sincere religious beliefs prohibited her from undergoing medical procedures when she was not sick.

32.     In sum, Plaintiff had no reason to think the LOR was anything other than an inadvertent generic email sent to a list of recipients and Lieutenant Mullaney accidentally included Plaintiff.

33.     Plaintiff did not receive any further emails from Lieutenant Mullaney on the matter.

34.     On December 15, 2021, Plaintiff's union representative, Matt Verhulst of the State University Police Association ("SUPA") sent out a union-wide email advising that some of its CSUF members would be receiving LORs for noncompliance with the testing provisions of the policy.

35.     Mr. Verhulst also advised that Mr. Forgues and Ms. Tapper singled out Plaintiff and that he believed that CSUF wanted to "make an example out of" Plaintiff because of her exemption. And Mr. Verhulst was right.

36.     On or about January 18, 2022, CSUF retaliated against Plaintiff because she obtained an exemption and issued her a Notice of Pending Disciplinary Action.

37.     The Notice of Pending Disciplinary Action alleged that Plaintiff had violated Education Code § 89535(b) – for allegedly engaging in "unprofessional conduct" and that she had violated Education Code § 89535(f) by allegedly "fail[ing] or refus[ing] to perform the normal and reasonable duties of [her] position." But this is untrue, as made clear based on not only her exemption, bonus award, and continued performance at or in excess of CSUF's reasonable expectations, but also, the findings from own Skelly hearing—as conceded by CSUF Chief of Police, Carlos Velez, make clear Plaintiff did not violate any policies or rules.

38.     In his memorandum, Mr. Velez stated or otherwise validated the fact that Plaintiff had obtained an exemption but CSUF "was against" adhering to federal law and its protections against religious discrimination.

39.     Due to the pressure from CSUF and its desire to make an example out of Plaintiff, Mr. Velez found that Plaintiff allegedly "violated Education Code § 89535(b)" and engaged in "unprofessional conduct" based on the fact that Plaintiff adhered to her sincerely held religious beliefs and obtained an exemption.

40.     CSUF cannot assert that Plaintiff engaged in unprofessional conduct because it issued her an exemption to its own policy.

41.     CSUF cannot assert that Plaintiff engaged in unprofessional conduct because CSUF refused to accept Plaintiff's sincerely held religious beliefs and honor its exemption to which Plaintiff was lawfully entitled.

42.     CSUF cannot assert that Plaintiff engaged in unprofessional conduct because she exercised her Free Exercise right and her right to be free from workplace discrimination on the basis of her religion.

43.     Plaintiff did not engage in "unprofessional conduct" by practicing her Christian faith, by being a Christian, by abiding by her sincerely held religious beliefs, and/or by exercising her constitutionally and federally protected rights to request—and receive—an exemption to a policy that conflicted with her beliefs.

44.     Mr. Velez also stated that Plaintiff "violated Education Code § 89535(f)" by "fail[ing] or refus[ing] to perform the reasonable duties of [her] position" and he reached this decision based on Plaintiff's adherence to her sincerely held religious beliefs and because she obtained an exemption to the policy.

45.     CSUF cannot assert that Plaintiff "failed to perform the reasonable duties of a [police officer]" based upon CSUF's violation federal law and refusal to accommodate Plaintiff when it knew Plaintiff's sincerely held religious beliefs conflicted with the policy and when CSUF knew it had granted her an exemption.

46.     CSUF cannot assert that Plaintiff "failed to perform the reasonable duties of a [police officer]" based upon CSUF's refusal to accept the exemption Plaintiff received.

47.     CSUF cannot assert that Plaintiff "failed to perform the reasonable duties of a [police officer]" based upon CSUF's infringement on Plaintiff's Free Exercise right and her right to be free from workplace discrimination on the basis of her religion.

48.     Plaintiff did not "fail[ ] to perform the reasonable duties of a [police officer]" by practicing her Christian faith, by being a Christian, by abiding by her sincerely held religious beliefs, and/or by exercising her constitutionally and federally protected rights to request—and receive—an exemption to the policy.

49.     Plaintiff did not "fail[ ] to perform the reasonable duties of a [police officer]" because the position of a police officer does not include a duty to abandon one's Christian faith, refrain from being a Christian, cease adhering to one's sincerely held religious beliefs, and/or refuse to exercise one's constitutionally and federally protected rights to request—and receive— an exemption to the policy.

### III.    Skelly Hearing Regarding Plaintiff's Notice of Proposed Removal

50.     During her Skelly hearing on February 4, 2022, Plaintiff again explained to CSUF her sincerely held religious beliefs, the conflict that existed between her sincerely held religious beliefs and the policy, the means by which CSUF could accommodate her, and explained that despite having received an exemption to the policy, Plaintiff was willing to endulge CSUF and partake in self-administered testing, which is in line with the self-administered test kits CSUF provided other officers over the 2021-2022 winter break.

51.     Due to the fact that the tests were self-administered, Plaintiff was not violating her sincerely held religious beliefs because she was not undergoing a medical procedure but rather, was self-administering a diagnostic test.

52.     Permitting Plaintiff to maintain her job while being accommodated through the self-diagnostic testing would not impose any undue hardship on CSUF.

53.     Plaintiff attempted to compromise and requested a religious accommodation based on the aforesaid.

54.     CSUF responded by placing Plaintiff on administrative leave and thereafter, terminating her employment.

55.     Perhaps worst of all, Plaintiff is not the only USD officer who was in an identical situation. Plaintiff's colleague, Courtney Hoetker, also had not tested but Ms. Hoetker was *not* terminated.

56.     As shown below, Plaintiff was fired for not testing, but Ms. Hoetker remains employed by CSUF to this day:

| Week of: | Cappuccio | Hoetker |
|---|---|---|
| August 9, 2021 | Did Not Test | Did Not Test |
| August 16, 2021 | Did Not Test | Did Not Test |
| August 23, 2021 | Did Not Test | Did Not Test |
| August 30, 2021 | Did Not Test | Did Not Test |
| September 6, 2021 | Did Not Test | Did Not Test |
| September 13, 2021 | Did Not Test | Did Not Test |
| September 20, 2021 | Did Not Test | Did Not Test |
| September 27, 2021 | **Not Required to Test** | Did Not Test |
| October 4, 2021 | Did Not Test | Did Not Test |
| October 11, 2021 | Did Not Test | Did Not Test |
| October 18, 2021 | Did Not Test | Did Not Test |
| October 25, 2021 | Did Not Test | Did Not Test |
| November 1, 2021 | Did Not Test | Did Not Test |
| November 8, 2021 | Did Not Test | **Tested on Campus** |
| November 15, 2021 | Did Not Test | Did Not Test |
| November 22, 2021 | Did Not Test | Did Not Test |
| November 29, 2021 | Did Not Test | Did Not Test |
| December 6, 2021 | Did Not Test | Did Not Test |
| December 13, 2021 | Did Not Test | Did Not Test |
| December 20, 2021 | **Not Required to Test** | Did Not Test |
| December 27, 2021 | **Self-Testing at Home** | **Self-Testing at Home** |
| January 3, 2022 | Did Not Test | **Self-Testing at Home\*** |
| January 10, 2022 | Did Not Test | *EXEMPT* |
| January 17, 2022 | **Self-Testing at Home\*** | *EXEMPT* |
| January 24, 2022 | *EXEMPT* | *EXEMPT* |
| January 31, 2022 | *EXEMPT* | *EXEMPT* |
| February 7, 2022 | *EXEMPT* | *EXEMPT* |
| February 14, 2022 | **__TERMINATED__** | *EXEMPT* |

57.    As a CSUF employee, Ms. Hoetker, a CSUF Police Dispatcher, was subject to Presidential Directive 22 just as Plaintiff was. Similarly, as a university employee, Ms. Hoetker was subject to the CSU's Interim Vaccination Policy just as Plaintiff was.

58.    As a Police Department employee, Ms. Hoetker was subject to the California Department of Public Health Order just as Plaintiff was.

59.    Despite being in different collective bargaining units, both Ms. Hoetker's union, CSUEU, and Plaintiff union, SUPA, adopted nearly identical Memorandums of Understanding ("MOU") related to the COVID-19 Employee Testing Program.

60.    Neither MOU specified the type of COVID-19 tests to be administered, identified any discipline or consequences for not consenting to testing, or contained any prohibitive language regarding members seeking a religious accommodation.

61.    Like Plaintiff, Hoetker submitted two requests for a religious accommodation to the COVID-19 vaccine and COVID-19 testing—one in August 2021 and one in December 2021.

62.    Like Plaintiff, Hoetker received three (3) generic email notifications from Lieutenant Mullaney prior to receiving a Letter of Reprimand. Like Plaintiff, Hoetker did not participate in "weekly" COVID-19 testing from August 9, 2021 to November 7, 2021—a total of thirteen (13) weeks of "non-compliance."

63.    Following the one and only on-campus test Hoetker consented to on November 8, 2021, she did not participate in "weekly" COVID-19 testing for an additional six (6) weeks, from November 9, 2021 to December 30, 2021.

64.    Like Plaintiff, Hoetker performed a self-administered at-home test on December 31, 2021.

65.     The following week, on January 8, 2022, Hoetker performed a self-administered at-home test and tested positive for COVID-19; she was subsequently exempt from testing until April 8, 2022.

66.     Just two weeks later, on January 21, 2022, Plaintiff also performed a self-administered at-home test and tested positive for COVID-19; Plaintiff was subsequently exempt from testing until April 21, 2022.

67.     However, Plaintiff—*unlike Ms. Hoetker*—was terminated on February 11, 2022 after being placed on administrative leave for a week. Ms. Hoetker was not placed on administrative leave, nor was she terminated.

68.     No "evidence" existed that demonstrated any violation of the Education Code because the Education Code does not prohibit engaging in constitutionally and/or federally protected conduct.

69.     To the extent the Education Code does prohibit engaging in constitutionally and/or federally protected conduct, the Education Code's provisions prohibiting such constitutionally and/or federally protected conduct are unlawful pursuant to the Supremacy Clause and preemption doctrine.

## FIRST CLAIM FOR RELIEF
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### Disparate Treatment/Failure to Accommodate on the Basis of Religion
### (42 U.S.C. § 2000e, *et seq.*)

70.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

71.     Plaintiff sincerely holds religious beliefs and is a member of a protected class based on her religion.

72.     Plaintiff is an employee within the meaning of Title VII.

73.     CSUF is an employer within the meaning of Title VII.

74.     Title VII forbids an employer from terminating an employee because of her need for religious accommodation, absent proof that granting the accommodation would

cause it undue hardship. *Groff v. DeJoy, Postmaster General*, Slip Op. No 22-174, p. 3, n. 1 (June 29, 2023); *see also* 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1); E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 774 (2015).

75.    This extension of actionable religious discrimination to include a failure to accommodate derives from Title VII's definition of "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that she is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

76.    Here, Plaintiff advised CSUF of her sincerely held religious beliefs and that she sincerely believes abortion is a sin and as a result, she cannot in good faith or conscience knowingly inject a substance (i.e., any of the available COVID-19 vaccines) into her body that she knows was derived and/or created through the use of aborted fetal cell line tissue.

77.    Plaintiff also advised CSUF of her sincerely held religious beliefs and that she sincerely believes her body is a temple and that fundamental teachings of her Christian faith instruct her to *inter alia* refrain from injecting substances into her body that were created, derived, manufactured, or developed through processes that use aborted fetal cell line tissue.

78.    Plaintiff also advised CSUF of her sincerely held religious beliefs and that because she sincerely believes her body is a temple and the Holy Spirit resides within her, Plaintiff must keep her body and blood pure, and that she must refrain from any medical procedures when she is not sick as medical procedures like vaccinations, injections, swabs, testing, and other practices unnecessarily taint her blood and body, whether inadvertently, residually, or purposefully.

79.    Plaintiff also advised CSUF of her sincerely held religious beliefs and that she sincerely believes that her body is not to be altered in any way other than through means

by which God created or when necessary due to sickness or illness, through scientifically proven, safe, and effective manmade and necessary medical intervention.

80.     Plaintiff also advised CSUF of her sincerely held religious beliefs and that she sincerely believes that consuming or knowingly injecting anything into her body that God did not create would constitute a sin and could prevent her ability from one day, going to Heaven and sharing that Place with God.

81.     Plaintiff informed CSUF of this conflict and expressly sought an accommodation by and through CSUF's exemption policy.

82.     CSUF had actual knowledge of Plaintiff's sincerely held religious beliefs based on the correspondences exchanged concerning her exemption to the policy and its approval of her exemption, as well as e-mails concerning her request for an accommodation and Plaintiff's termination.

83.     At all times relevant, Plaintiff was qualified, is qualified, and remains qualified to perform the essential functions of her job, with or without an accommodation. This is demonstrated by her 12-year history serving CSUF, her recognition from Governor Newsom, her bonus for exceptional performance, and her selection to assist with recruitment alongside Lieutenant Mullaney.

84.     Because of her need for an accommodation due to her sincerely held religious beliefs, CSUF took adverse employment action against Plaintiff by *inter alia* terminating her employment. *See* 42 U.S.C. § 2000e-2(a)(1) (actionable adverse actions includes "discharg[ing]," an employee or otherwise discriminating with respect to the "terms" and "conditions" of employment).

85.     Because Plaintiff requested an accommodation for her sincerely held religious beliefs, CSUF took adverse employment action against her and *inter alia* terminated her employment. See 42 U.S.C. § 2000e-2(a)(1) (actionable adverse actions includes "discharg[ing]," an employee or otherwise discriminating with respect to the "terms" and "conditions" of employment).

86.   CSUF made no efforts at all to respect Plaintiff's sincerely held religious beliefs despite granting her an exemption which, as it turns out, was nothing more than an empty promise and an illusory offering.

87.   CSUG, at all times relevant, knew of the conflict that existed between her sincerely held religious beliefs and CSUF's policy and knew it could accommodate her, which it appeared to do on paper, only to then turn around and fire her for obtaining an exemption to the policy.

88.   After refusing to make any efforts at all to accommodate Plaintiff's sincerely held religious beliefs, CSUF terminated Plaintiff's employment because of the aforesaid conflict, because of her religion, because of her enjoyment of her Free Exercise right, because she opposed the unlawful discriminatory practices complained of herein, including CSUF's refusal to honor her exemption and its disparate treatment of her when compared to the manner in which CSUF treated Ms. Hoetker. CSUF knew Plaintiff sincerely held and sincerely believed the above-mentioned religious beliefs at all times relevant, including at the time she submitted her exemption request.

89.   CSUF knew Plaintiff sincerely held and sincerely believed the above-mentioned religious beliefs at all times relevant.

90.   CSUF knew of the above-mentioned religious beliefs prior to refusing to honor Plaintiff's policy exemption and prior terminating her employment.

91.   The above-mentioned religious beliefs are not personal preferences but rather, as stated in her religious accommodation request and subsequent appeal regarding the denial of her religious accommodation request, Plaintiff informed CSUF that she is required to adhere to her religion and sincerely held religious beliefs and that she is prohibited from complying with the policy.

92.   Plaintiff did not "choose" or otherwise have a choice as to whether she complied with the policy. Plaintiff's Christian faith and sincerely held religious beliefs required her to seek an exemption, which she obtained.

93.    Plaintiff's aforesaid sincerely held religious beliefs do no need to be acceptable, logical, consistent or comprehensible to others, including CSUF in order to give rise to her entitlement to a reasonable accommodation and to trigger CSUF's obligation to provide her a reasonable accommodation.

94.    Plaintiff's Christian faith requires her to refrain from medical procedures unless she is sick and abstain from receiving any of the COVID-19 vaccines.

95.    CSUF permitted Plaintiff to be exempt from its policy, and that policy exemption served as an accommodation; however, CSUF refused to act accordingly to the exemption it granted Plaintiff.

96.    CSUF permitted Plaintiff to work without testing or vaccination for more than a year, including at all times the COVID-19 pandemic reached its highest threat levels, and Plaintiff did so without issue. In fact, Plaintiff is a decorated officer who prior to being discriminated against and retaliated against, never once received any negative reviews, reprimand, or derogatory mark on her performance record during her decade-plus law enforcement career with CSUF.

97.    Plaintiff's ability to perform the essential functions and duties of her job is further highlighted by the fact that Governor Gavin Newsom specifically recognized Plaintiff for her "outstanding efforts and tireless work" after she worked 100 hours of overtime to assist citizens in the Los Angeles area in April 2021, and during the height of the pandemic.

98.    At all times relevant, CSUF knew that Plaintiff had successfully performed her role as a police officer for more than 10 years at or in excess of CSUF's reasonable expectations.

99.    As a police officer, Plaintiff's job duties included *inter alia* patrolling, responding to calls, ensuring campus safety, conducting investigations related to criminal offenses that occur on campus, providing traffic control measures, responding to emergencies, engaging in proactive crime prevention efforts, monitoring access to

buildings and facilities, conducting routine security checks, and providing crowd support for large events on campus.

100.   Due to the fact that Plaintiff did perform the essential functions and duties of her job without issue, and because she was able to do so unvaccinated without incident, there is no dispute that permitting Plaintiff to maintain her employment would not have imposed upon CSUF an undue hardship as it was, in fact, able to accommodate her through the exemption it granted her.

101.   CSUF was able to accommodate Plaintiff as evidenced by the fact that it permitted her to continue working for months while she was exempt.

102.   Plaintiff specifically advised CSUF that she was amenable to an alternative accommodation in which even though she was exempt from the entire policy, Plaintiff was willing to participate in self-administered testing and thereafter, submit her results on a weekly basis. But CSUF refused despite the inexistence of a substantial financial burden sufficient to satisfy the requisite standard of what would constitute an undue hardship and instead, followed through on making "an example" out of Plaintiff by terminating her employment.

103.   CSUF had no basis to doubt the religious nature of Plaintiff's religious beliefs.

104.   CSUF had no basis to doubt the sincerity with which Plaintiff held and holds her sincere religious beliefs.

105.   CSUF terminated Plaintiff's employment because she is religious and because Plaintiff sought and obtained a policy exemption based on her sincerely held religious beliefs.

106.   Alternatively, CSUF terminated Plaintiff's employment because she opposed CSUF's religiously-motivated discrimination and its refusal to honor the exemption it granted her based on her sincerely held religious beliefs.

107.   Alternatively, CSUF terminated Plaintiff's employment because she was entitled to and otherwise needed a reasonable accommodation for her sincerely held religious beliefs based on the conflict between her beliefs and the policy.

108.   Specifically, Plaintiff demonstrated her ability to perform the essential functions and duties of her job at or in excess of CSUF's reasonable expectations as evidenced by factors including without limitation, her education, tenure, experience, work history, reviews, accolades, public recognitions, and nearly two-year record of working throughout the COVID-19 pandemic without issue.

109.   The reasonable religious accommodation Plaintiff sought, which included simply honoring the exemption she obtained, would not impose an undue hardship upon CSUF.

110.   The alternative reasonable religious accommodation Plaintiff sought (i.e., continuing to test for COVID-19 and upload her results on a weekly basis) did not, nor could it have, caused CSUF to incur an undue hardship.

111.   Plaintiff's sincerely held religious beliefs are religious in nature and she explained her sincerely held religious beliefs in detail to CSUF.

112.   There is no dispute that the religious beliefs Plaintiff asserted are in fact, beliefs that are religious in nature.

113.   Plaintiff's religious beliefs are sincerely held.

114.   There is no dispute that Plaintiff's religious beliefs are in fact, sincerely held.

115.   Refusing to honor Plaintiff's exemption or otherwise accommodate her through allowing her to continue working via self-administered testing on a weekly basis and instead, taking adverse employment action against her by *inter alia* terminating her employment constitutes religious-based discrimination in violation of Title VII, see 42 U.S.C. § 2000e, *et seq.*

116.   Refusing to provide Plaintiff with a reasonable religious accommodation that does not impose an undue hardship despite the religious nature of Plaintiff's beliefs, the

sincerity with which she holds her religious beliefs, and the conflict between her sincerely held religious beliefs and CSUF's mandatory COVID-19 vaccination policy undeniably makes Plaintiff entitled to a reasonable accommodation.

117.   Denying Plaintiff of the reasonable accommodation to which she is entitled constitutes a violation of Title VII, *see* 42 U.S.C. § 2000e, *et seq*.

118.   As a religious person, Plaintiff is a member of a constitutionally protected class (religion), and the protected class on the basis of religion is entitled to equal protection of law as other protected classes of persons, including those who are disabled.

119.   Refusing to reasonably accommodate Plaintiff's sincerely held religious beliefs while allowing other CSUF employees and contractors to work without becoming vaccinated constitutes disparate treatment in violation of Title VII. *Id.*

120.   Refusing to provide Plaintiff with an accommodation on the basis of her religion, while providing reasonable accommodations to other persons similarly situated on the basis of their religion constitutes disparate treatment in violation of Title VII. *Id.*

121.   Refusing to provide Plaintiff with an accommodation on the basis of her religion, while allowing other similarly situated, non-religious persons to continue their employment or contract-related work constitutes disparate treatment in violation of Title VII. *Id.*

122.   Plaintiff's beliefs are religious.

123.   Plaintiff's religious beliefs are sincerely held.

124.   At all times relevant, CSUF could reasonably accommodate and can reasonably accommodate Plaintiff's religious beliefs through *inter alia* weekly testing, and providing weekly test results evidencing Plaintiff does not pose any risk by continuing to serve CSUF as a police officer.

125.   Accommodating Plaintiff through *inter alia* weekly testing, social distancing, and remote working. does not impose an undue hardship upon CSUF.

126.   Upon learning Plaintiff was a religious person, CSUF terminated her employment.

127.   After refusing to accommodate Plaintiff's sincerely held religious beliefs, CSUF terminated her employment.

128.   As a direct and proximate result of the aforesaid complained of conduct and violation of Title VII, Plaintiff sustained pecuniary and non-economic injuries in an amount of three hundred thousand dollars, ($300,000.00), including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

## SECOND CLAIM FOR RELIEF
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### Disparate Impact on the Basis of Religion
### (42 U.S.C. § 2000e-2(a)(2) & (k))

129.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

130.   CSUF's insistence that Plaintiff violate her sincerely held religious beliefs and comply with its policy despite knowing Plaintiff was entitled to an accommodation—as evidenced by the fact CSUF exempted Plaintiff from its policy—deprives and tends to deprive Plaintiff and other similarly situated individuals of employment opportunities on the basis of religion in violation of Title VII's disparate-impact prohibition. 42 U.S.C. §§ 2000e-2(a)(2) & (k).

131.   Title VII makes it illegal for an employer to "limit, segregate, or classify his employees. . . in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(2).

132.   Furthermore, the statute provides that an unlawful employment practice based on disparate impact is established when either an employee shows that an employment policy causes such a disparate impact and the employer fails to show "that the challenged

practice is job related. . . and consistent with business necessity," or the employee shows there is an alternative way to serve the stated needs but the employer refuses it. 42 U.S.C. § 2000e-2(k)(1)(A).

133.   Even if facially neutral, CSUF's categorical requirement that all employees satisfy its policy requirements without exception, notation, or addendum—even when an employee is exempted from the policy—causes a disparate impact on Plaintiff (and any similarly situated religious individual who shares her religious beliefs) by forcing her to abandon her religious objections or forgo employment with the state.

134.   Furthermore, CSUF's categorical position on policy compliance is not consistent with the ability to perform the essential functions and duties of a UPD officer, nor consistent with business necessity. Moreover, CSUF refused the less-restrictive but feasible option of allowing Plaintiff to be exempt from the policy or even satisfy its mitigation interests sought to be achieved through its policy by permitting Plaintiff to self-administer test and upload results as she requested during her Skelly hearing and as an additional means by which she could be accommodated; indeed, CSUF itself has permitted UPD officers to self-test yet it refused to allow Plaintiff to do so despite no reason, basis, or justification for its refusal.

135.   As a direct and proximate result of the aforesaid complained of conduct and violation of Title VII, Plaintiff sustained pecuniary and non-economic injuries in an amount of three hundred thousand dollars, ($300,000.00), including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**
**FAILURE TO ACCOMMODATE SINCERELY HELD RELIGIOUS BELIEFS**
**(Cal. Gov. Code § 12940(l)(1))**

136.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

137.   California's Fair Employment and Housing Act (FEHA) forbids an employer from terminating an employee "because of a conflict between the [employee's] religious belief or observance and any employment requirement, unless the employer or other entity covered by this part demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance . . . but is unable to reasonably accommodate the religious belief or observance without undue hardship." Cal. Gov't Code § 12940(l)(1).

138.   As an employee, Plaintiff can therefore make out a *prima facie* case under FEHA by showing that (1) an employer-employee relationship existed between Plaintiff and CSUF; (2) Plaintiff had a sincerely held religious belief or practice that conflicted with a stated job requirement; (3) CSUF was aware of this conflict; and (4) CSUF either did not explore any available reasonable alternatives for accommodating Plaintiff or refused to employ Plaintiff in order to avoid any such accommodation. Judicial Council of California Advisory Committee on Jury Instructions, CACI No. 2560; *see also* Cal. Gov't Code, § 12940(l)(1).

139.   Here, Plaintiff was hired by CSUF and otherwise maintained an employer-employee relationship at all times relevant, beginning in 2011.

140.   Plaintiff informed and otherwise placed CSUF on notice that her sincerely held religious beliefs concerning abortion and submitting to medical procedures conflicted with CSUF's COVID-19 policy and as a result, she sought an accommodation to the policy.

141.   CSUF acknowledged its awareness of the conflict between Plaintiff's beliefs and its policy by granting Plaintiff's accommodation request and exempting her from its policy.

142.   As in the analogous Title VII context, "[w]hen an employer does not propose an accommodation," FEHA requires that "the employer must accept the employee's

proposal or demonstrate that the proposal would cause the employer undue hardship." *Townley*, 859 F.2d at 615*; see also Cook v. Lindsay Olive Growers*, 911 F.2d 233, 241 (9th Cir. 1990) (observing that courts rely on Title VII precedents to interpret analogous provisions of FEHA).

143.   At all times relevant, Plaintiff requested a policy exemption as her accommodation, and CSUF did not, nor could it, demonstrate exempting Plaintiff from the policy would have imposed an undue hardhsip upon it.

144.   Even if CSUF had (or was able to) demonstrate a policy exemption would impose an undue hardship, Plaintiff requested to be accommodated through an alternative means prior to the termination of her employment. Specifically, Plaintiff requested to be permitted to submit self-administered test results on a weekly basis, and this accommodation request was based upon CSUF's provision of self-administered tests to its officers prior to Plaintiff's termination.

145.   By permitting UPD officers to engage in self-administered testing and accepting their test results without taking adverse employment action against them, CSUF acknowledged, conceded, and otherwise demonstrated its ability to do so without incurring an undue hardship.

146.   As a direct and proximate result of the aforesaid complained of conduct and violation of FEHA, Plaintiff sustained pecuniary and non-economic injuries in an amount of three hundred thousand dollars ($500,000.00), including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

### FOURTH CLAIM FOR RELIEF
### Violation of the First Amendment to the U.S. Constitution
### (42 U.S.C. § 1983)

147.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

148.   The First Amendment forbids the government from "prohibiting the free exercise" of religion. U.S. Const. amend. I. Violations of the First Amendment are actionable against the government or any person acting "under color of state law" under 42 U.S.C. § 1983. *Campbell v. Wash. Dep't of Soc. & Health Servs.*, 671 F.3d 837, 842 & n.5 (9th Cir. 2011).

149.   In *Sherbert v. Verner*, 374 U.S. 398 (1963), the Supreme Court held that, absent a compelling interest pursued in a way least restrictive to religious exercise, a state may not force a person to violate their sincerely held religious beliefs in order to secure employment.

150.   To create this ultimatum, *Sherbert* observed, would force the affected party "to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand. Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against [the plaintiff] for her Saturday worship." *Id*. at 404.

151.   CSUF's ultimatum for Plaintiff—to maintain employment only by violating her religious beliefs—violates *Sherbert* because it forces her into this impermissible choice.

152.   Finally, CSUF's refusal to provide Plaintiff a religious accommodation to its policy—even if policy was established by state directive—cannot be justified by a compelling state interest when applied to Plaintiff, much less one that could not be served by a means less restrictive of religious exercise, including Plaintiff's additional accommodation request regarding self-administered testing, which in no way imposes an undue hardship yet nevertheless, still satisfies any interest CSUF may have had and even if such interest were compelling. *Bessard*, 867 F. Supp. at 1464-45.

153.   As a result of CSUF's violations of the First Amendment, Plaintiff suffered lost income and other economic and non-economic damages.

# FIFTH CLAIM FOR RELIEF
## VIOLATION OF THE CALIFORNIA CONSTITUTION
### (California Constitution art. I, § 4)

154.   California Constitution Article I, Section 4 states in part: "Free exercise and enjoyment of religion without discrimination or preference are guaranteed."

155.   California courts have understood this provision to mean "any attempt at compulsion by the civil power to be an infringement on liberty of thought, as well as on liberty of action." *Gordon v. Bd. of Ed.*, 178 P.2d 488, 493 (Cal. Ct. App. 1947). This general principle applies to religious freedom, on the grounds that "[r]eligious persecution, even in its milder forms, such as disqualifying the members of a particular sect for public office, is . . . inconsistent with the conception of individual freedom . . . which modern thought has embraced." *Id.* at 493.

156.   In free-exercise cases under the state constitution, the California Supreme Court has adopted the test articulated in Sherbert, 374 U.S. 398. *See Vernon v. City of Los Angeles*, 27 F.3d 1385, 1392 (9th Cir. 1994); *People v. Woody*, 394 P.2d 813, 815-16 (Cal. 1964).

157.   According to the California Supreme Court, the *Sherbert* analysis "calls for a determination of, first, whether the application of the statute imposes any burden upon the free exercise of the [affected party's] religion, and second, if it does, whether some compelling state interest justifies the infringement." *Woody*, 394 P.2d at 816. State action that passes this test "must also meet the further requirements that (1) no action imposing a lesser burden on religion would satisfy the government's interest and (2) the action does not discriminate between religions, or between religion and nonreligion." *Vernon*, 27 F.3d at 1392-93, quoting *Molko v. Holy Spirit Ass'n*, 762 P.2d 46, 57 (Cal. 1988).

158.   CSUF's termination of Plaintiff's employment caused a burden on the free exercise of her religion without a compelling interest. *See Bessard*, 867 F. Supp. at 1464-45. Furthermore, CSUF's unlawful action was not the least restrictive course of action. Among other possibilities, CSUF could have honored Plaintiff's policy exemption or

otherwise accommodated her by and through self-administered testing.  CSUF did not terminate other employees who were not vaccinated and who did not test on campus, but it terminated Plaintiff for this exact reason. And CSUF's unlawful actions discriminate between religions, namely religions—like Christianity—that oppose abortion while others do not.

159.   The California Constitution has long been held to authorize a private right of action for declaratory or injunctive relief for violation of its terms. *See Katzberg v. Regents of U. of Cal.*, 58 P.3d 339, 343 (Cal. 2002).

160.   CSUF terminated Plaintiff from her position of public employment because of her religious beliefs, in violation of the California Constitution.

161.   As a result of CSUF's violations of the California Constitution, Plaintiff suffered the loss of employment opportunities and infringement on her religious freedom.

162.   Declaratory and injunctive relief is needed for this claim to effectuate the "[f]ree exercise and enjoyment of religion" guaranteed to Plaintiff by the Constitution. To do otherwise would marginalize these fundamental constitutional protections and provide no course of action to a former job applicant whose rights have been violated.

163.   Although Plaintiff seeks all available monetary relief and compensatory damages for each of her other claims in this Complaint, she does not seek monetary relief or compensatory damages for this Fifth Claim for Relief under Article I, Section 4 of the California Constitution.

## **INJUNCTIVE RELIEF**

164.   Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully stated here.

165.   Plaintiff seeks injunctive relief.

166.   No previous application for injunctive relief sought herein has been made to this Court.

167.  If this Court does not grant the injunctive relief sought herein, Plaintiff will be irreparably harmed.

168.  No plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs addressed herein.

## DECLARATORY RELIEF

169.  Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully stated here.

170.  An actual controversy has arisen and now exists relating to the rights and duties of the parties in that Plaintiff contends Defendant violated her rights not to be subjected to discrimination and a violation of her rights pursuant to the U.S. Constitution and California Constitution.

171.  Defendant have denied these allegations.

172.  Declaratory relief is therefore necessary and appropriate.

173.  Plaintiff seeks a judicial declaration of the rights and duties of the respective parties.

## PRAYER FOR RELIEF

174.  WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment in her favor, award such relief as to make Plaintiff whole and remedy the aforesaid violations of Title VII, hold CSUF liable and in doing so, award all legal and equitable relief provided by law, including but not limited to:

(a) Issue a declaratory judgment that the practices complained of in this Complaint are unlawful and violate Title VII of the Civil Rights Act;

(b) Enjoin CSUF from pursuing its policy of making no religious accommodations to its oath requirement for its employees;

(c) Require CSUF to adopt hiring and employment policies that comply with Title VII, including the lawful requirement that employers reasonably accommodate their employees' sincerely held religious beliefs;

(d) Award Plaintiff all appropriate and legally available monetary relief, including lost compensation and benefits, in an amount to be determined at trial but in an amount no less than three hundred thousand dollars ($300,000.00), to make her whole for the losses she suffered as a result of the unlawful conduct alleged in this Complaint;

(e) Award Plaintiff any interest at the legal rate on such damages as appropriate, including pre- and post-judgment interest;

(f) Award compensatory damages to Plaintiff to fully compensate her for the pain, suffering, and other expenses caused by the harmful conduct alleged in this Complaint;

(g) Award Plaintiff a reasonable amount of attorney's fees for the work of her attorneys in pursuit of this action and the protection of her rights;

(h) Award Plaintiff all costs, disbursements, and expenses she paid or that were incurred on her behalf;

(i) Award any such additional relief the Court deems just and proper; and

(j) Award any other relief as allowed by law.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues and each and every cause of action so triable.


Dated: October 30, 2023


Respectfully submitted,
KATIE CAPPUCCIO

By: /s/ *Nicole C. Pearson*
Nicole C. Pearson (265350)
Email: nicole@fltjllp.com
LAW OFFICES OF NICOLE C. PEARSON
3421 Via Oporto, Suite 201
Newport Beach, CA 92663

Telephone: (424) 272-5526

By: /s/ Michael A. Yoder
Michael A. Yoder* (DC Bar No. 1600519)
Email: myoder@yoderlaveglia.com
YODER LAVEGLIA LLP
2001 L St NW, Suite 500
Washington, D.C. 20036
Telephone: (202) 875-2799
*pro hac vice forthcoming

Counsel for Plaintiff Katie Cappuccio

COMPLAINT