NICOLE C. PEARSON (SBN 265350)
npearson@ydplaw.com
**YODER DREHER PEARSON, LLP**
5319 University Drive, Ste. 503
Irvine, CA 92612
Telephone: (949) 200 9170

Attorneys for Plaintiff Katie Cappuccio

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| KATIE CAPPUCCIO,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA STATE UNIVERSITY, FULLERTON, and DAVID FORGUES, in his individual capacity and office capacity as Vice President of Human Resources,<br><br>Defendants. | Case No. 8:23-cv-02026-FWS-DFM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR RELIEF FROM THE COURT'S ORDER GRANTING DEFENDAN'S MOTION FOR LEAVE TO AMEND (DKT. 68), OR, IN THE ALTERNATIVE, AN ORDER RE-OPENING DISCOVERY AND MODIFYING THE SCHEDULING ORDER (DKT. 58, 63)**<br><br>Judge:    Hon. Fred W. Slaughter<br>Crtrm.:    Santa Ana, 10D<br>Magistrate:  Douglas F. McCormick<br>Crtrm:    Santa Ana, 6B |

Plaintiff Katie Cappuccio ("Plaintiff") hereby submits the following Ex Parte Application for Relief from the Court's Order Granting the Motion for Leave to Amend its Answer of Defendant California State University, Fullerton ("Defendant") ("Motion for Leave") or, in the alternative, for an Order to Re-Open and Modify the Scheduling Order ("Application"). Specifically, Plaintiff asks this Court to (1) relieve Plaintiff and her counsel of their belated filing by reconsidering its December 26 order granting Defendant's Motion for Leave to Amend in light of Plaintiff's Opposition, and/or (2) reopen discovery and modify its Scheduling Order at least 120 days to

1    allow the parties to conduct discovery into Defendant's two new affirmative causes of

2    action.

3         Plaintiff's Application must be heard *ex parte* because if the Court does not,

4    Plaintiff will suffer **further** irreparable harm. The non-expert discovery deadline

5    already passed, and expert discovery cut-off date runs tomorrow. Plaintiff has

6    attempted to obtain its requested relief informally from Defendant; however,

7    Defendant will neither stipulate to allow the Court to reconsider its Motion for Leave,

8    nor to re-open deadlines that ran **before** Defendant amended its answer, or to modify

9    the Scheduling Order to continue deadlines that are set to expire, even though it

10   asserted two completely new affirmative defenses just eight days ago. Accordingly,

11   Plaintiff's Application should be granted.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S *EX PARTE* APPLICATION – MEMO P&A**

1

2

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................3

II.   STATEMENT OF PERTINENT FACTS ...........................................5

   A.   Defendant Fails to Assert Undue Hardship and Business Necessity Defenses in Its Answer after Litigating the Underlying Discrimination, Failure to Accommodate, Retaliation Dispute for Over 9 Months before Filing Its Answer. . 5

   B.   Plaintiff Confirms that She Has Grounds to File a Motion for Summary Judgment and Decides to Do So Before the Motion Hearing Deadline. ................7

   C.   Plaintiff's Counsel's Children Are Rushed for Urgent Medical Care. ............7

   D.   Plaintiff Cancels the Second Session of Deposition Due to Her Attorney's Children's Medical Emergencies and Agrees to (1) Set for Her Second Deposition before January 17, 2025, and (2) Continue Defendant's MSJ Filing Deadline.......8

   E.   Defendant Attempts to Draft the Joint Stipulation to Modify the Scheduling Order to Bar Plaintiff from Filing an MSJ, Despite Never Discussing, Nor Plaintiff Ever Agreeing to, the Same. ........................................................9

   F.   Plaintiff Accidentally Misses Her Deadline to File Her Opposition to Defendant's Motion for Leave to Amend. ....................................................11

   G.   Defendant Refuses to Grant Plaintiff Leave to Have Heard Opposition Heard or, in the Alternative, to Re-Open Discovery and other Trial Related Deadlines to Allow the Parties to Conduct Discovery as to Defendant's Two Brand New Defenses. ...................................................................................12

III.  LEGAL ARGUMENT ...............................................................13

   A.   Ex Parte Relief Is Justified Where Discovery Deadlines Have Already Run, the Expert Cut-Off Date Is Tomorrow, and Defendant Will Not Stipulate to Modify the Scheduling Order to Allow the Parties to Conduct Discovery Into Affirmative Defenses Asserted 8 Days Ago. ........................................................13

   B.   The Court May Relief a Party or Counsel from an Order Due the Their Inadvertence, Excusable Neglect, or "Any other Reason" that Justifies Relief. ...14

     a.   Plaintiff immediately sought relief from the Court's order...........................15

     b.   Plaintiff is seeking relief from her mistake and excusable neglect. .............15

     c.   Plaintiff will be irreparably harmed and prejudiced if her winning Opposition is not considered, and/or if discovery is not reopened and continued. 16

IV.   CONCLUSION .....................................................................18

**PLAINTIFF'S *EX PARTE* APPLICATION – MEMO P&A**

1

# TABLE OF AUTHORITIES

2

3  Federal Statutes
4  Fed. R. Civ. Pro. 60....................................................................................... 3, 15

5  Federal Cases
6  *Mission Power Engineering Co. v. Continental Casualty Co.*,
   883 F. Supp. 488 (C. D. Cal. 1995) ................................................ 14
7

8  *In Horne v. Wells Fargo Bank, N.A.,* 969 F. Supp. 2d 1203, 1205 (C.D. Cal 2013
   .......................................................................................................... 14

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S *EX PARTE* APPLICATION – MEMO P&A**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff's counsel is a single mother of three children. All three of her children, ages 8, 6 and 1.5, were in and out of the hospital from December 18 to December 30, 2024 due to strep, norovirus, and respiratory syncytial virus ("RSV"), among other medical issues. Due to this, she mistakenly believed that Plaintiff's opposition to Defendant's Motion for Leave was due December 26; however, it was Defendant's **Reply** that was due December 26 and Plaintiff's Opposition was due December 19. Plaintiff "timely" filed her Opposition to Defendant's *ex parte* application, and Motion for Leave, on December 26. (Dkt. 65, 66, 67; Pearson Decl. ¶21, Exh. E).

During this time, Plaintiff's counsel was unable to sit for Plaintiff's second session of deposition, and the parties began to discuss a stipulation to modify the Scheduling Order to allow Plaintiff to do so, and for Defendant to file a Motion for Summary Judgement outside the then-set deadlines. While Plaintiff agreed to sit for her deposition on or before January 17 (any date between December 26 and January 17, **other than** January 9), and to continue the parties' deadline to file an MSJ, she did not agree to sign Defendant's stipulation that barred Plaintiff from filing an MSJ, a matter the parties had discussed and which Plaintiff was entitled to do. While the parties were discussing the language of the proposed Joint Stipulation, Defendant filed an improper *ex parte* application on Christmas Eve while Plaintiff's counsel's children were sick, seeking orders compelling Plaintiff to do and agree to what she had already agreed to: sit for her second round of deposition on or before January 17, and continue Defendant's deadline to file an MSJ on or before January 31, 2025. (Dkt. 62).

Federal Rules of Civil Procedure rule 60 authorizes the Court relieve a party or counsel from a final judgment, order, or proceeding due to the party's / counsel's mistake, inadvertence, surprise, or excusable neglect, misconduct by an opposing party, and/or "any other reason that justifies relief." (Fed. R. Civ. Pro. 60(b)(1), (3), (6)). This is exactly the relief that Plaintiff is seeking by way of this Application. The

1  Court granted Defendant's Motion for Leave without oral argument because Plaintiff
2  "did not oppose the Motion by the deadline set out in the Central District of
3  California's Local Rules. See L.R. 7-9." However, Plaintiff **did** oppose Defendant's
4  Motion for Leave, but late due to an inadvertent mistake caused by excusable neglect
5  due to counsel's children's illnesses. Plaintiff's delay was exacerbated by Defendant's
6  misconduct in seeking *ex parte* relief on Christmas Eve for issues Plaintiff had already
7  agreed to in order to, actually, rewrite the unambiguous language of the Court's
8  November 27 Scheduling Order (Dkt. 58) to preclude Plaintiff from filing an MSJ,
9  even though her deadline to do so had not expired, and even though the parties had
10 never discussed, nor Plaintiff agreed, to waive her right to do so.

11       Additionally, principles of justice and fairness demand the Court to relieve
12 Plaintiff of her excusably belated filing because Defendant has been permitted to
13 assert two new, critical affirmative defenses *after* **the discovery cut-off date expired,**
14 and **days before expert discovery is to be completed** (today, January 9). Therefore,
15 even if the Court believes its decision granting Defendant's Motion for Leave was
16 proper, Plaintiff will be unjustly and irreparably harmed and prejudiced if Defendant
17 cannot only add two new defenses months after they were waived and after discovery
18 deadlines have and are about to expire, but to do so without allowing the parties to
19 conduct any discovery regarding either.

20       Given these critical discovery deadlines that have already lapsed and are set to
21 expire due to no failure on Plaintiff's part, but rather, Defendant's 6-month delay in
22 seeking leave to add two affirmative defenses it has had notice of for over 1 year,
23 Plaintiff is entitled to *ex parte* relief and Plaintiff's Application should be granted in
24 its entirety.

25 ///
26 ///
27 ///
28 ///

4

## II.    STATEMENT OF PERTINENT FACTS

### A. Defendant Fails to Assert Undue Hardship and Business Necessity Defenses in Its Answer after Litigating the Underlying Discrimination, Failure to Accommodate, Retaliation Dispute for Over 9 Months before Filing Its Answer.

Plaintiff filed her complaint for (1) Violation of Title VII (disparate impact); (2) Violation of Title VII (failure to accommodate); (3) Violation of FEHA (disparate impact, failure to accommodate); and (4) Violation of the First Amendment of the U.S. Constitution on October 30, 2023. (Dkt. 1).

Upon request from defense counsel, the parties filed a Joint Stipulation extending Defendant CSU's time to file its answer to the Complaint. (Dkts. 12, 13; Declaration of Nicole C. Pearson ("Pearson Decl."), ¶3).

On January 24, 2024, defense counsel, associate Heather Davis, filed a Motion to Dismiss Plaintiff's Complaint for (1) lack of jurisdiction and (2) failure to state a claim on behalf of Defendant CSU. (Dkt. 15).

On February 14, 2024, Plaintiff amended her complaint to add former defendant Forgues and changing no other claims, requests for relief, or substantive allegations. (Dkt. 16, Pearson Decl., ¶4).

Upon request from defense counsel, the parties filed a Joint Stipulation extending former Defendant Forgues's time to file its answer to the Complaint. (Dkt. 50, Pearson Decl, ¶3).

On February 28, 2024, defense counsel Ms. Davis filed a Motion to Dismiss Plaintiff's Amended Complaint for (1) lack of jurisdiction and (2) failure to state a claim on behalf of Defendant CSU. (Dkt. 19). Plaintiff opposed, and Ms. Davis filed a reply to, the same. (Dkt. 24, 26).

On February 29, 2024, defense counsel Ms. Davis filed a Rule 26(f) report on behalf of Defendant CSU. (Dkt. 20).

On April 23, 2024, attorney Briana Atuna entered her appearance on behalf of

5

1    Defendants. (Dkt. 36).

2        It is Plaintiff's understanding that Ms. Davis went out on maternity leave on or

3    about April 26, 2024. (Pearson Decl., ¶5).

4        On May 2, 2024, defense counsel, Partner Corrie Klekowski, attended the

5    hearing on Defendant CSU's Motion to Dismiss. (Dkt. 39, Pearson Decl. ¶6). Thereat,

6    Ms. Klekowski argued extensively why *res judicata,* qualified and 11th amendment

7    immunity, **and other affirmative defenses** barred Plaintiff's lawsuit. Thereafter, Ms.

8    Klekowski and Plaintiff's counsel discussed the parties' respective positions, including

9    Plaintiff's case's "strengths" and "weaknesses," and Defendant's defenses, and the

10   possibility for informal dispute resolution and settlement. (*Ibid*).

11       On July 24, 2024, defense counsel Ms. Klekowski filed an answer on behalf of

12   Defendant CSU specifically addressing each one of Plaintiff's 165 paragraphs and

13   Prayer for Relief, and asserting **twelve affirmative defenses**. (Dkt. 49).

14       On August 9, 2024, defense counsel **Ms. Davis, while out on leave,** filed the

15   Joint Stipulation Extending Time to Answer the complaint as to David Forgues while

16   out on leave. (Dkt. 50).

17       On August 23, 2024, defense counsel partner Ms. Klekowski filed a Motion to

18   Dismiss Plaintiff's Amended Complaint for (1) lack of jurisdiction and (2) failure to

19   state a claim on behalf of former defendant Forgues. (Dkt. 52). Plaintiff opposed, and

20   Ms. Klekowski filed a reply to, the same. (Dkt. 54, 55).

21       On October 10, 2024, defense counsel Ms. Klekowski attended the hearing on

22   former defendant Forgues's Motion to Dismiss. (Dkt. 56, Pearson Decl. ¶6). Thereat,

23   she argued why various affirmative defenses barred Plaintiff's lawsuit against him.

24   Thereafter, Ms. Klekowski and Plaintiff's counsel again discussed the parties'

25   positions, and the possibility for informal dispute resolution and settlement. (Ibid.)

26       On November 26, 2024, two days before the non-expert discovery deadline,

27   Ms. Davis reached out to Plaintiff's counsel to ask her to stipulate to grant Defendant

28   leave to amend its answer to assert the affirmative defenses of undue hardship and

business necessity. (*Id.*, ¶8, Exh. A). Over the course of the following week, counsel for the parties met and conferred regarding their respective positions on granting Defendant leave to amend its answer. (*Ibid.*)

Ultimately, the parties disagreed and, on December 12, 2024, Defendant filed a Motion for Leave to Amend its answer to add two new affirmative defenses: undue hardship and business necessity. (Dkt. 60; Pearson Decl., ¶8, Exh. A).

Plaintiff has offered to stipulate to re-open the discovery deadline on at least three separate occasions. Each time, Defendant declined. (Pearson Decl., ¶8, Exh. A).

## B. Plaintiff Confirms that She Has Grounds to File a Motion for Summary Judgment and Decides to Do So Before the Motion Hearing Deadline.

On December 17, 2024, Plaintiff took the deposition of former-defendant David Forgues. (Pearson Decl., ¶9). During said deposition, Forgues admitted that Defendant did provide religious accommodations to its testing requirement, and that he had **zero** legal authority to support this position. (*Ibid.*). He also specifically testified that he was *not* responsible for reviewing, granting or denying accommodation requests. Rather, this was done by an entirely different department. (*Ibid.*). As a result of this testimony, Plaintiff decided she had grounds to and would file an MSJ. (*Ibid.*).

At that time Plaintiff had neither waived her right to, nor allowed the deadline, to file an MSJ to expire. (*Ibid.*).

## C. Plaintiff's Counsel's Children Are Rushed for Urgent Medical Care.

The next day, on Wednesday, December 18, 2024, Plaintiff's counsel's 6-year-old daughter was rushed to urgent care for lethargy, trouble swallowing and breathing, and extreme fever. (Id., ¶10).

That same day, Plaintiff's counsel's 8-year-old daughter was rushed to urgent care for a potential fractured heel while trying to help her sister. (Id., ¶11).

Later that night, she also developed strep and flu like symptoms and on Saturday, December 21, 2024, was rushed to urgent care for lethargy, extreme fever, stiff neck, uncontrollable, spasmatic cough, and abdominal tenderness. (Id., ¶12).

On Sunday, December 22, 2024, Plaintiff's counsel's 1.5-year-old son spiked a 104 fever and at approximately 8:30 p.m., Plaintiff's counsel's child care provider called to say she was sick and could not come to work the next day. (Id., ¶13.)

### D. **Plaintiff Cancels the Second Session of Deposition Due to Her Attorney's Children's Medical Emergencies and Agrees to (1) Set for Her Second Deposition before January 17, 2025, and (2) Continue Defendant's MSJ Filing Deadline.**

Plaintiff's counsel attempted, but was unable, to secure alternate childcare for her sick children so that she could attend Plaintiff's second session of deposition the next day. (Id., ¶14). She emailed defense counsel to let her know that she would not be able to attend, acknowledging that it was a last-minute cancellation, apologized for and explained the reasons for the same, offered to send over medical notes to confirm her status, and also to pay any late cancellation fee. (Id., ¶14, Exh. B).

Defense counsel acknowledged Plaintiff's counsel's predicament, wished her and her children well, thanked counsel for offering to pay the late cancellation fee, and asked if Plaintiff would stipulate to (1) sitting for a second session to allow Defendant to file an MSJ, and (2) continue Defendant's MSJ deadline. (*Ibid.*). Plaintiff's counsel agreed to stipulate to move the MSJ hearing deadline, asked for counsel's general availability in order to provide new deposition dates, and asked whether Defendant wanted to re-open the non-expert discovery deadline, as well, given that Defendant had served document subpoenas a few days prior despite the cut off having passed. (*Ibid.*). She also gave counsel her personal cell phone number because she was going to be out of office that day taking care of her children but wanted to resolve these issues. (*Ibid.*).

Defense counsel emailed over the draft Joint Stipulation and texted Plaintiff's counsel that it was in her inbox. (Id., ¶ 15, Exh. C).

Defense counsel did not know, but Plaintiff's son had been diagnosed with RSV and placed on a breathing treatment that day. (*Ibid.*)

**E. Defendant Attempts to Draft the Joint Stipulation to Modify the Scheduling Order to Bar Plaintiff from Filing an MSJ, Despite Never Discussing, Nor Plaintiff Ever Agreeing to, the Same.**

Plaintiff's counsel reviewed the proposed Joint Stipulation and saw that defense counsel added in a "dispositive motion deadline" that was not included in the Court's Scheduling Order (Dkt. 58) and that was unilateral. (Id., ¶¶ 15, 16, Exh. C). Because Plaintiff never waived her right to file an MSJ, intended to file one due to Dr. Forgues deposition testimony, and the Court's current Scheduling Order did not consider a dispositive motion filing deadline, Plaintiff modified the proposed Joint Stipulation so that the it stated that the deadline to hear any motion was February 13, and to file any dispositive motion by any party was reciprocal. (*Ibid.*). Plaintiff emailed her edits, along with an email explaining them, to Defendant as soon as she completed both, at 9:46 p.m. (*Ibid.*).

Defendant called Plaintiff at 10:30 a.m. the next day to discuss her proposed edits to the Joint Stipulation. (Id., ¶¶ 16, 17, Exh. C). Defendant stated that Plaintiff had never mentioned filing an MSJ, and that her deadline to file one had "run a long time ago," therefore, Plaintiff could not ask that the "Last Day to **Hear** Motion" deadline be continued to allow both parties to file an MSJ. She also asked if Plaintiff would still agree to sit for her second session of deposition before January 17, 2025. (*Ibid.*). Plaintiff disagreed with Defendant regarding the MSJ issue, but stated that she **continued to agree to extend Defendant's deadline to file an MSJ to account for Plaintiff's delayed deposition, and to sit for a second round of deposition before January 17, 2025.** She further stated that, in order to properly analyze her position on the MSJ deadline issue, she needed to review the parties' correspondence, and the Court's orders ,to determine whether she had, in fact, waived her right to file an MSJ, such that her requested edits were improper. (Id., ¶¶ 16, 18, Exh. C.).

Plaintiff conducted her due diligence that same day and at 1:26 p.m. responded that, **while she continued to agree to continue Defendant's deadline to file an**

**PLAINTIFF'S *EX PARTE* APPLICATION – MEMO P&A**

**MSJ,** she did **not** believe Plaintiff's deadline had been waived or expired. Plaintiff explained:

> Hi Heather:
>
> Following up on our call this morning:
>
> 1. …
>
> 2. I have read our November Joint Stipulation to Modify the Scheduling Order (Dkt. 57) and Court's Order (Dkt. 58). I do not see where our Joint Stip it (a) did not extend Ms. Cappuccio's deadline to file an MSJ, which is the same as Defendants, or (b) precludes her from filing one. It merely states that we agreed to continue the motion hearing deadline to accommodate the outstanding depositions, as well as any MSJ, which you, at that time, contemplated filing and which required a 6 week filing-to-hearing window. Nowhere did we actually or intent [sic] to waive our right to file an MSJ along those same deadlines. I also do not see any order showing that Ms. Cappuccio's deadline to file an MSJ "ran a while ago," as you stated in our call. Again, the parties' deadline to file an MSJ has always been and is the same, and was modified by our Joint Stip (Dkt. 57) and the Judge's November 27 Order (Dkt. 58) which moved the date to hear **all** motions for **all** parties until February 13, 2025. The Order states: "Last Date to **Hear** Motions, February 13, 2025, **Thursday,**" [emphasis in original]. Footnote 3 states that this date was continued "*To accommodate the request that Defendant 'CSU may file its dispositive motion on or before December 30, 2024,'" (Stipulation at 3).*" This was not a limitation on what motions could be filed or by whom, but to explain how the February 13 date was calculated, taking into consideration the requisite 6 week filing to hearing window. All this to say, **we do agree to continue the February 13 deadline due to our inability to attend Ms. Cappuccio's second session of deposition yesterday; however, we do not agree to limit that extension to the filing of Defendants' MSJ, only, or to MSJ's, only, for that matter.** I believe the Court's Order is clear: the deadline to hear any and all motions filed by any and all parties is February 13, 2025. We can continue that deadline to accommodate Ms. Cappuccio's second session of deposition, and for any MSJ to be filed by either party.
>
> 3. I note in your email, below, you state Ms. Cappuccio is required to sit for an additional 2-3 hours. Could you please advise for how long she sat during her first session already?

Please let me know if you have any questions, or care to discuss further. I am working today until 5 p.m.

Best,
Nicole

(Id., ¶ 19, Exh. D).

Defendant immediately responded that the parties continued to disagree and that it would be moving forward with an *ex parte* application seeking to continue only Defendant's deadline to file an MSJ. (Id., ¶¶ 19, 20, Exh. D). She also asked if Plaintiff would be able to sit for deposition before January 17, 2025, and if she could provide dates that day to assist with Defendant's requests for relief. (*Ibid.*).

Plaintiff reiterated her agreement to sit for deposition before January 17 and provided Defendant with six dates. (*Ibid.*).

**F.  Plaintiff Accidentally Misses Her Deadline to File Her Opposition to Defendant's Motion for Leave to Amend.**

Due to the chaos and panic surrounding her children's medical conditions, Plaintiff's counsel confused Plaintiff's deadline to file an Opposition to Defendant's Motion for Leave with Defendant's deadline to file its reply to any such opposition.[1] (Id., ¶ 21). Accordingly, Plaintiff "timely" filed her Opposition to Defendant's Motion for Leave to Amend on December 26, 2024.[2] (Id., ¶21, Exh. E).

On December 26, the Court granted Defendant's Motion for Leave believing that Plaintiff had not filed an Opposition, but she had. (Dkt. 68).

---

[1] The hearing on Defendant's Motion for Leave was set for January 9, 2025. Accordingly, Plaintiff's Opposition was due 21 days before, or on or before December 19, and Defendant's reply was due 14 days before, or on or before December 26. (*See* Local Rules 6-1, 7-9, 7-10).

[2] Plaintiff re-filed her Opposition Memorandum of Points and Authorities and Declaration in support on December 27, 2024 at 12:19 a.m. after she realized that the caption and footers had not been updated from the Opposition to Defendant's *Ex Parte* Application, which she had also filed earlier that day.

1    On December 27, Plaintiff emailed the Court informing the Court of her
2  Opposition and providing copies of the same. (Pearson Decl., ¶22).

3    On December 28, Plaintiff followed up with the Court to confirm that it had, in
4  fact, received her opposition. (Id., ¶23).

5    As of the date of filing this Application, the Court has not responded to
6  Plaintiff's emails. (Id., ¶24.).

7    **G. <u>Defendant Refuses to Grant Plaintiff Leave to Have Heard Opposition</u>**
8       **<u>Heard or, in the Alternative, to Re-Open Discovery and other Trial</u>**
9       **<u>Related Deadlines to Allow the Parties to Conduct Discovery as to</u>**
10      **<u>Defendant's Two Brand New Defenses.</u>**

11   Upon realizing her filing error, on January 6, 2024, Plaintiff asked Defendant to
12  stipulate to the Court (1) relieving Plaintiff of her belated filing due her children's
13  medical emergencies, and reconsidering its ruling on Defendant's Motion for Leave,
14  and (2) reopen discovery given the new defenses that were alleged six days prior (at
15  that time), and had never been examined. (Id., ¶25, Exh. F).

16   On January 7, Defendant stated there were no "exigent circumstances" to justify
17  *ex parte* relief, and that it would not stipulate to "generally reopen discovery." (Id., ¶¶
18  25, 26, Exh. F). Plaintiff responded by explaining that discovery deadlines had already
19  passed and expert cut off was set to expire and outlined the discovery sought. (*Ibid.*)

20   On January 8, Defendant responded to Plaintiff's explanation by saying that
21  Plaintiff was "on notice" of its two new affirmative defenses since November 26 and
22  should have conducted discovery into the defenses in the two days before the non-
23  expert deadline ran on November 28. (*Ibid.*). Defendant also stated that Plaintiff had
24  taken the deposition of Dr. Forgues and asked him about the accommodation request
25  review process. (Id., ¶¶ 25, 28, Exh. F).

26   Defendant also stated it saw "no need" to extend expert cut-off because, again,
27  Plaintiff was "on notice" of the two potential defenses and should have incurred the
28  thousands of dollars necessary to retain an expert to potentially review and analyze

defenses that were not even a part of this litigation. (*Ibid.*). Defendant also asked that for "additional specific information regarding the expert discovery Plaintiff requests, subject matter of expert testimony, and possible expert witnesses." (*Ibid.*).

In response, Plaintiff provided her with the following:

> We need an expert to analyze your client's information regarding alleged undue hardships and business needs that precluded it from allowing Ms. Cappuccio from **continuing** to work without being vaccinated, and/or **continuing** to test herself with tests provided by your client. We need written requests to CSUF regarding its business operations, staffing, resources, costs thereof, etc., then to take the depositions of every person with personal knowledge regarding these topics.
>
> If you are asking me to draft discovery requests to you right now in order for you to agree to them, I cannot do that, as I need to file our *ex parte* application to set aside and/or reconsider the Court's ruling on your Motion to Dismiss or, in the alternative, re-open discovery to allow us to investigate the two affirmative defenses you just asserted December 31 and no party has conducted discovery on, and after the discovery deadline had closed.
>
> Please let me know if these topics will suffice as, again, it significantly impacts our application.
>
> Nicole

(Id., ¶¶ 25, 28, Exh. F). As of the time of filing this Application, Defendant has not confirmed whether or not this discovery is appropriate, or that it would stipulate to permitting this or any other discovery, including expert discovery. (Id., ¶29.).

Plaintiff attempted to file her Application on January 8, 2025 before the expert discovery cut-off ran; however, she is located in Southern California and extreme winds and firestorms cut off her electricity and there were outages in her internet provider (Spectrum). Accordingly, she filed it as soon as she could secure WiFi to access PACER and her email. (Id., ¶30, Exh. G).

## III.   LEGAL ARGUMENT

### A. *Ex Parte* Relief Is Justified Where Discovery Deadlines Have Already

1 | **Run, the Expert Cut-Off Date Is Tomorrow, and Defendant Will Not**
2 | **Stipulate to Modify the Scheduling Order to Allow the Parties to**
3 | **Conduct Discovery Into Affirmative Defenses Asserted 8 Days Ago.**

Where a moving party will be "irreparably prejudiced" if the underlying motion is heard according to "regularly noticed procedures," and where the "crisis" requiring *ex parte* relief was due to no fault of their own, or to their excusable neglect," *ex parte* relief is justified. (*Mission Power Eng'g Co. v. Cont'l Cas. Co.,* 883 F. Supp. 488, 490, 492-93 (C.D. Cal. 1995); *In Horne v. Wells Fargo Bank, N.A.,* 969 F. Supp. 2d 1203, 1205 (C.D. Cal 2013). Here, Defendant filed its Amended Answer on December 31 (Dkt. 69), **six weeks after** the deadline to conduct non-expert discovery had lapsed, and **8 days before** the deadline to conduct expert discovery is set to expire. Discovery of Defendant's two new affirmative defenses (undue hardship and business necessity) is necessary, as neither of these had even been mentioned before and neither party has conducted any discovery about them. Additionally, expert discovery as to these two defenses is necessary because they are highly technical, fact-specific defenses beyond Plaintiff's or counsel's education, experience, or understanding.

Plaintiff seeks to discover documents and information relating to Defendant's operations, Defendant's police force operations, costs, staffing requirements, potential accommodations, the accommodations process, interactive process, undue hardship analysis, the fiscal and operational impact of the same, among other things. Plaintiff has provided Defendant with an outline of the topics she would like to discover and attempted to get Defendant to stipulate to grant her leave to oppose its Motion, and to re-open discovery and continue discovery and trial-related deadlines that have passed or are set to run; however, Defendant has not agreed. (Pearson Decl., ¶¶25-29, Exh. F). Because critical discovery deadlines have already passed, and expert discovery is going to be cut-off January 9, Plaintiff's Application must be heard *ex parte*.

B. **The Court May Relief a Party or Counsel from an Order Due the**
**Their Inadvertence, Excusable Neglect, or "Any other Reason" that**

**PLAINTIFF'S *EX PARTE* APPLICATION – MEMO P&A**

1    <u>Justifies Relief.</u>

2    Under rule 60(b), upon motion and "just terms," a court may "relieve a party or

3    its legal representative from a final judgment, order, or proceeding for . . . (1) mistake,

4    inadvertence, surprise, or excusable neglect; . . . (3) . . . misconduct by an opposing

5    party … or (6) any other reason that justifies relief." (Fed. R. Civ. Pro. 60(b)). Any

6    such motion "must be made within a reasonable time" and if made on the grounds of

7    mistake, inadvertence, surprise, excusable neglect or misconduct, "no more than a

8    year after the entry of the judgment or order or the date of the proceeding." (Fed. R.

9    Civ. Pro. 60(c)). Here, Plaintiff filed her Opposition to Defendant's Motion for Leave

10   late because she confused deadlines during her children's health emergencies while

11   defending against Defendant's improper, Christmas Eve *ex parte.* This mistake was

12   honest and reasonable given the circumstances that existed between December 18 and

13   December 30. Plaintiff has also attempted to resolve the repercussions of her mistake

14   informally with Defendant to allow Defendant's defenses to stand but minimize the

15   prejudicial impact on Plaintiff, **even though Defendant will also benefit and not be**

16   **prejudiced by this**; however, Defendant will not agree.

17   Plaintiff will be severely prejudiced if her honest mistake cannot be rectified.

18   a. <u>Plaintiff immediately sought relief from the Court's order.</u>

19   Plaintiff is immediately moving for relief upon confirming that Defendant will

20   not agree to allow the Court to reconsider its order, or to even re-open discovery and

21   continue expert discovery and other trial-readiness deadline, and within two weeks of

22   the Court's order. (Pearson Decl., ¶¶25-30, Exhs. F, G).

23   b. <u>Plaintiff is seeking relief from her mistake and excusable neglect.</u>

24   As set forth in greater detail above, Plaintiff confused her deadline to file her

25   opposition to Defendant's Motion for Leave with Defendant's deadline to file a reply,

26   due to her children's medical / health emergencies, as well as ongoing disagreement

27   with Defendant regarding its improper Christmas Eve *Ex Parte* Application seeking

28   orders compelling actions Plaintiff had already agreed to, and to rewrite the Court's

1   unambiguous standing order. (Pearson Decl., ¶¶ 10-21).

2               c.   <u>Plaintiff will be irreparably harmed and prejudiced if her winning</u>

3                    <u>Opposition is not considered, and/or if discovery is not reopened</u>

4                    <u>and continued.</u>

5        Finally, and most importantly, Plaintiff will be extremely prejudiced if she is

6   not allowed to have her Opposition considered, or, in the alternative, given time to

7   conduct discovery into defenses that were asserted days ago after discovery deadlines

8   have passed. This is especially true where Defendant's Motion for Leave would have

9   likely been denied had Plaintiff's Opposition been considered.

10       This case arises out of Defendant's refusal to adhere to well-established federal

11  laws prohibiting employers from engaging in religiously-motivated discrimination or

12  retaliation against their employees. Defendant has, now, admitted on the record, vis a

13  vis the deposition of Dr. Forgues, that it was well-aware of and versed in Title VII of

14  the Civil Rights Act of 1964 ("Title VII"), California Fair Employment and Housing

15  ("FEHA"), and other federal and state laws and regulations protecting employees'

16  religious beliefs and practices in the workplace; however, it not only chose to ignore

17  these, but actually had **zero** legal authority to deny employees any religious

18  accommodation to its testing requirement. It was under this "policy" that Plaintiff's

19  employment with Defendant was terminated.

20       Defendant has known that this is a religious discrimination / failure to

21  accommodate / retaliation case since **June** *2021* when Plaintiff began objecting and

22  seeking exemptions to Defendant's COVID-19 vaccine and testing policies due to her

23  sincerely held religious beliefs. Even if Defendant did not understand the thrust of this

24  case then, it certainly understood it in August of 2021, and again in December of

25  2021, when Plaintiff submitted and then re-submitted her requests for religious

26  accommodation to vaccination and testing. If they did not know then, they certainly

27  knew after Plaintiff's *Skelly* hearing in February 2023, her subsequent appeal, and

28  after the California Division of Civil Rights and Equal Employment and Opportunity

Commission's investigations of her complaints alleging the same, and absolutely upon receipt of the underlying lawsuit filed in October 2023, alleging four causes of action for (1) Violation of Title VII (disparate impact); (2) Violation of Title VII (failure to accommodate); (3) Violation of FEHA (disparate impact, failure to accommodate); and (4) Violation of the First Amendment of the U.S. Constitution. (Dkt. 1).

Defendant certainly knew the "thrust" of Plaintiff's case after the Motion to Dismiss hearing where the issues – and Defendants *other* affirmative defenses – were debated for almost one hour. (Dkt. 39, 56; Pearson Decl., ¶6). Defendants attempted, unsuccessfully for months, to construe this case as a disciplinary action matter that had already been resolved in its favor, entitling it to *res judicata* and immunity, among other affirmative defenses asserted at the Motion to Dismiss level. Despite this Defendant has failed **for over one year** to assert the defenses of undue hardship or business necessity, **while asserting others,** and then waited until **two days before** the non-expert discovery cut off to raise the omission.

Defense counsel claimed that its failure to allege two affirmative defenses resulted from personal issues – maternity leave and family issues – which Plaintiff's counsel, a solo practitioner litigator and mother of three wholeheartedly understands. However, these personal matters post-date the relevant time period for identifying and asserting Defendant's affirmative defenses by months, and do not justify Defendant seeking leave over one year after the lawsuit was filed, months after its answer was filed – and the subject affirmative defenses waived – after the discovery cut-off date has run, and days before other critical litigation deadlines are set to expire. There is simply **zero** reason why **three** attorneys from a national law firm with over 500 attorneys did not notice that two standard, critical affirmative defenses had been omitted **for over one year.** Moreover, Ms. Davis claims she is the handling attorney and was not working on this matter from April to November due to maternity leave and, thus, did not see the erroneous Answer filed; however, the docket reveals that **she was working while on leave.** On August 9, 2024, Ms. Davis filed a Joint Stipulation

17

1  on behalf of former Defendant Forgues. (Dkt. 50). If she could file a Stipulation, there
2  is literally **zero** reason she could or did not have the opportunity to review something
3  as important as filing an answer.

4          Based upon the foregoing **extremely brief** summary of Plaintiff's most salient
5  arguments and facts against granting Defendant leave to amend, set forth in greater
6  detail in Plaintiff's Opposition to Defendant's Motion for Leave (Dkt. 65, 66, 67;
7  Pearson Decl., ¶21, Exh. E), Defendant's Motion likely would have been denied and it
8  is extremely prejudicial and causes Plaintiff irreparable harm if the Court's ruling
9  granting Defendant's Motion stands without considering Plaintiff's Opposition.

10         Similarly, to the extend the Court does not vacate or reconsider its order (Dkt.
11 68) is extremely prejudicial and Plaintiff will suffer irreparable harm if she is not
12 permitted to, at the very least, conduct discovery into either defense.

13   **IV.    CONCLUSION**

14         Plaintiff's Application for relief from this Court, including but not limited to an
15 order (1) considering Plaintiff's mistakenly belated opposition, and vacating and/or
16 reconsidering its order granting Defendant's Motion for Leave, and/or (2) modifying
17 the scheduling order to re-open discovery and continue all upcoming discovery and
18 trial-related dates to allow the parties time to conduct discovery into Defendant's new
19 defenses should be granted. Plaintiff's failure to timely oppose Defendant's Motion
20 for Leave was due to excusable neglect and mistake caused by her children's medical
21 emergencies, as well as Defendant's misconduct. Additionally, it is just and proper to
22 do so given the high likelihood Defendant's Motion would have been denied. Either
23 way, however, the parties need to conduct discovery into Defendant's new defenses,
24 which neither have done because neither defense was **ever** raised prior to November
25 26, 2024, one year after the lawsuit was filed and months after Defendant's answer
26 had been filed (and these defenses waived).

27         If Defendant can be given **over one year** to assert affirmative defenses that it
28 waived **months ago** because **three** handling attorneys had personal issues, Plaintiff,

**PLAINTIFF'S *EX PARTE* APPLICATION – MEMO P&A**

1  respectfully, requests the same consideration be given to her in seeking to rectify her

2  excusable neglect within days of discovering it, and at **zero** prejudice to Defendant.

3      Plaintiff, respectfully, requests that her Application be granted.

4  Dated:  January 9, 2025                    YODER DREHER PEARSON, LLP

5

6                                        By:  */s/ Nicole C. Pearson*
7                                            NICOLE C. PEARSON
8                                            Attorneys for Plaintiff Katie Cappuccio

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S *EX PARTE* APPLICATION – MEMO P&A**

# EXHIBIT A



Nicole Pearson <npearson@ydplaw.com>

---

## CSU/Cappuccio - Stipulation to Amend Answer [QBLLP-ACTIVE.FID44269781]

**Nicole Pearson** <npearson@ydplaw.com>                          Mon, Dec 2, 2024 at 1:25 PM
To: "Davis, Heather" <Heather.Davis@quarles.com>
Cc: "Klekowski, Corrie" <Corrie.Klekowski@quarles.com>, "clerk@ydplaw.com" <clerk@ydplaw.com>

Hi Heather:

Thank you for your patience. I do not have authority to stipulate to allow CSU to amend its answer.

On Mon, Dec 2, 2024 at 7:57 AM Davis, Heather <Heather.Davis@quarles.com> wrote:

> Good Morning Nicole,
>
>
> Following up on my email below.  Is Plaintiff willing to stipulate to allow CSU to amend its answer to include
> affirmative defenses for undue burden and business necessity?  If Plaintiff is agreeable, I'll send you a draft
> stipulation along with our amended answer.  Thanks.
>
>
>
> **Paul Plevin**
>
> 
> A trade name of Quarles & Brady LLP
>
>
> **Heather Davis | Attorney**
>
> heather.davis@quarles.com | D. 619-243-1572
>
> Quarles & Brady LLP
>
> 101 West Broadway, Ninth Floor, San Diego, CA 92101-8285
>
> Bio | quarles.com | LinkedIn
>
> Assistant: Jenny Gonzalez, 619-400-1188

---

CONFIDENTIALITY NOTICE: This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission from your system. This communication is not intended to constitute an electronic signature unless expressly stated otherwise.

---

**From:** Davis, Heather
**Sent:** Tuesday, November 26, 2024 2:11 PM
**To:** Nicole Pearson <npearson@ydplaw.com>
**Cc:** Klekowski, Corrie <Corrie.Klekowski@quarles.com>
**Subject:** CSU/Cappuccio - Stipulation to Amend Answer [QBLLP-ACTIVE.FID44269781]


Nicole,


To follow up on our call from this morning, please let us know if Plaintiff is willing to stipulate to allow CSU to amend its answer to include the affirmative defenses for undue burden and business necessity.  We would attach the draft amended answer with these defenses to the stipulation.  I'm happy to discuss further with you if needed.  Thanks.



<span style="color:gray">Nicole Pearson <npearson@ydplaw.com></span>

## CSU/Cappuccio - CSU's Motion to Modify Scheduling Order/Motion to Amend Answer [QBLLP-ACTIVE.FID44269781]

**Davis, Heather** <Heather.Davis@quarles.com>                    Thu, Dec 5, 2024 at 2:18 PM
To: Nicole Pearson <npearson@ydplaw.com>
Cc: "Klekowski, Corrie" <Corrie.Klekowski@quarles.com>, "clerk@ydplaw.com" <clerk@ydplaw.com>

Nicole,

I would be happy to continue discussing this with you, and it would be my preference for the parties to agree and stipulate instead of moving forward with a motion.  However, we do believe we have sufficient grounds to move forward with a motion if necessary.

As you know, I am trial counsel on this case and was out on maternity leave when the answer was filed in my absence.  The very same month of my return, I reviewed the answer, determined other viable affirmative defenses existed, and sought to amend the answer.  I do not believe the Court will believe I acted in any dilatory manner with seeking the amendment.

Further, it is of note that the request is not made on the eve of trial, or even within six months of trial.  Trial in this matter is not scheduled until the end of June, leaving plaintiff with plenty of time to adjust her strategy if needed to account for these defenses.  No depositions have taken place yet, and CSU's motion for summary judgment has not yet been filed.  So, there is no prejudice to plaintiff with respect to conducting those proceedings.

CSU, on the other hand, will be unduly prejudiced should it not be able to present these defenses, as it is our position that Plaintiff's entire case may be disposed of on the basis of one or both of these defenses.

This is more than sufficient for good cause.  Please let me know if Plaintiff is willing to agree to the stipulation and I will send you a draft along with the Amended Answer.  Thank you.

<span style="color:gray">Heather</span>

---

**From:** Nicole Pearson <npearson@ydplaw.com>
**Sent:** Thursday, December 5, 2024 1:43 PM

**To:** Davis, Heather <Heather.Davis@quarles.com>
**Cc:** Klekowski, Corrie <Corrie.Klekowski@quarles.com>; clerk@ydplaw.com
**Subject:** Re: CSU/Cappuccio - CSU's Motion to Modify Scheduling Order/Motion to Amend Answer [QBLLP-ACTIVE.FID44269781]

Hi Heather:

Thank you for your email. Could you please provide the basis for your request to amend? What is the good cause and how can you argue that your client did not delay in bringing this motion when it filed its answer in July and it is now December?

I am always open to working with you to resolve issues like this together without engaging the Court; however, I do not see the proper basis(es) for your request and, thus, do not have authority to grant your client leave at this point. Can you please provide us with more information to evaluate your position before you file?

Thank you, in advance,

Nicole

On Wed, Dec 4, 2024 at 9:48 AM Davis, Heather <Heather.Davis@quarles.com> wrote:

> Good Morning Nicole,
>
> Since plaintiff is unwilling to agree to a stipulation at this time, CSU is forced to move forward with filing a motion regarding this issue.  Specifically, CSU will be filing a motion to modify the scheduling order to allow it to file a motion to amend its answer.
>
> CSU has good cause to seek leave of court to amend its answer to include the affirmative defenses for undue burden and business necessity.  Further, CSU has not delayed in seeking leave to amend.  CSU's request is made sufficiently in advance of the June 2024 trial, which is over six months away.  As a result, Plaintiff will not be unduly prejudiced by the Court granting CSU leave to amend.  As you know, courts freely grant leave in these circumstances, and we fully anticipate the Court will grant CSU leave to amend its answer here.
>
> I remain willing to continue to discuss these issues with you further by phone or email.  Should you wish to discuss further, give me a call when you are free.  Thank you.

**From:** Nicole Pearson <npearson@ydplaw.com>
**Sent:** Monday, December 2, 2024 1:26 PM
**To:** Davis, Heather <Heather.Davis@quarles.com>
**Cc:** Klekowski, Corrie <Corrie.Klekowski@quarles.com>; clerk@ydplaw.com
**Subject:** Re: FW: CSU/Cappuccio - Stipulation to Amend Answer [QBLLP-ACTIVE.FID44269781]

Hi Heather:

Thank you for your patience. I do not have authority to stipulate to allow CSU to amend its answer.

On Mon, Dec 2, 2024 at 7:57 AM Davis, Heather <Heather.Davis@quarles.com> wrote:

> Good Morning Nicole,
>
> Following up on my email below.  Is Plaintiff willing to stipulate to allow CSU to amend its answer to include affirmative defenses for undue burden and business necessity?  If Plaintiff is agreeable, I'll send you a draft stipulation along with our amended answer.  Thanks.



**Heather Davis | Attorney**

heather.davis@quarles.com | D. 619-243-1572

Quarles & Brady LLP

101 West Broadway, Ninth Floor, San Diego, CA 92101-8285

Bio | quarles.com | LinkedIn

Assistant: Jenny Gonzalez, 619-400-1188

CONFIDENTIALITY NOTICE: This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the

transmission from your system. This communication is not intended to constitute an electronic signature unless expressly stated otherwise.

---

**From:** Davis, Heather
**Sent:** Tuesday, November 26, 2024 2:11 PM
**To:** Nicole Pearson <npearson@ydplaw.com>
**Cc:** Klekowski, Corrie <Corrie.Klekowski@quarles.com>
**Subject:** CSU/Cappuccio - Stipulation to Amend Answer [QBLLP-ACTIVE.FID44269781]


Nicole,


To follow up on our call from this morning, please let us know if Plaintiff is willing to stipulate to allow CSU to amend its answer to include the affirmative defenses for undue burden and business necessity.  We would attach the draft amended answer with these defenses to the stipulation.  I'm happy to discuss further with you if needed.  Thanks.



Nicole Pearson <npearson@ydplaw.com>

---

## CSU/Cappuccio - CSU's Motion to Modify Scheduling Order/Motion to Amend Answer [QBLLP-ACTIVE.FID44269781]

**Nicole Pearson** <npearson@ydplaw.com>                                    Thu, Dec 12, 2024 at 2:08 AM
To: "Davis, Heather" <Heather.Davis@quarles.com>
Cc: "Klekowski, Corrie" <Corrie.Klekowski@quarles.com>, "clerk@ydplaw.com" <clerk@ydplaw.com>
Bcc: Katie Cappuccio <katiecappuccio@yahoo.com>, Rachel Dreher <rdreher@ydplaw.com>

Hi Heather:

Thank you for giving us the time to prepare this analysis and response. As I mentioned to you, today, during Ms. Cappuccio's deposition, I have been working to gather the information I needed to corroborate our representations that this answer was prepared after you went out on maternity leave, and that you raised the issue as soon as you returned. I also needed to confirm our litigation timeline, and research the applicable standard for granting a request for leave to amend an answer under these circumstances, as I have only encountered this request where **new facts** were discovered to reveal the existence of a never-before-seen affirmative defense. Conversely, here, this is, and has always been, a case about discrimination / disparate treatment, failure to accommodate and retaliation due to Ms. Cappuccio's sincerely held religious beliefs in violation of Title VII, FEHA, and the First Amendment of the USC. Because of this, the affirmative defenses of "undue hardship" and "business necessity" have **always** been known to Defendants, and should have -- respectfully -- been asserted in the first instance.

While I do recognize that leave is typically "liberally granted," this is (1) usually related to plaintiffs amending their complaints and (2) "good cause" must always be shown first before the court will discuss or analyze any other factor considered in deciding whether to leave (e.g. bad faith, undue delay, prejudice, futility). Here, again, I do not see that you can satisfy this threshold showing of "good cause." This case was filed in October 2023 -- 6 months before your leave, which started per one of your last emails to me on or about April 26, 2024 -- alleging 4 causes of action for violation of Title VII failure to accommodate, violation of Title VII disparate impact, violation of FEHA failure to accommodate, and violation of 1st Am Free Exercise Clause. The complaint was amended on February 14, 2024 -- two months before your leave -- but only to name Mr. Forgues. The claims were not modified and, again, have always been about discrimination, failure to accommodate, and retaliation on the basis of religion.

Presumably -- and I actually know this to be true because you are an extremely intelligent, competent, and thoughtful attorney, and dedicated advocate for your client -- you were preparing for your leave by reviewing all of your cases with the attorneys who would be handling them while you were away. This would include, as you noted this afternoon, deciding whether to file a Motion to Dismiss on behalf of CSU, which you did on January 24, three months before your leave; another Motion to Dismiss February 28, two months before your leave; a reply to our oppositions on March 10, 6 weeks before your leave; and a Motion to Quash Service on March 27, one month before your leave. Two important facts to note as part of our discussion: (1) These filings were made after we granted your clients **two** extensions to file their responsive pleadings, pursuant to your office's request for more time to investigate and determine the best course of action for your clients. (Please see Dkt. Nos. 12 and 13 [Stipulations Extending CSU's time to Answer]); and (2) Although you state you are "trial counsel" on this matter, Ms. Klekowski has always been listed above you on the caption and is a Partner at your firm, while you are an Associate. This is a horrible thing to write because, again, I think you are an excellent litigator, and also because -- in my personal professional experience -- I have several times been the more hands on or "lead" advocate for my client than my supervising partner and I **know** for a **fact** that neither title nor bar number is an indicator of talent or proficiency. However, this did not vitiate the fact that the partner on the case was ultimately lead trial attorney, not me. Additionally, in my almost 20 years' of experience, the typical "rule of thumb" is that trial counsel is not an associate, but rather a partner at the firm. This is especially true with larger, more significant clients, like CSU. All this to say it is difficult for me to believe that you were the deciding attorney and driver of this litigation while pregnant; that you had no idea -- or opportunity to know -- that these two defenses were available to and should have been asserted on behalf of your clients; and that your leave impacted

Yoder Dreher Pattenaude et.al Mail - Re: Meet and Confer on CSU's Motion to Amend Answer (CSU - CP -- One)... 11/28/24, 9:05 PM

your firm's failure to assert them by the time they filed an answer on CSU's behalf, after several months of understanding, discussing, and litigating the underlying facts and claims of the case.

Even if the court were to find that you have "good cause" to make your request, now, I still believe that the factors it will consider in deciding whether leave to amend is appropriate weigh **against** granting it. As you know, the district court will consider "the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility," among others. (Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001 [citing Griggs v. Pace Am. Group, Inc. 170 F.ed 877, 880 (9th Cir. 1999)]). Of these, "[p]rejudice to the opposing party is the most important consideration." (Kuschner v. Nationwide Credit, Inc., 256 F.R.D. 684, 687 (E.D. Cal. 2009); see also Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir.1990)). Additionally, while delay, alone, is insufficient to deny amendment (Loehr v. Ventura County Community College,743 F.2d 1310, 1319–20 (9th Cir 19804)), undue delay should be considered. (Ibid.; See Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir.1990) [affirming district court's denial of motion for leave to amend to add new claims made two years into litigation (we are over one year into litigation)]). Leave to amend also should not be granted where amendment would be futile. (Miller v. Rykoff–Sexton, Inc., 845 F.2d 209, 214 (9th Cir.1988); Kiser v. General Electric Corp., 831 F.2d 423, 428 (3d Cir.1987), *cert. denied,* 485 U.S. 906, 108 S.Ct. 1078, 99 L.Ed.2d 238 (1988). A proposed amendment is "futile" if "no set of facts can be proved under the amendment to the pleading that would constitute a valid and sufficient claim or defense." (Kushner, supra, at 687). Here I believe we have evidence of bad faith, undue delay, and prejudice to our client, cutting against granting your client leave to amend.

**Bad Faith:** I do not think that you -- or anyone on your team -- acted in "bad faith" in failing to include these two critical affirmative defenses in your clients' answer, however, I do not believe they are acting in good faith, now, claiming it is a simple oversight that will not prejudice our client. As explained above, I believe there is no "plausible explanation" for your delayed "undue hardship" or "business necessity" application. (Compare Owens [new counsel was not told by former counsel that the prior action had been dismissed with prejudice]). You have simply stated that the answer was filed while you were out on leave, that these defenses were erroneously omitted, and that you notified me of the oversight and sought to rectify it immediately upon your return. While I agree that you are moving quickly to rectify this oversight, I -- respectfully -- do not understand how it was not identified in the 6 months leading up to your leave -- or the 6 months during it -- where you and your clients had ample time to identify these defenses to this discrimination, failure to accommodate, retaliation case and filed multiple motions dissecting our client's allegations and claims.

**Delay:** Again, while *you* have personally moved quickly on this, you have given no reason why these defenses were not discussed in the months leading up or during your leave -- now totaling over 1 year -- nor why the supervising partner on this matter did not realize their omission prior to your return. This is the same partner who has attended two hearings on your clients' behalves, and who has met and conferred with me on several occasions regarding the facts of the case, which has always been religious discrimination, retaliation, and failure to accommodate. Of note, this distinction was the basis for the Court denying CSU's rule 12b Motion to Dismiss, a point Ms. Klekowski and I argued before Judge Slaughter for over an hour.

**Prejudice:** Finally, and most importantly, Ms. Cappuccio will absolutely be prejudiced if you are allowed to assert these two brand new defenses weeks before motion, settlement conference, and other trial readiness deadlines pass. Yes, trial is currently set for June 24, 2025; however, **the discovery cut off date has already passed;** we are, basically, looking at our 2025 calendars to do any additional work on this case, with both of our offices, and your clients' campus, closed the majority of the weeks of December 23 to January 6; the last date to hear motions is February 13; and the settlement conference deadline is February 27. If these two defenses are added, we will need to conduct discovery into, *inter alia,* whether granting Ms. Cappuccio's exemption request would have caused an "undue hardship" on CSU's operations, whether denying her request was necessary for CSU's safe and efficient operation, and whether there was no acceptable alternative, or it was a "business necessity." (*See* Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir 1999) ["a need to reopen discovery and, therefore, delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend."]; *compare* Owens, supra, at 712 [no discovery needed as to *res judicata* defense]). Since these defenses have never been raised, we have not conducted discovery into these issues. While this district may have  liberalized the requirement that defendants must raise affirmative defenses in their initial pleadings," this only applies "if the delay does not prejudice the plaintiff." (Owen, supra at 712; Magana v. Commonwealth, 107 F.3d 1436, 1446 (9th Cir. 1997); *see also* Healy Tibbitts Constr. Co. v. Ins. Co. of North America, 679 F.2d 803, 804 (9th Cir.1982)). Again, Ms. Cappuccio will be prejudiced if you are permitted to add these brand new defenses at this stage of litigation.

Yoder Dreher Patterson Law - Gapputco v. 23-4 Motion Document Defendant's Motion to Amend Answer (23-CLP–ROMS-ROL420f.fu

I would like to add one more point that is totally unnecessary and semi-unprofessional as it is personal, but I need to say it anyways: as a woman who has had 3 children of her own while running her own firm, I wholeheartedly understand the difficulties, heartache, and stress of going on leave, being the lead on your cases, and having to split time between your babies and work. It pains me to write this email, and is probably a big reason it took me so long to do so. However, I believe in the position I have laid out for you, above, and I, too, have had my swollen new mom feet held to the fire in my cases. While I wish I did not have to do it to a fellow mom, now, especially one whom I respect and think is an excellent attorney, I have to protect my client's interests and believe we are right on this issue.

That said, **I am happy to continue discussing this with you and to hearing any response to my arguments, above.** I gave you my availability in my previous email regarding discovery -- today, Thursday, between 2 and 4 p.m. and Friday after 12 p.m. -- and will gladly discuss this with you during that time, as well.

Thank you, in advance,
Nicole

# EXHIBIT B

Yoder Dreher Pearson LLP Mail - CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-ACTIVE.FID44269781]                                    12/24/24, 12:50 AM



                                                                    Nicole Pearson <npearson@ydplaw.com>

---

## CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-ACTIVE.FID44269781]

---

**Nicole Pearson** <npearson@ydplaw.com>                              Tue, Dec 24, 2024 at 4:00 PM
To: "Davis, Heather" <Heather.Davis@quarles.com>
Cc: "Gonzalez, Jennifer A." <Jennifer.Gonzalez@quarles.com>, "Zelaya, Mary Q." <Mary.Zelaya@quarles.com>,
"Klekowski, Corrie" <Corrie.Klekowski@quarles.com>, "clerk@ydplaw.com" <clerk@ydplaw.com>

Hi Heather:

Ms. Cappuccio can sit before January 13 before classes begin (recall she also works). I am available every day the
week of January 6, except the 9, as I will be in San Francisco for that other hearing.

It was my understanding we were keeping time to as close to or under 5 hours to allow for the subsequent testimony
of 2 ish hours. We are amenable to 2 hours that might run over a bit like Dr. Forgues's did, but no 3 that might spill
over to 4. Could you please confirm how much time we spent the first session so we can decide how to proceed?

Nicole

> On Tue, Dec 24, 2024 at 1:33 PM Davis, Heather <Heather.Davis@quarles.com> wrote:
>
> Nicole,
>
>
> Thank you for your response.  It appears that the parties disagree on these issues.  We will be moving
> forward with filing an *ex parte* application seeking to continue CSU's deadline to file an MSJ.  Formal
> papers are forthcoming.
>
>
> Please confirm that Ms. Cappuccio will agree to sit for a second day of deposition on or before January
> 17, as it impacts the relief I need to request from the Court.  I can confirm the time spent during her
> first day of deposition.  In the meantime, are you contesting that an additional 2-3 hours is not
> permissible?  Let me know now, so that I can seek relief on that prior to her second day of deposition
> as well.  Plaintiff's typically sit for additional deposition time.   But I can get a court order if you think
> that is necessary.
>
>
> If you could get back to me today on the Jan. 17 date that would be helpful.
>
>
> ---
>
> **From:** Nicole Pearson <npearson@ydplaw.com>
> **Sent:** Tuesday, December 24, 2024 1:26 PM

Yoder Dreher Pearson LLP Mail - CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-ACTIVE.FID44269781]                    12/30/24, 12:50 AM

**To:** Davis, Heather <Heather.Davis@quarles.com>
**Cc:** Gonzalez, Jennifer A. <Jennifer.Gonzalez@quarles.com>; Zelaya, Mary Q.
<Mary.Zelaya@quarles.com>; Klekowski, Corrie <Corrie.Klekowski@quarles.com>;
clerk@ydplaw.com
**Subject:** Re: CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-
ACTIVE.FID44269781]

Hi Heather:


Following up on our call this morning:

1. I have reached out to the court to let them know we will seek to move the hearing date. This can be done by
   motion, stipulation or application and must be accompanied by a declaration setting forth the reasons for the
   requested continuance. As I mentioned during our call, we already have another hearing set for January 9
   that has been on calendar since November 26 and I must attend, in San Francisco, in person. Would you
   stipulate to a short continuance of the hearing date? I am available January 16 at 10 a.m., which is the
   following week.
2. I have read our November Joint Stipulation to Modify the Scheduling Order (Dkt. 57) and Court's Order (Dkt.
   58). I do not see where our Joint Stip it (a) did not extend Ms. Cappuccio's deadline to file an MSJ, which is
   the same as Defendants, or (b) precludes her from filing one. It merely states that we agreed to continue the
   motion hearing deadline to accommodate the outstanding depositions, as well as any MSJ, which you, at
   that time, contemplated filing and which required a 6 week filing-to-hearing window. Nowhere did we actually
   or intent to waive our right to file an MSJ along those same deadlines. I also do not see any order showing
   that Ms. Cappuccio's deadline to file an MSJ "ran a while ago," as you stated in our call. Again, the parties'
   deadline to file an MSJ has always been and is the same, and was modified by our Joint Stip (Dkt. 57) and
   the Judge's November 27 Order (Dkt. 58) which moved the date to hear **all** motions for **all** parties until
   February 13, 2025. The Order states: "Last Date to **Hear** Motions, February 13, 2025, **Thursday,**" [emphasis
   in original]. Footnote 3 states that this date was continued "*To accommodate the request that Defendant 'CSU
   may file its dispositive motion on or before December 30, 2024,'" (Stipulation at 3)*." This was not a limitation
   on what motions could be filed or by whom, but to explain how the February 13 date was calculated, taking
   into consideration the requisite 6 week filing to hearing window. All this to say, **we do agree to continue the
   February 13 deadline due to our inability to attend Ms. Cappuccio's second session of deposition
   yesterday; however, we do not agree to limit that extension to the filing of Defendants' MSJ, only, or
   to MSJ's, only, for that matter.** I believe the Court's Order is clear: the deadline to hear any and all motions
   filed by any and all parties is February 13, 2025. We can continue that deadline to accommodate Ms.
   Cappuccio's second session of deposition, and for any MSJ to be filed by either party.
3. I note in your email, below, you state Ms. Cappuccio is required to sit for an additional 2-3 hours. Could you
   please advise for how long she sat during her first session already?

Please let me know if you have any questions, or care to discuss further. I am working today until 5 p.m.


Best,

Nicole


On Mon, Dec 23, 2024 at 9:46 PM Nicole Pearson <npearson@ydplaw.com> wrote:

| Heather:

Yoder Dreher Pearson QLP Mail - CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-ACTIVE.FID44269781]    11/27/24, 12:50 AM

Attached are my proposed edits to the Joint Stip. The reason for. my delay is I wanted to explain -- and ask that we include -- and research how to request a continuance on your clients' Motion for Leave to Amend. I already have a hearing that date that has been set since November 26. (Motion to Dismiss). Please let me know if you are amenable to the same, and call me tomorrow if you have any questions. I will be out of the office, again, so cell phone is best. (Assuming I can get to it). Also, please note I made the dispositive motion deadline mutual or reciprocal, as we intend to file an MSJ as well.


Thank you, again, for your patience and help on this.


Best,

Nicole


On Mon, Dec 23, 2024 at 4:20 PM Davis, Heather <Heather.Davis@quarles.com> wrote:

Hi Nicole, following up on this. I was hoping to get the stipulation on file today, or tomorrow at the latest, to give the Court time to review before our current MSJ deadline runs in light of the holiday. Let me know if I can file with your e-signature. Thanks.

---

**From:** Davis, Heather <Heather.Davis@quarles.com>
**Sent:** Monday, December 23, 2024 12:43 PM
**To:** Nicole Pearson <npearson@ydplaw.com>
**Cc:** Gonzalez, Jennifer A. <Jennifer.Gonzalez@quarles.com>; Zelaya, Mary Q. <Mary.Zelaya@quarles.com>; Klekowski, Corrie <Corrie.Klekowski@quarles.com>; clerk@ydplaw.com
**Subject:** RE: CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-ACTIVE.FID44269781]


Nicole, here's the draft stipulation. I'll send you a quick text as well, to let you know this is here. Let me know if you have proposed changes, or if I have permission to file this with your e-signature.


Once you have an idea on Ms. Cappuccio's availability, let me know, so we can hold open a date. Thank you.

---

**From:** Davis, Heather
**Sent:** Monday, December 23, 2024 9:26 AM
**To:** Nicole Pearson <npearson@ydplaw.com>
**Cc:** Gonzalez, Jennifer A. <Jennifer.Gonzalez@quarles.com>; Zelaya, Mary Q.

<mary.zelaya@quarles.com>; Klekowski, Corrie <Corrie.Klekowski@quarles.com>;
clerk@ydplaw.com
**Subject:** RE: CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-
ACTIVE.FID44269781]

Nicole,

On the timing of Ms. Cappuccio's rescheduled deposition, I don't have availability until January 7.
I am generally open on January 7 and 8, and most of the week of January 13.  Let me know what
works for Ms. Cappuccio for a 2-3 hour remote time block.  If we can complete her deposition
before January 17, then we could make the new MSJ deadline January 31.  Is that agreeable?

On the subpoenaed documents, you mentioned to me at Ms. Cappuccio's last deposition that I
could try getting the medical docs she mentioned directly from Kaiser, so that was why we served
those.  I thought we were on the same page with that, but let me know if there's an issue.  I don't
have authority to reopen nonexpert discovery right now.

---

**From:** Nicole Pearson <npearson@ydplaw.com>
**Sent:** Monday, December 23, 2024 7:57 AM
**To:** Davis, Heather <Heather.Davis@quarles.com>
**Cc:** Gonzalez, Jennifer A. <Jennifer.Gonzalez@quarles.com>; Zelaya, Mary Q.
<Mary.Zelaya@quarles.com>; Klekowski, Corrie <Corrie.Klekowski@quarles.com>;
clerk@ydplaw.com
**Subject:** Re: CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-
ACTIVE.FID44269781]

Hi Heather:

We are amenable to extending the MSJ deadline; however, I note you issued subpoenas after the discovery
cut off date passed, which we are objecting to for that reason, among others. If you want to open up the non
discovery cut off date to allow for those, we can include that in the stip, as well.

I'll be checking emails today, but since I'm juggling 3 sick kids, if you want to shoot me a quick text when the
stip has been emailed over thay might be best. I believe you have my cell but if not: 949 278 6722

You can also call to discuss any of this further. I'll work on new dates from Ms. Cappuccio so we can include
that in the stip. Any timeframe you have in mind?

I appreciate your understanding and assistance with this, Heather.

Talk soon,

Nicole

On Sun, Dec 22, 2024 at 9:48 PM Davis, Heather <Heather.Davis@quarles.com> wrote:

> Hi Nicole,
>
> I am so sorry to hear about the sicknesses for both your kids and Ms. Cappuccio's.  There are some really horrible things going around right now.  I hope everyone makes a full recovery.
>
> I will let the court reporter know that the deposition is off, but expect that given the hour, we will likely be charged a same-day cancellation fee.  Thank you for offering to pay that.  I'll figure out what the cost is and will let you know the details.
>
> Since Ms. Cappuccio's deposition will not be happening tomorrow, we need to seek another continuance of CSU's MSJ deadline, which is currently December 30.  It seems unlikely that we will be able to reschedule Ms. Cappuccio's deposition prior to that deadline, and we need at least a week or two in between her deposition and the deadline to finish drafting the MSJ. Please let me know if this is agreeable and I will do the legwork in putting together a draft for your review and can handle filing.
>
> Please also let me know Ms. Cappuccio's earliest availability to reschedule the deposition.  We can still plan to do it remotely for approximately 2 or 3 hours.  Once we have a new date for her depo, we can back into the new MSJ deadline.
>
> I would prefer to have all this on file tomorrow, is possible, given the holiday court closures.
>
> Let me know if you'd like to chat about any of this, and I hope everyone gets better soon.
>
> Best,

**From:** Nicole Pearson <npearson@ydplaw.com>
**Sent:** Sunday, December 22, 2024 9:19 PM
**To:** Davis, Heather <Heather.Davis@quarles.com>
**Cc:** Gonzalez, Jennifer A. <Jennifer.Gonzalez@quarles.com>; Zelaya, Mary Q. <Mary.Zelaya@quarles.com>; Klekowski, Corrie <Corrie.Klekowski@quarles.com>; clerk@ydplaw.com
**Subject:** Re: CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-ACTIVE.FID44269781]


Hi Heather:


My apologies for the late email, but I have to cancel tomorrow's deposition. Every one of my three children are sick: 1 strep, 1 flu **and** strep, and my 1.5 yo son just spiked a fever, with diagnosis TBD. **On top of that** my sitter called out because she is sick too, **and** -- **_yes, and_** -- when I called Ms. Cappuccio to let her know all of this, she could not answer my call because she was bathing her son who has a 103 degree fever. Tragic....


I understand this is last minute and will eat the cancellation fee if any. Feel free to share these details with your reporting service. I also have all our children's doctors notes and test results from the **three** urgent care visits we have had over the last 5 days. And, no, that does not include my son... yet. Hopefully they have an emergency provision like our provider does, but, if not, please put me in contact with whoever I need to speak to to handle any charges you incur.


Thank you, in advance, for your understanding. Please call me if you have any questions. I hope you and your kids are doing better than ours...


Sincerely,

Nicole

EXHIBIT C

Yoder Dreher Pearson LLP Mail - CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-ACTIVE.FID44269781]                12/24/24, 12:53 AM



Nicole Pearson <npearson@ydplaw.com>

---

## CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-ACTIVE.FID44269781]

**Nicole Pearson** <npearson@ydplaw.com>                                 Mon, Dec 23, 2024 at 9:46 PM
To: "Davis, Heather" <Heather.Davis@quarles.com>
Cc: "Gonzalez, Jennifer A." <Jennifer.Gonzalez@quarles.com>, "Zelaya, Mary Q." <Mary.Zelaya@quarles.com>,
"Klekowski, Corrie" <Corrie.Klekowski@quarles.com>, "clerk@ydplaw.com" <clerk@ydplaw.com>
Bcc: Katie Cappuccio <katiecappuccio@yahoo.com>

Heather:

Attached are my proposed edits to the Joint Stip. The reason for. my delay is I wanted to explain -- and ask that we include -- and research how to request a continuance on your clients' Motion for Leave to Amend. I already have a hearing that date that has been set since November 26. (Motion to Dismiss). Please let me know if you are amenable to the same, and call me tomorrow if you have any questions. I will be out of the office, again, so cell phone is best. (Assuming I can get to it). Also, please note I made the dispositive motion deadline mutual or reciprocal, as we intend to file an MSJ as well.

Thank you, again, for your patience and help on this.

Best,
Nicole
[Quoted text hidden]

---

 **Joint Stipulation to Continue MSJ Deadline rev NCP.docx**
54K

1    CORRIE J. KLEKOWSKI (SBN 251338)
     corrie.klekowski@quarles.com
2    HEATHER C. DAVIS (SBN 307850)
     heather.davis@quarles.com
3    SUMMER KHATIB (SBN 352838)
     Summer.Khatib@quarles.com
4    **QUARLES & BRADY LLP**
     101 West Broadway, Ninth Floor
5    San Diego, California 92101-8285
     Telephone: 619-237-5200
6    Facsimile: 619-615-0700

7    Attorneys for Defendants THE BOARD
     OF TRUSTEES OF THE CALIFORNIA
8    STATE UNIVERSITY (incorrectly sued
     as "CALIFORNIA STATE UNIVERSITY
9    FULLERTON") and DAVID FORGUES

10   NICOLE C. PEARSON (SBN 265350)
     npearson@ydplaw.com
11   **YODER DREHER PEARSON, LLP**
     5319 University Drive, Ste. 503
12   Irvine, CA 92612
     Telephone: (949) 200 9170
13

     Attorneys for Plaintiff Katie Cappuccio
14

15            **UNITED STATES DISTRICT COURT**

16     **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

17

18   KATIE CAPPUCCIO,        Case No. 8:23-cv-02026-FWS-DFM

19        Plaintiff,       **JOINT STIPULATION TO MODIFY SCHEDULING ORDER**
20                  **(DKT 58)** <span style="color:red">**AND CONTINUE HEARING ON DEFENDANTS'**</span>
21        v.              <span style="color:red">**MOTION FOR LEAVE TO AMEND**</span>
    CALIFORNIA STATE UNIVERSITY,    <span style="color:red">**(DKT 60, 61)**</span>
22   FULLERTON, and DAVID
    FORGUES, in his individual capacity
23   and office capacity as Vice President of    Judge:      Hon. Fred W. Slaughter
    Human Resources,              Crtrm.:     Santa Ana, 10D
24                           Magistrate:   Douglas F. McCormick
       Defendants.          Crtrm:      Santa Ana, 6B
25

26                     **EXEMPT FROM FEES**
                    **GOVT. CODE § 6103**

27

28

---

                        Case No. 8:23-cv-02026-FWS-DFM
JOINT STIPULATION TO MODIFY SCHEDULING ORDER <span style="color:red">AND CONTINUE HEARING</span>

**Deleted:** (DKT 22)

This Joint Stipulation is made by and between Plaintiff Katie Cappuccio ("Plaintiff") and Defendant the Board of Trustees of the California State University ("CSU"), through their respective counsel, in light of the following facts:

**RECITALS**

1. On November 26, 2024, the Parties filed their first Joint Stipulation to Modify the Scheduling Order. Dkt. 57. In doing so, they sought to take the depositions of Plaintiff and Defendant David Forgues after the non-expert discovery cut off. The stipulation also sought to allow CSU to file its dispositive motion on or before December 30, 2024, which was after the dispositive motion deadline at that time. The Court issued an Order Re Joint Stipulation to Modify Scheduling Order allowing these modifications to the Scheduling Order. Dkt. 58.

2. Plaintiff's deposition was scheduled for December 11, 2024. The night before her deposition (December 10), Plaintiff produced responses to Defendants' first sets of Interrogatories and Requests for Production, and a document production that had not been previously produced. CSU contends the discovery responses were late and should have been received two weeks earlier. Plaintiff contends that she did not receive service of the discovery requests because they were sent to her old firm's email. CSU contends that she was still using the email address at the time of service and that service was proper. Putting aside the Parties' positions regarding service of CSU's discovery requests, Plaintiff produced verified responses and produced documents within five (5) days of receiving notice that Defendants had attempted to serve her with discovery. Because CSU did not receive Plaintiff's responses and documents until the night before the deposition, CSU was unable to review the responses or to incorporate questions regarding them into Plaintiff's December 11 deposition and Plaintiff agreed to allow Defendant to conduct a second day of Plaintiff's deposition on December 23, 2024.

3. Plaintiff deposed David Forgues on December 17, 2024.

4. Plaintiff's second deposition was scheduled for December 23, 2024.

---

Deleted: discovery

Deleted: she changed her email

Deleted: because

Deleted: . To remedy the late discovery, the

Deleted: Parties

Deleted: without any issue

However, at 9:20 p.m. the night before the deposition, Plaintiff's counsel informed CSU's counsel that she would not be able attend because her three children and her childcare / nanny / babysitter were severely and unexpectedly ill.  In exchange for the last minute cancelation, Plaintiff offered to pay any fee CSU incurred due to the last-minute cancellation, and to reschedule her deposition for another mutually agreeable date.  She also agreed to continue CSU's dispositive motion deadline to allow CSU time to take her second day of deposition, and to review and incorporate the transcript into its motion.

5.    The Parties are in the process of selecting a second date for Plaintiff's deposition, but expect to schedule it on or before January 17, 2025.

6.    To accommodate Plaintiff's second deposition, and to allow the Parties time to receive a certified copy of her deposition transcript, Plaintiff has agreed to allow the Parties to file any dispositive motion on or before January 31, 2025.

7.    The Parties also met and conferred and agreed that Defendants' Motion for Leave to Amend its Answer, which was filed on December 12, 2024 (Dkt. 60) be continued from January 9, 2025 to a date convenient to the Court, given that Plaintiff's counsel has a previously-calendared hearing set for the same day. (Motion to Dismiss in *Yaghoubi v. County of San Mateo, et al.*, Case No. 3:24-cv-06725-JD, set on November 26, 2024).

8.    IS THERE ANYTHING ELSE YOU WANT TO ADD IN HERE?

9.    The Parties file the instant stipulation pursuant to Local Rule 7-1, and request the Court issue an order modifying the current Scheduling Order as specified below.

10.    This request to modify the scheduling order, and to continue the hearing on Defendants' Motion for Leave to Amend, is made in good faith and after thorough meet and confer by the Parties.

/ / /

/ / /

**Deleted:** neither Plaintiff nor her attorney were able to

**Deleted:** the deposition because Plaintiff's one child and Plaintiff's counsel's

**Commented [NP1]:** what is the appropriate term now?

**Commented [NP2]:** I struck the part about Plaintiff's child being ill because she said she would have made it work, but I could not.

**Deleted:** Both Plaintiff and her counsel needed to stay home to take care of their children.

**Deleted:** agreed

**Deleted:** agreed

**Deleted:** Plaintiff

**Deleted:**

**Deleted:** CSU

**Deleted:** CSU

**Deleted:** its

**Deleted:**

**Formatted:** Font: (Default) Times New Roman

**Formatted:** Font: (Default) Times New Roman

**Formatted:** Font: (Default) Arial, Font color: Custom Color(RGB(34,34,34))

**Deleted:** 9.→

**Deleted:**

**Formatted:** Indent: First line:  0"

**STIPULATION**

NOW, THEREFORE, Plaintiff and CSU hereby stipulate and agree through their counsel of record to modify the Scheduling Order (Dkt. 58) and continue the hearing on Defendants' Motion for Leave to Amend (Dkt. 60, 61) as follows:

1.    CSU may take Plaintiff's second deposition on or before January 17, 2025.  Should an unforeseen scheduling issue arise on a subsequent date, the Parties agree to conduct a thorough meet and confer to resolve the issue and decide upon a mutually agreeable date to continue the deposition.

2.    The Parties may file any dispositive motions on or before January 31, 2025. The Parties agree to request the earliest available hearing date with the Court, and shall serve its dispositive motion at least six weeks before the hearing date.

3.    Aside from the dates specifically mentioned herein, the Parties are not requesting to modify any other dates reflected in the Scheduling Order.

4.    Defendants' Motion for Leave to Amend shall be continued from January 9, 2025, to a date and time convenient to the Court.

Dated:  December 23, 2024          QUARLES & BRADY LLP


By:  /s/ Heather C Davis
CORRIE J. KLEKOWSKI
HEATHER C. DAVIS
SUMMER KHATIB
Attorneys for Defendant THE BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY (incorrectly sued as "CALIFORNIA STATE UNIVERSITY FULLERTON") and DAVID FORGUES

| Deleted: CSU |
| Deleted: its |
| Deleted: CSU |
| Deleted: s |
| Deleted: CSU |
| Deleted: / / ¶ |

Dated: December 23, 2024          YODER DREHER PEARSON, LLP

By: _____
    NICOLE C. PEARSON
    Attorneys for Plaintiff Katie Cappuccio

/ / /

**SIGNATURE CERTIFICATION**

    Pursuant to L.R. 5-4.3.4(a)(2)(i), I hereby certify that the content of this document is acceptable to Nicole Pearson, counsel for Plaintiff Katie Cappuccio, and that my office has obtained Ms. Pearson's authorization to affix her electronic signature to this document.

Dated:  December 23, 2024          QUARLES & BRADY LLP

By:    _/s/ Heather C. Davis_
       CORRIE J. KLEKOWSKI
       HEATHER C. DAVIS
       Attorneys for Defendant The Board of
       Trustees of the California State University
       (erroneously sued as "California State
       University, Fullerton")

# EXHIBIT D



Nicole Pearson <npearson@ydplaw.com>

---

## CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-ACTIVE.FID44269781]

**Davis, Heather** <Heather.Davis@quarles.com>                          Tue, Dec 24, 2024 at 1:33 PM
To: Nicole Pearson <npearson@ydplaw.com>
Cc: "Gonzalez, Jennifer A." <Jennifer.Gonzalez@quarles.com>, "Zelaya, Mary Q." <Mary.Zelaya@quarles.com>,
"Klekowski, Corrie" <Corrie.Klekowski@quarles.com>, "clerk@ydplaw.com" <clerk@ydplaw.com>

Nicole,


Thank you for your response.  It appears that the parties disagree on these issues.  We will be moving
forward with filing an *ex parte* application seeking to continue CSU's deadline to file an MSJ.  Formal
papers are forthcoming.


Please confirm that Ms. Cappuccio will agree to sit for a second day of deposition on or before January
17, as it impacts the relief I need to request from the Court.  I can confirm the time spent during her first
day of deposition.  In the meantime, are you contesting that an additional 2-3 hours is not permissible?
Let me know now, so that I can seek relief on that prior to her second day of deposition as well.
Plaintiff's typically sit for additional deposition time.   But I can get a court order if you think that is
necessary.


If you could get back to me today on the Jan. 17 date that would be helpful.

---

**From:** Nicole Pearson <npearson@ydplaw.com>
**Sent:** Tuesday, December 24, 2024 1:26 PM
**To:** Davis, Heather <Heather.Davis@quarles.com>
**Cc:** Gonzalez, Jennifer A. <Jennifer.Gonzalez@quarles.com>; Zelaya, Mary Q.
<Mary.Zelaya@quarles.com>; Klekowski, Corrie <Corrie.Klekowski@quarles.com>; clerk@ydplaw.com
**Subject:** Re: CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-ACTIVE.FID44269781]


Hi Heather:


Following up on our call this morning:

Yoder Dreher Pearson QLP Mail - Cox/Cappuccio - Zoom? Login for Employee's Depo Day 2 (QDEEP-A04-V3-MBA-126978-1)   1/9/25, 9:39 AM

1. I have reached out to the court to let them know we will seek to move the hearing date. This can be done by motion, stipulation or application and must be accompanied by a declaration setting forth the reasons for the requested continuance. As I mentioned during our call, we already have another hearing set for January 9 that has been on calendar since November 26 and I must attend, in San Francisco, in person. Would you stipulate to a short continuance of the hearing date? I am available January 16 at 10 a.m., which is the following week.

2. I have read our November Joint Stipulation to Modify the Scheduling Order (Dkt. 57) and Court's Order (Dkt. 58). I do not see where our Joint Stip it (a) did not extend Ms. Cappuccio's deadline to file an MSJ, which is the same as Defendants, or (b) precludes her from filing one. It merely states that we agreed to continue the motion hearing deadline to accommodate the outstanding depositions, as well as any MSJ, which you, at that time, contemplated filing and which required a 6 week filing-to-hearing window. Nowhere did we actually or intent to waive our right to file an MSJ along those same deadlines. I also do not see any order showing that Ms. Cappuccio's deadline to file an MSJ "ran a while ago," as you stated in our call. Again, the parties' deadline to file an MSJ has always been and is the same, and was modified by our Joint Stip (Dkt. 57) and the Judge's November 27 Order (Dkt. 58) which moved the date to hear **all** motions for **all** parties until February 13, 2025. The Order states: "Last Date to **Hear** Motions, February 13, 2025, **Thursday,**" [emphasis in original]. Footnote 3 states that this date was continued "*To accommodate the request that Defendant 'CSU may file its dispositive motion on or before December 30, 2024,'" (Stipulation at 3)*." This was not a limitation on what motions could be filed or by whom, but to explain how the February 13 date was calculated, taking into consideration the requisite 6 week filing to hearing window. All this to say, **we do agree to continue the February 13 deadline due to our inability to attend Ms. Cappuccio's second session of deposition yesterday; however, we do not agree to limit that extension to the filing of Defendants' MSJ, only, or to MSJ's, only, for that matter.** I believe the Court's Order is clear: the deadline to hear any and all motions filed by any and all parties is February 13, 2025. We can continue that deadline to accommodate Ms. Cappuccio's second session of deposition, and for any MSJ to be filed by either party.

3. I note in your email, below, you state Ms. Cappuccio is required to sit for an additional 2-3 hours. Could you please advise for how long she sat during her first session already?

Please let me know if you have any questions, or care to discuss further. I am working today until 5 p.m.


Best,

Nicole


On Mon, Dec 23, 2024 at 9:46 PM Nicole Pearson <npearson@ydplaw.com> wrote:

Heather:


Attached are my proposed edits to the Joint Stip. The reason for. my delay is I wanted to explain -- and ask that we include -- and research how to request a continuance on your clients' Motion for Leave to Amend. I already have a hearing that date that has been set since November 26. (Motion to Dismiss). Please let me know if you are amenable to the same, and call me tomorrow if you have any questions. I will be out of the office, again, so cell phone is best. (Assuming I can get to it). Also, please note I made the dispositive motion deadline mutual or reciprocal, as we intend to file an MSJ as well.


Thank you, again, for your patience and help on this.


Best,

Yoder Dreher Pearson QLP Mail - CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-ACTIVE.FID44269781] 1/9/25, 9:39 AM

Nicole

On Mon, Dec 23, 2024 at 4:20 PM Davis, Heather <Heather.Davis@quarles.com> wrote:

> Hi Nicole, following up on this.  I was hoping to get the stipulation on file today, or tomorrow at the
> latest, to give the Court time to review before our current MSJ deadline runs in light of the holiday.
> Let me know if I can file with your e-signature.  Thanks.
>
> _____
>
> **From:** Davis, Heather <Heather.Davis@quarles.com>
> **Sent:** Monday, December 23, 2024 12:43 PM
> **To:** Nicole Pearson <npearson@ydplaw.com>
> **Cc:** Gonzalez, Jennifer A. <Jennifer.Gonzalez@quarles.com>; Zelaya, Mary Q.
> <Mary.Zelaya@quarles.com>; Klekowski, Corrie <Corrie.Klekowski@quarles.com>;
> clerk@ydplaw.com
> **Subject:** RE: CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-
> ACTIVE.FID44269781]
>
> Nicole, here's the draft stipulation.  I'll send you a quick text as well, to let you know this is here.  Let
> me know if you have proposed changes, or if I have permission to file this with your e-signature.
>
> Once you have an idea on Ms. Cappuccio's availability, let me know, so we can hold open a date.
> Thank you.
>
> _____
>
> **From:** Davis, Heather
> **Sent:** Monday, December 23, 2024 9:26 AM
> **To:** Nicole Pearson <npearson@ydplaw.com>
> **Cc:** Gonzalez, Jennifer A. <Jennifer.Gonzalez@quarles.com>; Zelaya, Mary Q.
> <mary.zelaya@quarles.com>; Klekowski, Corrie <Corrie.Klekowski@quarles.com>;
> clerk@ydplaw.com
> **Subject:** RE: CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-
> ACTIVE.FID44269781]
>
> Nicole,
>
> On the timing of Ms. Cappuccio's rescheduled deposition, I don't have availability until January 7.  I
> am generally open on January 7 and 8, and most of the week of January 13.  Let me know what
> works for Ms. Cappuccio for a 2-3 hour remote time block.  If we can complete her deposition before
> January 17, then we could make the new MSJ deadline January 31.  Is that agreeable?

On the subpoenaed documents, you mentioned to me at Ms. Cappuccio's last deposition that I could try getting the medical docs she mentioned directly from Kaiser, so that was why we served those.  I thought we were on the same page with that, but let me know if there's an issue.  I don't have authority to reopen nonexpert discovery right now.

---

**From:** Nicole Pearson <npearson@ydplaw.com>
**Sent:** Monday, December 23, 2024 7:57 AM
**To:** Davis, Heather <Heather.Davis@quarles.com>
**Cc:** Gonzalez, Jennifer A. <Jennifer.Gonzalez@quarles.com>; Zelaya, Mary Q. <Mary.Zelaya@quarles.com>; Klekowski, Corrie <Corrie.Klekowski@quarles.com>; clerk@ydplaw.com
**Subject:** Re: CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-ACTIVE.FID44269781]

Hi Heather:

We are amenable to extending the MSJ deadline; however, I note you issued subpoenas after the discovery cut off date passed, which we are objecting to for that reason, among others. If you want to open up the non discovery cut off date to allow for those, we can include that in the stip, as well.

I'll be checking emails today, but since I'm juggling 3 sick kids, if you want to shoot me a quick text when the stip has been emailed over thay might be best. I believe you have my cell but if not: 949 278 6722

You can also call to discuss any of this further. I'll work on new dates from Ms. Cappuccio so we can include that in the stip. Any timeframe you have in mind?

I appreciate your understanding and assistance with this, Heather.

Talk soon,

Nicole

On Sun, Dec 22, 2024 at 9:48 PM Davis, Heather <Heather.Davis@quarles.com> wrote:

> Hi Nicole,

I am so sorry to hear about the sicknesses for both your kids and Ms. Cappuccio's.  There are some really horrible things going around right now.  I hope everyone makes a full recovery.

I will let the court reporter know that the deposition is off, but expect that given the hour, we will likely be charged a same-day cancellation fee.  Thank you for offering to pay that.  I'll figure out what the cost is and will let you know the details.

Since Ms. Cappuccio's deposition will not be happening tomorrow, we need to seek another continuance of CSU's MSJ deadline, which is currently December 30.  It seems unlikely that we will be able to reschedule Ms. Cappuccio's deposition prior to that deadline, and we need at least a week or two in between her deposition and the deadline to finish drafting the MSJ.  Please let me know if this is agreeable and I will do the legwork in putting together a draft for your review and can handle filing.

Please also let me know Ms. Cappuccio's earliest availability to reschedule the deposition.  We can still plan to do it remotely for approximately 2 or 3 hours.  Once we have a new date for her depo, we can back into the new MSJ deadline.

I would prefer to have all this on file tomorrow, is possible, given the holiday court closures.

Let me know if you'd like to chat about any of this, and I hope everyone gets better soon.

Best,

---

**From:** Nicole Pearson <npearson@ydplaw.com>
**Sent:** Sunday, December 22, 2024 9:19 PM
**To:** Davis, Heather <Heather.Davis@quarles.com>
**Cc:** Gonzalez, Jennifer A. <Jennifer.Gonzalez@quarles.com>; Zelaya, Mary Q. <Mary.Zelaya@quarles.com>; Klekowski, Corrie <Corrie.Klekowski@quarles.com>; clerk@ydplaw.com
**Subject:** Re: CSU/Cappuccio - Zoom Login for Cappuccio Depo Day 2 [QBLLP-ACTIVE.FID44269781]

Hi Heather:

My apologies for the late email, but I have to cancel tomorrow's deposition. Every one of my three children are

sick: 1 strep, 1 flu **and** strep, and my 1.5 yo son just spiked a fever, with diagnosis TBD. <u>**On top of that**</u> my sitter called out because she is sick too, **_and_** -- **_yes, and_** -- when I called Ms. Cappuccio to let her know all of this, she could not answer my call because she was bathing her son who has a 103 degree fever. Tragic....

I understand this is last minute and will eat the cancellation fee if any. Feel free to share these details with your reporting service. I also have all our children's doctors notes and test results from the **three** urgent care visits we have had over the last 5 days. And, no, that does not include my son... yet. Hopefully they have an emergency provision like our provider does, but, if not, please put me in contact with whoever I need to speak to to handle any charges you incur.

Thank you, in advance, for your understanding. Please call me if you have any questions. I hope you and your kids are doing better than ours...

Sincerely,

Nicole

# EXHIBIT E

1    NICOLE C. PEARSON (SBN 265350)
     npearson@ydplaw.com
2    **YODER DREHER PEARSON, LLP**
     5319 University Drive, Ste. 503
3    Irvine, CA 92612
     Telephone: (949) 200 9170
4

     Attorneys for Plaintiff Katie Cappuccio
5

6                **UNITED STATES DISTRICT COURT**

7      **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

8

9    KATIE CAPPUCCIO,           Case No. 8:23-cv-02026-FWS-DFM

10          Plaintiff,          **OPPOSITION TO *EX PARTE***
                                 **APPLICATION OF DEFENDANT**
11        v.                **CALIFORNIA STATE**
                                 **UNIVERSITY, FULLERTON TO**
12    CALIFORNIA STATE UNIVERSITY,   **MODIFY THE SCHEDULING**
     FULLERTON, and DAVID         **ORDER**
13    FORGUES, in his individual capacity
     and office capacity as Vice President of   Judge:        Hon. Fred W. Slaughter
14    Human Resources,             Crtrm.:       Santa Ana, 10D
                                 Magistrate:   Douglas F. McCormick
15          Defendants.        Crtrm:        Santa Ana, 6B

16

17

18        Plaintiff Katie Cappuccio ("Plaintiff") hereby submits the following Opposition

19 to the Motion for Leave to Amend the Answer of Defendant California State

20 University, Fullerton ("CSU" or "Defendant"). ("Motion") set for January 9, 2025.

21 Defendant's Motion should be denied because this lawsuit was filed in October 2023

22 and Defendant has **been on notice**[1] since that time – or for over one year – that this is

23 a religious discrimination / failure to accommodate / retaliation lawsuit to which the

24 ---

   [1] Plaintiff emphasizes that Defendant has "been on notice" that this is a religious
25 discrimination / failure to accommodate lawsuit because Plaintiff does not believe
   that Defendant understood that until recently, thereby giving rise to Defendant's
26 belated request to amend its Answer to assert two essential discrimination / failure
   to accommodate affirmative defenses, as described in greater detail herein, below.
27

28

OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION TO MODIFY SCHEDULING
ORDER (DKT. 58)

affirmative defenses of undue hardship and business necessity must be asserted or are otherwise waived. Despite this, Defendant failed to assert these two defenses **and** delayed seeking permission to amend to add them. Because Defendant has not shown good cause for its negligent failure to assert the two affirmative defenses in question, its Motion cannot be granted.

To the extent the Court disagrees, Defendant's Motion still cannot be granted because none of the factors this Court will likely consider weigh in favor of granting Defendant leave to amend: Defendant is acting in bad faith, delayed seeking relief, and Plaintiff will be absolutely and irreparably harmed and prejudiced if Defendant is permitted to assert two brand new affirmative defenses – at all – but certainly after the discovery cut-off date has expired, and motion hearing deadlines, and other trial-readiness events are already upon the parties.

For the reasons set forth in greater detail herein, below, Plaintiff respectfully asks this Court to deny Defendant's Motion for Leave to Amend.

OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION TO MODIFY SCHEDULING ORDER (DKT. 58)

1

## TABLE OF CONTENTS

**I.    INTRODUCTION** ................................................................1

**II.   STATEMENT OF PERTINENT FACTS** ............................................2

**III.  LEGAL ARGUMENT** ...........................................................4

**a.    Plaintiff's Lawsuit Has Always Been About Discrimination, Retaliation and Failure to Accommodate, therefore, Defendant Has Been on Notice since October 2023 that Undue Hardship and Business Necessity Are Affirmative Defenses That Needed to Be Asserted or Were Waived.** ...................5

**b.    Defendant Is Acting in Bad Faith in Seeking Leave to Add Two Potentially Dispositive Affirmative Defenses after the Discovery Cut-Off Date Has Run and Other Trial-Ready Deadlines Are Upon the Parties, and Plaintiff Be Irreparably Harmed if It Is Permitted to Do So.** ..............6

  i.    Defendant is acting in bad faith. .................................7

  ii.   Defendant unreasonably delayed. .............................8

  iii.  Plaintiff will be irreparably and unjustly prejudiced if Defendant is granted leave to add two new affirmative and potentially dispositive defenses, now. .....8

**IV.   CONCLUSION** ..............................................................10

# TABLE OF AUTHORITIES

**Federal Cases**

*Griggs v. Pace Am. Group, Inc.* 170 F.ed 877, 880 (9th Cir. 1999)            6

*Healy Tibbitts Constr. Co. v. Ins. Co. of North America,* 679
        F.2d 803, 804 (9th Cir.1982)            9

*Kuschner v. Nationwide Credit, Inc.,* 256 F.R.D. 684, 687 (E.D. Cal. 2009)   6

*Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir.1990)            6

*Loehr v. Ventura County Community College*, 743 F.2d 1310,
        1319–20 (9th Cir 1980)            6, 7

*Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir.2000) (*en banc*)            6, 7

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074,
        1079 (9th Cir.1990)            7

*Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708,
        712–13 (9th Cir. 2001)            5, 6, 7, 9


**Statutes**

Fed.R.Civ.P. 15(a)            5

---

OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION TO MODIFY SCHEDULING ORDER (DKT. 58)

1   **I.     INTRODUCTION**

2        This case arises out of Defendant California State University, Fullerton ("CSU"

3   or "Defendant") and its President of Human Resources, David Forgues ("Forgues")

4   (hereinafter collectively "Defendants") refusal to adhere to well-established federal

5   laws prohibiting employers from engaging in religiously-motivated discrimination or

6   retaliation against their employees. Specifically, Defendant has, now, admitted on the

7   record, vis a vis the deposition of it former Vice President of Human Resources and

8   Diversity, Equity and Inclusion ("VPHRDEI") David Forgues, that it was well-aware

9   of and versed in Title VII of the Civil Rights Act of 1964 ("Title VII"), California Fair

10  Employment and Housing ("FEHA"), and other federal and state laws and regulations

11  protecting employees' religious beliefs and practices in the workplace, and that it not

12  only chose to ignore these, but actually had **zero** legal authority to support denying

13  employees any religious accommodation to its testing requirement.

14       Contemporaneously, for over 10 years, Plaintiff was an exemplary employee,

15  putting her life on the line as a CSU police officer every day, including through the

16  Pandemic when other CSU employees were safely at home – with and without PPE –

17  to ensure the actual health and safety of her community. Plaintiff was also a devout

18  Christian who opposed Defendant's COVID-19 vaccination and testing requirements

19  and who submitted requests for religious accommodations to both, **which Defendant**

20  **granted**. Despite, or actually **because of** this, and with zero legal, let alone legitimate,

21  reason to do so, Defendant terminated Plaintiff's employment to "make an example"

22  out of her, and to deter other CSU employees form practicing their Faith.

23       <u>**Defendant, along with former defendant and VP HRDEI Forgues, have**</u>

24  <u>**known that Plaintiff has believed that she was discriminated and retaliated**</u>

25  <u>**against and her religious beliefs not accommodated since June of 2021**</u> when she

26  began objecting and seeking exemptions to Defendant's COVID-19 vaccine and

27  testing policies. Defendants certainly understood this in August of 2021, and again in

28

---

1

December of 2021, when Plaintiff submitted and then re-submitted her requests for religious accommodation to vaccination and testing. If they did not know then, they certainly knew after Plaintiff's *Skelly* hearing in February 2023, and her subsequent appeal, after the California Division of Civil Rights's and Equal Employment and Opportunity Commission's investigations of her complaints alleging the same, and absolutely upon receipt of the underlying lawsuit filed in October 2023.

While Defendants attempted – unsuccessfully – for months to construe this as a disciplinary action that had already been resolved in their favor in the administrative proceedings, entitling them to *res judicata,* among other **affirmative defenses** they asserted at the Motion to Dismiss level, Defendant has been on notice that Plaintiff is suing it for (1) Violation of Title VII (disparate impact); (2) Violation of Title VII (failure to accommodate); (3) Violation of FEHA (disparate impact, failure to accommodate); and (4) Violation of the First Amendment of the U.S. Constitution since – the very latest – October 2023. Despite this Defendant has failed **for over one year** to assert the defenses of undue hardship or business necessity, **while asserting others**.

Defense counsel claims that its failure to allege two affirmative defenses resulted from personal issues – maternity leave and family issues – which Plaintiff's counsel, a (former) solo practitioner litigator and mother of three wholeheartedly understands. However, these personal matters post-date the relevant time period for identifying and asserting Defendant's affirmative defenses by months, and do not justify Defendant seeking leave now, over one year after the lawsuit was filed, five months after its answer was filed, after the discovery cut-off date expired, and days before other critical litigation deadlines are set to run. Accordingly, Defendant's Motion must be denied.

## II.     STATEMENT OF PERTINENT FACTS

Plaintiff filed her complaint for (1) Violation of Title VII (disparate impact); (2) Violation of Title VII (failure to accommodate); (3) Violation of FEHA (disparate

1  impact, failure to accommodate); and (4) Violation of the First Amendment of the U.S.

2  Constitution on October 30, 2023. (Dkt. 1).

3       Upon request from defense counsel, the parties filed a Joint Stipulation extending

4  Defendant CSU's time to file its answer to the Complaint. (Dkts. 12, 13; Declaration of

5  Nicole C. Pearson ("Pearson Decl."), ¶3).

6       On January 24, 2024, defense counsel, associate Heather Davis, filed a Motion to

7  Dismiss Plaintiff's Complaint for (1) lack of jurisdiction and (2) failure to state a claim

8  on behalf of Defendant CSU. (Dkt. 15).

9       On February 14, 2024, Plaintiff amended her complaint to add former defendant

10 Forgues and changing no other claims, requests for relief, or substantive allegations.

11 (Dkt. 16, Pearson Decl., ¶4).

12      On February 28, 2024, Ms. Davis filed a Motion to Dismiss Plaintiff's Amended

13 Complaint for (1) lack of jurisdiction and (2) failure to state a claim on behalf of

14 Defendant CSU. (Dkt. 19). Plaintiff opposed, and she replied, to the same. (Dkt. 24,

15 26).

16      On February 29, 2024, defense counsel Ms. Davis filed a Rule 26(f) report on

17 behalf of Defendant CSU. (Dkt. 20).

18      On April 23, 2024, attorney Briana Atuna entered her appearance on behalf of

19 Defendants. (Dkt. 36).

20      On May 2, 2024, defense counsel Partner Corrie Klekowski attended the hearing

21 on Defendant CSU's Motion to Dismiss. (Dkt. 39, Pearson Decl. ¶5). Threat, Ms.

22 Klekowski argued extensively why *res judicata,* qualified and 11th amendment

23 immunity, **and other affirmative defenses** barred Plaintiff's lawsuit. Thereafter, Ms.

24 Klekowski and Plaintiff's counsel discussed the parties' respective positions, including

25 Plaintiff's case's "strengths" and "weaknesses," and Defendant's defenses, and the

26 possibility for informal dispute resolution and settlement. (Pearson Decl., ¶5).

27      On July 24, 2024, Ms. Klekowski filed an answer on behalf of Defendant CSU

28

OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION TO MODIFY SCHEDULING
ORDER (DKT. 58)

specifically addressing each one of Plaintiff's 165 paragraphs and Prayer for Relief, and asserting twelve affirmative defenses. (Dkt. 49).

On August 9, 2024, **Ms. Davis** filed the Joint Stipulation Extending Time to Answer the complaint as to David Forgues while out on leave. (Dkt. 50).

On August 23, 2024, Ms. Klekowski filed a Motion to Dismiss Plaintiff's Amended Complaint for (1) lack of jurisdiction and (2) failure to state a claim on behalf of former defendant Forgues. (Dkt. 52). Plaintiff opposed, and Ms. Klekowski replied, to the same. (Dkt. 54, 55).

On October 10, 2024, Ms. Klekowski attended the hearing on former defendant Forgues's Motion to Dismiss. (Dkt. 56, Pearson Decl. ¶6). Thereat, she argued why various affirmative defenses barred Plaintiff's lawsuit against him. Thereafter, Ms. Klekowski and Plaintiff's counsel again discussed the parties' positions, and the possibility for informal dispute resolution and settlement. (Ibid.)

On November 26, 2024, two days before the non-expert discovery deadline, Ms. Davis reached out to Plaintiff's counsel to ask her to stipulate to grant Defendant leave to amend its answer to assert the affirmative defenses of undue hardship and business necessity. (Id., ¶7, Exh. A). Over the course of the following week, counsel for the parties met and conferred regarding their respective positions on granting Defendant leave to amend its answer. (*Ibid.*)

Ultimately, the parties disagreed and Defendant filed this Motion. (Ibid.).

Plaintiff has offered to stipulate to re-open the discovery deadline on at least three separate occasions. Each time, Defendant has declined. (Pearson Decl., ¶8).

### III.    LEGAL ARGUMENT

A motion for leave to amend a pleading may only be granted where there is, first, good cause justifying it at the outset. Whereas, here, Defendant has had ample time, opportunity and resources to assert these defenses for over one year, and certainly since it filed its answer over five (5) months ago, Defendant's Motion must be denied.

1  Additionally, because Plaintiff will be irreparably and unjustly harmed and prejudiced if
2  Defendant is allowed to do so at all, but certainly after the discovery cut-off date has
3  expired and other deadlines are upon the parties, Defendant's Motion must be denied.

4          a.  **Plaintiff's Lawsuit Has Always Been About Discrimination,**
5              **Retaliation and Failure to Accommodate, therefore, Defendant**
6              **Has Been on Notice since October 2023 that Undue Hardship and**
7              **Business Necessity Are Affirmative Defenses That Needed to Be**
8              **Asserted or Were Waived.**

9          While leave is typically "liberally granted," it is (1) usually related to plaintiffs
10  amending complaints and (2) "good cause" must first be shown before a court will
11  discuss or analyze any other factor considered in deciding whether to leave (e.g. bad
12  faith, undue delay, prejudice, futility). (*See Owens v. Kaiser Found. Health Plan, Inc.,*
13  244 F.3d 708, 712–13 (9th Cir. 2001); *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th
14  Cir.2000) (*en banc*) (quoting Fed.R.Civ.P. 15(a)]). Here, Defendant cannot make this
15  threshold showing of "good cause." Therefore, its Motion must be denied.

16          This lawsuit was filed in October 2023 – 6 months before lead associate Ms.
17  Davis's leave began – and has always alleged the same four causes of action: violation
18  of Title VII failure to accommodate, violation of Title VII disparate impact, violation
19  of FEHA failure to accommodate, and violation of the First Amendment. While the
20  complaint was amended on February 14, 2024, this was still two months before Ms.
21  Davis went out on leave and only added former defendant Forgues. The claims were
22  not modified and, again, have always been about religious discrimination, failure to
23  accommodate, and retaliation on the basis of religion. (Pearson Decl., ¶¶3-5).

24          Moreover, while partner Ms. Klekowski also unfortunately experienced her
25  own personal hardships **while** Ms. Davis was out on leave, she had another associate,
26  Ms. Atuna, working on the case with her (*see* Dkt. 36), and it appears Ms. Davis was
27  working on the case while "out on leave." (*See* Dkt. 50). Ironically, her work on leave

28

1  pertained to the filing of the Joint Stipulation to extend former defendant Forgues's

2  time to answer. (*Ibid.*). In other words, Ms. Davis, whom Defendant claims was the

3  lead attorney on this matter rather than Partner Ms. Klekowski or associate Ms. Atuna

4  was still directing Defendant's strategy and substantive filings while away.

5      In addition to the foregoing, Defendant has been **substantively** litigating this

6  matter since February 2024 by way of various motions to dismiss, status reports, oral

7  arguments, meet and confer efforts, stipulations, and settlement discussions. (*See* Dkt.

8  19, 26, 20, 39, 49, 52, 55, 56; Pearson Decl., ¶¶3-5). Of significance on of its Motions

9  to Dismiss based upon *res judicata,* qualified and 11th Amendment immunity was

10  denied after over an hour of oral argument regarding the merits of Plaintiff's case.

11  (Dkt. 30). Therefore, Defendant cannot say it did not understand the substance of this

12  case sufficiently to allege the appropriate affirmative defenses in July, and certainly

13  before the discovery cut off ran November 28, and before dispositive and other critical

14  deadlines are fast approaching. Accordingly, Defendant's Motion must be denied.

15      b. **Defendant Is Acting in Bad Faith in Seeking Leave to Add Two**

16      **Potentially Dispositive Affirmative Defenses after the Discovery**

17      **Cut-Off Date Has Run and Other Trial-Ready Deadlines Are**

18      **Upon the Parties, and Plaintiff Be Irreparably Harmed if It Is**

19      **Permitted to Do So.**

20      Even if the court were to find that Defendant has "good cause" to make its

21  request, now, the factors it will consider in deciding whether leave to amend is

22  appropriate weigh against granting it. A district court will consider "the presence of

23  any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or

24  futility," among others. (*Owens, supra*, 244 F.3d at 713 [citing *Griggs v. Pace Am.*

25  *Group, Inc.* 170 F.ed 877, 880 (9th Cir. 1999)]). Of these, **"[p]rejudice to the**

26  **opposing party is the most important consideration."** (*Kuschner v. Nationwide*

27  *Credit, Inc.,* 256 F.R.D. 684, 687 (E.D. Cal. 2009) [emphasis added]; *see also Jackson*

28

*v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir.1990)]. Additionally, while delay, alone, is insufficient to deny amendment (*Loehr v. Ventura County Community College*, 743 F.2d 1310, 1319–20 (9th Cir 19804)), undue delay should be considered. (*Ibid.; See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990) [affirming district court's denial of motion for leave to amend to add new claims made two years into litigation (we are over one year into litigation)]). Here, Defendant is acting in bad faith, unduly delayed, and any leave will severely and irreparably prejudice Plaintiff. Therefore, its Motion must be denied.

i. <u>Defendant is acting in bad faith.</u>

Initially, Plaintiff did not believe that Defendant was acting in bad faith in failing to assert two affirmative defenses essential to defending any discrimination / retaliation / accommodation employment dispute. However, based upon events that have transpired over the Christmas holiday, Plaintiff is beginning to question whether this request was the result of "mere negligence and oversight," or intentional to place Plaintiff behind the eight ball. (*See e.g.* Dkt. 62, 63).

Not only has Defendant misrepresented the parties' discussions and agreement to the Court, but Defendant has declined **repeat** offers from Plaintiff to re-open the discovery cut of date. (Pearson Decl. ¶8). If Defendant truly "just wanted to fix an oversight" and did not want to prejudice Plaintiff, it certainly would have accepted, or itself offered, to open the deadline given its request made so late in litigation.

Defendant is also acting in bad faith claiming that adding two, brand new potentially dispositive affirmative defenses, now, will not prejudice Plaintiff, while at the same time refusing to offer to re-open up discovery.

Finally, there are many "plausible explanations" for Defendant's delay in asserting the affirmative defenses. (C.f. *Owens, supra,* [new counsel was not told by former counsel that the prior action had been dismissed with prejudice giving rise to a *res judicata* defense]). Defendant waited until **two days before** the discovery cut-off

date ran, not giving the parties any time to meet or confer (Pearson Decl., ¶7, Exh. A), and has simply stated that the answer was filed and the defenses erroneously omitted while **one** of the **three** attorneys assigned to the case (three out of a law firm of over 550) was out on leave, and that she notified Plaintiff of the "oversight" "immediately" upon her return. (Pearson Decl., ¶7, Exh. A). But we know this is simply not true, as this same attorney, the "lead" counsel and not the partner assigned to the case, was working while out on leave. (Dkt. 50). If the answer was truly a crucial filing that should not have been filed without her approval, she certainly could have reviewed or filed it, much as she did a must less important stipulation to extend Forgues's time to respond. (*Ibid.; see also* Dkt. 50). Furthermore, there is no reason how these two defenses were not identified in the 6 months **leading up to maternity leave**, or the 6 months while out on leave by the handling Partner or helping associate, **or counsel herself,** as she was working on other filings and Defendant has given reason why.

Defendant is not acting in good faith and, thus, its request must be denied.

### ii. Defendant unreasonably delayed.

Defendant has given no reason why these two affirmative defenses were not discussed in the months leading up or during her leave – now totaling over 1 year ago – nor why the supervising partner on this matter did not realize their omission prior to your return. While Plaintiff understands that this partner was experiencing her own personal hardships, there is no reason why the **third** attorney assigned to this case did not identify these standard discrimination / accommodation / retaliation defenses. There is also no reason why this same partner **who signed the Answer,** did not realize these defenses were omitted, after personally appearing and arguing at substantive motion hearings, and meeting and conferring with Plaintiff's counsel on multiple occasions about the parties' respective positions, strengths, weakness, **defenses,** and potential settlement options. (Dkt. 19, 26, 20, 39, 49, 52, 55, 56; Pearson Decl., ¶¶3-8).

### iii. Plaintiff will be irreparably and unjustly prejudiced if

OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION TO MODIFY SCHEDULING ORDER (DKT. 58)

1   <u>Defendant is granted leave to add two new affirmative and</u>

2   <u>potentially dispositive defenses, now.</u>

3       Finally – and most importantly to this Court's determination on whether or not

4   to grant Defendant leave to amend – Ms. Cappuccio will absolutely be prejudiced if

5   leave is granted to add two brand new, potentially dispositive affirmative defenses.

6   This is true, generally, but certainly, now, after discovery has closed, and motion,

7   settlement conference, and other trial readiness deadlines are set to run in a matter of

8   weeks. Yes, trial is currently set for June 24, 2025; however, the discovery cut off date

9   has already passed; the last date to hear motions is February 13; and the settlement

10  conference deadline is February 27. (*See* Dkt.) If these two defenses are added,

11  Plaintiff has every right to and will need to conduct discovery into, *inter alia*, whether

12  granting her exemption request would have caused an "undue hardship" on CSU's

13  operations; whether denying her request was necessary for CSU's safe and efficient

14  operation; and whether there was no acceptable alternative, or it was a "business

15  necessity." (*See Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 986

16  (9th Cir 1999) ["a need to reopen discovery and, therefore, delay the proceedings

17  supports a district court's finding of prejudice from a delayed motion to amend."]; c.f.

18  *Owens, supra,* at 712 [no discovery needed as to *res judicata* defense]). Since these

19  defenses have never been raised, the parties have not conducted discovery into these

20  issues. While this district may have liberalized the requirement that defendants must

21  raise affirmative defenses in their initial pleadings," this only applies "if the delay

22  does not prejudice the plaintiff." (*Owens, supra,* at 712; *Magana v.*

23  *Commonwealth,* 107 F.3d 1436, 1446 (9th Cir. 1997); *see also Healy Tibbitts Constr.*

24  *Co. v. Ins. Co. of North America,* 679 F.2d 803, 804 (9th Cir.1982)). Whereas, here,

25  Plaintiff will be prejudiced if Defendant is permitted to add these brand new defenses

26  at this stage of litigation, Defendant's Motion must be denied.

27  / / /

28

9

OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION TO MODIFY SCHEDULING
ORDER (DKT. 58)

## IV.   CONCLUSION

Defendant does not have good cause to seek relief for its negligent failure to assert two "potentially dispositive" affirmative defenses that should have been known to three handling attorneys upon receipt of this clear-cut religious discrimination, and at the very least failure to accommodate, retaliation lawsuit.

- Defendant is acting in bad faith, herein by this Motion, as well as by its ex parte application to alter unambiguous Court deadlines on Christmas Eve **knowing** Plaintiff's counsel was suffering from her own personal medical emergencies;

- Defendant is acting in bad faith relying on facts not known to Plaintiff until a week ago, which – had Plaintiff known of – Plaintiff would have accommodated for the same;

- Defendant is acting in bad faith by disingenuously claiming that granting it leave to amend to assert two brand new affirmative defenses that have never been alleged before that – by Defendant's own admission – "could dispose of all of the claims Plaintiff asserts against CSU in this case" will not prejudice Plaintiff, generally, but even after the discovery cut-off date has run;

- Defendant delayed seeking to rectify its "oversight" where Defendant is represented by a law firm with **over 550 attorneys,** and assigned **three** specifically to this lawsuit (Ms. Davis, Senior Associate, Ms. Klekowski, Partner, and Ms. Atuna, Associate) and (1) **at least one**, if not all, of these experienced attorneys should have known all of the applicable affirmative defenses **upon receipt** of Plaintiff's lawsuit, and certainly after the following:
   - December 11, 2023: seeking and obtaining an extension to file its answer to the Complaint, presumably to investigate Plaintiff's

1  claims and damages, and all grounds for defending against the
2  same;
3    o January 24, 2024: filing a Motion to Dismiss the Complaint for
4      "lack of subject matter jurisdiction" and "failure to state claims,"
5      which necessarily entails understanding Plaintiff's claims **and,**
6      ***thus, Defendant's corresponding defenses,*** and filing a reply to
7      Plaintiff's opposition thereto;
8    o February 28, 2024: filing another Motion to Dismiss the First
9      Amended Complaint on the same grounds, and filing a reply to
10     Plaintiff's opposition thereto;
11   o January-February 2024 (various): meeting and conferring with
12     Plaintiff's counsel by phone and by email to prepare the Rule 26(f)
13     Report, **which included discussion of Plaintiff's claims and**
14     **damages and Defendant's defenses;**
15   o May 2, 2024: Partner Ms. Klekowski attending the hearing on
16     Defendant's Motion to Dismiss, arguing the motion substantively,
17     including extensive oral argument regarding the nature of
18     Plaintiff's case and Defendant's defenses, and thereafter meeting
19     and conferring with Plaintiff's counsel regarding Plaintiff's claims
20     and Defendant's defenses, the "strengths" of Defendant's defenses
21     and "weakness" of Plaintiff's case, and potential settlement;
22   o July 24, 2024: preparing and filing Defendant's Answer to the First
23     Amended Complaint;
24   o August 23, 2024: filing ***another*** Motion to Dismiss, this time on
25     behalf of former defendant David Forgues, and filing a reply to
26     Plaintiff's opposition thereto; and
27   o October 10, 2024: Partner Ms. Klekowski attending the hearing on
28

former defendant Forgues's Motion to Dismiss, arguing the motion substantively, including oral argument regarding the nature of Plaintiff's case against Dr. Forgues, as well as his defenses.

- All of these events are also demonstrative of Defendant's "bad faith." Defendant has had more than enough time and opportunity to (1) identify its omitted affirmative defenses and (2) rectify the situation.

- November 26, 2024: reaching out to Plaintiff's counsel to rectify its "oversight," two days before the non-expert discovery cut-off date ran, even though counsel was working on this case while out on leave;

- Plaintiff will be absolutely and irreparably prejudiced if Defendant is granted leave to include two potentially dispositive affirmative defenses to claims it has known about for over a year, and absolutely should have identified upon receipt of Plaintiff's religious discrimination / failure to accommodate / retaliation lawsuit, generally, but especially after the non-discovery cut off date has passed, and other trial-readiness deadlines are upon the parties.

While it is extremely difficult for Plaintiff to oppose this Motion on a personal level – as a mother and litigator herself – Plaintiff has **repeatedly** offered to move the Court jointly to seek resolution of **both parties'** needs, e.g. by suggesting the parties re-open discovery and modify motion deadlines, but Defendant has flat out refused every time. Additionally, it is simply not true that Defendant, represented by a prestigious national firm and several attorneys, did not have the time, money, or resources to identify these two important affirmative defenses **at any time** prior to November 2024, over one year after this lawsuit was filed.

Accordingly, Plaintiff respectfully requests that Defendant's Motion be denied.

Dated:  December 26, 2024          YODER DREHER PEARSON, LLP


                                   By:  */s/ Nicole C. Pearson*
                                        NICOLE C. PEARSON
                                        Attorneys for Plaintiff Katie Cappuccio

NICOLE C. PEARSON (SBN 265350)
npearson@ydplaw.com
**YODER DREHER PEARSON, LLP**
5319 University Drive, Ste. 503
Irvine, CA 92612
Telephone: (949) 200 9170

Attorneys for Plaintiff Katie Cappuccio

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| KATIE CAPPUCCIO,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA STATE UNIVERSITY, FULLERTON, and DAVID FORGUES, in his individual capacity and office capacity as Vice President of Human Resources,<br><br>Defendants. | Case No. 8:23-cv-02026-FWS-DFM<br><br>**PLAINTIFF'S OPPOSITION TO THE MOTION FOR LEAVE TO AMEND OF DEFENDANT CALIFORNIA STATE UNIVERSITY, FULLERTON**<br><br>Judge:        Hon. Fred W. Slaughter<br>Crtrm.:       Santa Ana, 10D<br>Magistrate:  Douglas F. McCormick<br>Crtrm:        Santa Ana, 6B |

Plaintiff Katie Cappuccio ("Plaintiff") hereby submits the following Opposition to the Motion for Leave to Amend the Answer of Defendant California State University, Fullerton ("CSU" or "Defendant") set to be heard January 9, 2025. ("Motion"). Defendant's Motion should be denied because this lawsuit was filed in October 2023 and Defendant has **been on notice**[1] since that time – or for over one year – that this is a religious discrimination / failure to accommodate / retaliation

---

[1] Plaintiff emphasizes that Defendant has "been on notice" that this is a religious discrimination / failure to accommodate lawsuit because Plaintiff does not believe that Defendant understood that until recently, thereby giving rise to Defendant's belated request to amend its Answer to assert two essential discrimination / failure to accommodate affirmative defenses, as described in greater detail herein, below.

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND

lawsuit to which the affirmative defenses of undue hardship and business necessity must be asserted or are otherwise waived. Despite this, Defendant failed to assert these two defenses **and** delayed seeking permission to amend to add them. Because Defendant has not shown good cause for its negligent failure to assert the two affirmative defenses in question, its Motion cannot be granted.

To the extent the Court disagrees, Defendant's Motion still cannot be granted because none of the factors this Court will likely consider weigh in favor of granting Defendant leave to amend: Defendant is acting in bad faith, delayed seeking relief, and Plaintiff will be absolutely and irreparably harmed and prejudiced if Defendant is permitted to assert two brand new affirmative defenses – at all – but certainly after the discovery cut-off date has expired, and motion hearing deadlines, and other trial-readiness events are already upon the parties.

For the reasons set forth in greater detail herein, below, Plaintiff respectfully asks this Court to deny Defendant's Motion for Leave to Amend.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND

1

2

## TABLE OF CONTENTS

3    **I.    INTRODUCTION** ................................................................................ 1

4    **II.   STATEMENT OF PERTINENT FACTS** ............................................ 2

5    **III.  LEGAL ARGUMENT** ......................................................................... 4

6    **a.    Plaintiff's Lawsuit Has Always Been About Discrimination, Retaliation**
     **and Failure to Accommodate, therefore, Defendant Has Been on Notice since**
7    **October 2023 that Undue Hardship and Business Necessity Are Affirmative**
8    **Defenses That Needed to Be Asserted or Were Waived.** ................................... 5

9    **b.    Defendant Is Acting in Bad Faith in Seeking Leave to Add Two**
     **Potentially Dispositive Affirmative Defenses after the Discovery Cut-Off Date**
10   **Has Run and Other Trial-Ready Deadlines Are Upon the Parties, and**
     **Plaintiff Be Irreparably Harmed if It Is Permitted to Do So.** ........................... 6
11
         i.    Defendant is acting in bad faith. ................................................... 7
12
         ii.   Defendant unreasonably delayed. ................................................. 8
13
         iii.  Plaintiff will be irreparably and unjustly prejudiced if Defendant is granted
14       leave to add two new affirmative and potentially dispositive defenses, now. ..... 8

     **IV.   CONCLUSION** ................................................................................. 10

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1          **<u>TABLE OF AUTHORITIES</u>**

2

3     **<u>Federal Cases</u>**

4     *Griggs v. Pace Am. Group, Inc.* 170 F.ed 877, 880 (9th Cir. 1999)          6

5     *Healy Tibbitts Constr. Co. v. Ins. Co. of North America,* 679

6          F.2d 803, 804 (9th Cir.1982)                                          9

7     *Kuschner v. Nationwide Credit, Inc.,* 256 F.R.D. 684, 687 (E.D. Cal. 2009)  6

8     *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir.1990)            6

9     *Loehr v. Ventura County Community College*, 743 F.2d 1310,

10          1319–20 (9th Cir 1980)                                               6, 7

11    *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir.2000) (*en banc*)          6, 7

12    *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074,

13          1079 (9th Cir.1990)                                                  7

14    *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708,

15          712–13 (9th Cir. 2001)                                               5, 6, 7, 9

16

17    **<u>Statutes</u>**

18    Fed.R.Civ.P. 15(a)                                                         5

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND

## I.    INTRODUCTION

This case arises out of Defendant California State University, Fullerton ("CSU" or "Defendant") and its President of Human Resources, David Forgues ("Forgues") (hereinafter collectively "Defendants") refusal to adhere to well-established federal laws prohibiting employers from engaging in religiously-motivated discrimination or retaliation against their employees. Specifically, Defendant has, now, admitted on the record, vis a vis the deposition of it former Vice President of Human Resources and Diversity, Equity and Inclusion ("VPHRDEI") David Forgues, that it was well-aware of and versed in Title VII of the Civil Rights Act of 1964 ("Title VII"), California Fair Employment and Housing ("FEHA"), and other federal and state laws and regulations protecting employees' religious beliefs and practices in the workplace, and that it not only chose to ignore these, but actually had **zero** legal authority to support denying employees any religious accommodation to its testing requirement.

Contemporaneously, for over 10 years, Plaintiff was an exemplary employee, putting her life on the line as a CSU police officer every day, including through the Pandemic when other CSU employees were safely at home – with and without PPE – to ensure the actual health and safety of her community. Plaintiff was also a devout Christian who opposed Defendant's COVID-19 vaccination and testing requirements and who submitted requests for religious accommodations to both, **which Defendant granted**. Despite, or actually **because of** this, and with zero legal, let alone legitimate, reason to do so, Defendant terminated Plaintiff's employment to "make an example" out of her, and to deter other CSU employees form practicing their Faith.

**<u>Defendant, along with former defendant and VP HRDEI Forgues, have known that Plaintiff has believed that she was discriminated and retaliated against and her religious beliefs not accommodated since June of 2021</u>** when she began objecting and seeking exemptions to Defendant's COVID-19 vaccine and testing policies. Defendants certainly understood this in August of 2021, and again in

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND

1    December of 2021, when Plaintiff submitted and then re-submitted her requests for
2    religious accommodation to vaccination and testing. If they did not know then, they
3    certainly knew after Plaintiff's *Skelly* hearing in February 2023, and her subsequent
4    appeal, after the California Division of Civil Rights's and Equal Employment and
5    Opportunity Commission's investigations of her complaints alleging the same, and
6    absolutely upon receipt of the underlying lawsuit filed in October 2023.

7            While Defendants attempted – unsuccessfully – for months to construe this as a
8    disciplinary action that had already been resolved in their favor in the administrative
9    proceedings, entitling them to *res judicata,* among other **affirmative defenses** they
10   asserted at the Motion to Dismiss level, Defendant has been on notice that Plaintiff is
11   suing it for (1) Violation of Title VII (disparate impact); (2) Violation of Title VII
12   (failure to accommodate); (3) Violation of FEHA (disparate impact, failure to
13   accommodate); and (4) Violation of the First Amendment of the U.S. Constitution since
14   – the very latest – October 2023. Despite this Defendant has failed **for over one year** to
15   assert the defenses of undue hardship or business necessity, **while asserting others**.

16           Defense counsel claims that its failure to allege two affirmative defenses
17   resulted from personal issues – maternity leave and family issues – which Plaintiff's
18   counsel, a (former) solo practitioner litigator and mother of three wholeheartedly
19   understands. However, these personal matters post-date the relevant time period for
20   identifying and asserting Defendant's affirmative defenses by months, and do not
21   justify Defendant seeking leave now, over one year after the lawsuit was filed, five
22   months after its answer was filed, after the discovery cut-off date expired, and days
23   before other critical litigation deadlines are set to run. Accordingly, Defendant's
24   Motion must be denied.

25   **II.    STATEMENT OF PERTINENT FACTS**

26           Plaintiff filed her complaint for (1) Violation of Title VII (disparate impact); (2)
27   Violation of Title VII (failure to accommodate); (3) Violation of FEHA (disparate

28

impact, failure to accommodate); and (4) Violation of the First Amendment of the U.S. Constitution on October 30, 2023. (Dkt. 1).

Upon request from defense counsel, the parties filed a Joint Stipulation extending Defendant CSU's time to file its answer to the Complaint. (Dkts. 12, 13; Declaration of Nicole C. Pearson ("Pearson Decl."), ¶3).

On January 24, 2024, defense counsel, associate Heather Davis, filed a Motion to Dismiss Plaintiff's Complaint for (1) lack of jurisdiction and (2) failure to state a claim on behalf of Defendant CSU. (Dkt. 15).

On February 14, 2024, Plaintiff amended her complaint to add former defendant Forgues and changing no other claims, requests for relief, or substantive allegations. (Dkt. 16, Pearson Decl., ¶4).

On February 28, 2024, Ms. Davis filed a Motion to Dismiss Plaintiff's Amended Complaint for (1) lack of jurisdiction and (2) failure to state a claim on behalf of Defendant CSU. (Dkt. 19). Plaintiff opposed, and she replied, to the same. (Dkt. 24, 26).

On February 29, 2024, defense counsel Ms. Davis filed a Rule 26(f) report on behalf of Defendant CSU. (Dkt. 20).

On April 23, 2024, attorney Briana Atuna entered her appearance on behalf of Defendants. (Dkt. 36).

On May 2, 2024, defense counsel Partner Corrie Klekowski attended the hearing on Defendant CSU's Motion to Dismiss. (Dkt. 39, Pearson Decl. ¶5). Threat, Ms. Klekowski argued extensively why *res judicata,* qualified and 11th amendment immunity, **and other affirmative defenses** barred Plaintiff's lawsuit. Thereafter, Ms. Klekowski and Plaintiff's counsel discussed the parties' respective positions, including Plaintiff's case's "strengths" and "weaknesses," and Defendant's defenses, and the possibility for informal dispute resolution and settlement. (Pearson Decl., ¶5).

On July 24, 2024, Ms. Klekowski filed an answer on behalf of Defendant CSU

specifically addressing each one of Plaintiff's 165 paragraphs and Prayer for Relief, and asserting twelve affirmative defenses. (Dkt. 49).

On August 9, 2024, **Ms. Davis** filed the Joint Stipulation Extending Time to Answer the complaint as to David Forgues while out on leave. (Dkt. 50).

On August 23, 2024, Ms. Klekowski filed a Motion to Dismiss Plaintiff's Amended Complaint for (1) lack of jurisdiction and (2) failure to state a claim on behalf of former defendant Forgues. (Dkt. 52). Plaintiff opposed, and Ms. Klekowski replied, to the same. (Dkt. 54, 55).

On October 10, 2024, Ms. Klekowski attended the hearing on former defendant Forgues's Motion to Dismiss. (Dkt. 56, Pearson Decl. ¶6). Threat, she argued why various affirmative defenses barred Plaintiff's lawsuit against him. Thereafter, Ms. Klekowski and Plaintiff's counsel again discussed the parties' positions, and the possibility for informal dispute resolution and settlement. (Ibid.)

On November 26, 2024, two days before the non-expert discovery deadline, Ms. Davis reached out to Plaintiff's counsel to ask her to stipulate to grant Defendant leave to amend its answer to assert the affirmative defenses of undue hardship and business necessity. (Id., ¶7, Exh. A). Over the course of the following week, counsel for the parties met and conferred regarding their respective positions on granting Defendant leave to amend its answer. (*Ibid.*)

Ultimately, the parties disagreed and Defendant filed this Motion. (Ibid.).

Plaintiff has offered to stipulate to re-open the discovery deadline on at least three separate occasions. Each time, Defendant has declined. (Pearson Decl., ¶8).

### III.   LEGAL ARGUMENT

A motion for leave to amend a pleading may only be granted where there is, first, good cause justifying it at the outset. Whereas, here, Defendant has had ample time, opportunity and resources to assert these defenses for over one year, and certainly since it filed its answer over five (5) months ago, Defendant's Motion must be denied.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND

1   Additionally, because Plaintiff will be irreparably and unjustly harmed and prejudiced if
2   Defendant is allowed to do so at all, but certainly after the discovery cut-off date has
3   expired and other deadlines are upon the parties, Defendant's Motion must be denied.

4               a.  **Plaintiff's Lawsuit Has Always Been About Discrimination,**
5                   **Retaliation and Failure to Accommodate, therefore, Defendant**
6                   **Has Been on Notice since October 2023 that Undue Hardship and**
7                   **Business Necessity Are Affirmative Defenses That Needed to Be**
8                   **Asserted or Were Waived.**

9        While leave is typically "liberally granted," it is (1) usually related to plaintiffs
10  amending complaints and (2) "good cause" must first be shown before a court will
11  discuss or analyze any other factor considered in deciding whether to leave (e.g. bad
12  faith, undue delay, prejudice, futility). (*See Owens v. Kaiser Found. Health Plan, Inc.,*
13  244 F.3d 708, 712–13 (9th Cir. 2001); *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th
14  Cir.2000) (*en banc*) (quoting Fed.R.Civ.P. 15(a)]). Here, Defendant cannot make this
15  threshold showing of "good cause." Therefore, its Motion must be denied.

16       This lawsuit was filed in October 2023 – 6 months before lead associate Ms.
17  Davis's leave began – and has always alleged the same four causes of action: violation
18  of Title VII failure to accommodate, violation of Title VII disparate impact, violation
19  of FEHA failure to accommodate, and violation of the First Amendment. While the
20  complaint was amended on February 14, 2024, this was still two months before Ms.
21  Davis went out on leave and only added former defendant Forgues. The claims were
22  not modified and, again, have always been about religious discrimination, failure to
23  accommodate, and retaliation on the basis of religion. (Pearson Decl., ¶¶3-5).

24       Moreover, while partner Ms. Klekowski also unfortunately experienced her
25  own personal hardships **while** Ms. Davis was out on leave, she had another associate,
26  Ms. Atuna, working on the case with her (*see* Dkt. 36), and it appears Ms. Davis was
27  working on the case while "out on leave." (*See* Dkt. 50). Ironically, her work on leave

28

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND

1  pertained to the filing of the Joint Stipulation to extend former defendant Forgues's

2  time to answer. (*Ibid.*). In other words, Ms. Davis, whom Defendant claims was the

3  lead attorney on this matter rather than Partner Ms. Klekowski or associate Ms. Atuna

4  was still directing Defendant's strategy and substantive filings while away.

5      In addition to the foregoing, Defendant has been **substantively** litigating this

6  matter since February 2024 by way of various motions to dismiss, status reports, oral

7  arguments, meet and confer efforts, stipulations, and settlement discussions. (*See* Dkt.

8  19, 26, 20, 39, 49, 52, 55, 56; Pearson Decl., ¶¶3-5). Of significance on of its Motions

9  to Dismiss based upon *res judicata,* qualified and 11th Amendment immunity was

10  denied after over an hour of oral argument regarding the merits of Plaintiff's case.

11  (Dkt. 30). Therefore, Defendant cannot say it did not understand the substance of this

12  case sufficiently to allege the appropriate affirmative defenses in July, and certainly

13  before the discovery cut off ran November 28, and before dispositive and other critical

14  deadlines are fast approaching. Accordingly, Defendant's Motion must be denied.

15          b.  **Defendant Is Acting in Bad Faith in Seeking Leave to Add Two**

16              **Potentially Dispositive Affirmative Defenses after the Discovery**

17              **Cut-Off Date Has Run and Other Trial-Ready Deadlines Are**

18              **Upon the Parties, and Plaintiff Be Irreparably Harmed if It Is**

19              **Permitted to Do So.**

20      Even if the court were to find that Defendant has "good cause" to make its

21  request, now, the factors it will consider in deciding whether leave to amend is

22  appropriate weigh against granting it. A district court will consider "the presence of

23  any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or

24  futility," among others. (*Owens, supra*, 244 F.3d at 713 [citing *Griggs v. Pace Am.*

25  *Group, Inc.* 170 F.ed 877, 880 (9th Cir. 1999)]). Of these, **"[p]rejudice to the**

26  **opposing party is the most important consideration."** (*Kuschner v. Nationwide*

27  *Credit, Inc.,* 256 F.R.D. 684, 687 (E.D. Cal. 2009) [emphasis added]; *see also Jackson*

28

1    *v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir.1990)]. Additionally, while delay,

2    alone, is insufficient to deny amendment (*Loehr v. Ventura County Community*

3    *College*, 743 F.2d 1310, 1319–20 (9th Cir 19804)), undue delay should be considered.

4    (*Ibid.; See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th

5    Cir.1990) [affirming district court's denial of motion for leave to amend to add new

6    claims made two years into litigation (we are over one year into litigation)]). Here,

7    Defendant is acting in bad faith, unduly delayed, and any leave will severely and

8    irreparably prejudice Plaintiff. Therefore, its Motion must be denied.

9                         i.   <u>Defendant is acting in bad faith.</u>

10        Initially, Plaintiff did not believe that Defendant was acting in bad faith in

11   failing to assert two affirmative defenses essential to defending any discrimination /

12   retaliation / accommodation employment dispute. However, based upon events that

13   have transpired over the Christmas holiday, Plaintiff is beginning to question whether

14   this request was the result of "mere negligence and oversight," or intentional to place

15   Plaintiff behind the eight ball. (*See e.g.* Dkt. 62, 63).

16        Not only has Defendant misrepresented the parties' discussions and agreement

17   to the Court, but Defendant has declined **repeat** offers from Plaintiff to re‑open the

18   discovery cut of date. (Pearson Decl. ¶8). If Defendant truly "just wanted to fix an

19   oversight" and did not want to prejudice Plaintiff, it certainly would have accepted, or

20   itself offered, to open the deadline given its request made so late in litigation.

21        Defendant is also acting in bad faith claiming that adding two, brand new

22   potentially dispositive affirmative defenses, now, will not prejudice Plaintiff, while at

23   the same time refusing to offer to re‑open up discovery.

24        Finally, there are many "plausible explanations" for Defendant's delay in

25   asserting the affirmative defenses. (C.f. *Owens, supra,* [new counsel was not told by

26   former counsel that the prior action had been dismissed with prejudice giving rise to a

27   *res judicata* defense]). Defendant waited until **two days before** the discovery cut‑off

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND

1   date ran, not giving the parties any time to meet or confer (Pearson Decl., ¶7, Exh. A),

2   and has simply stated that the answer was filed and the defenses erroneously omitted

3   while **one** of the **three** attorneys assigned to the case (three out of a law firm of over

4   550) was out on leave, and that she notified Plaintiff of the "oversight" "immediately"

5   upon her return. (Pearson Decl., ¶7, Exh. A). But we know this is simply not true, as

6   this same attorney, the "lead" counsel and not the partner assigned to the case, was

7   working while out on leave. (Dkt. 50). If the answer was truly a crucial filing that

8   should not have been filed without her approval, she certainly could have reviewed or

9   filed it, much as she did a must less important stipulation to extend Forgues's time to

10  respond. (*Ibid.; see also* Dkt. 50). Furthermore, there is no reason how these two

11  defenses were not identified in the 6 months **leading up to maternity leave**, or the 6

12  months while out on leave by the handling Partner or helping associate, **or counsel**

13  **herself,** as she was working on other filings and Defendant has given reason why.

14          Defendant is not acting in good faith and, thus, its request must be denied.

### ii. Defendant unreasonably delayed.

16          Defendant has given no reason why these two affirmative defenses were not

17  discussed in the months leading up or during her leave – now totaling over 1 year ago

18  – nor why the supervising partner on this matter did not realize their omission prior to

19  your return. While Plaintiff understands that this partner was experiencing her own

20  personal hardships, there is no reason why the **third** attorney assigned to this case did

21  not identify these standard discrimination / accommodation / retaliation defenses.

22  There is also no reason why this same partner **who signed the Answer,** did not realize

23  these defenses were omitted, after personally appearing and arguing at substantive

24  motion hearings, and meeting and conferring with Plaintiff's counsel on multiple

25  occasions about the parties' respective positions, strengths, weakness, **defenses,** and

26  potential settlement options. (Dkt. 19, 26, 20, 39, 49, 52, 55, 56; Pearson Decl., ¶¶**3-8**).

### iii. Plaintiff will be irreparably and unjustly prejudiced if

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND

1
2

<u>Defendant is granted leave to add two new affirmative and potentially dispositive defenses, now.</u>

3  Finally – and most importantly to this Court's determination on whether or not
4  to grant Defendant leave to amend – Ms. Cappuccio will absolutely be prejudiced if
5  leave is granted to add two brand new, potentially dispositive affirmative defenses.
6  This is true, generally, but certainly, now, after discovery has closed, and motion,
7  settlement conference, and other trial readiness deadlines are set to run in a matter of
8  weeks. Yes, trial is currently set for June 24, 2025; however, the discovery cut off date
9  has already passed; the last date to hear motions is February 13; and the settlement
10 conference deadline is February 27. (*See* Dkt.) If these two defenses are added,
11 Plaintiff has every right to and will need to conduct discovery into, *inter alia*, whether
12 granting her exemption request would have caused an "undue hardship" on CSU's
13 operations; whether denying her request was necessary for CSU's safe and efficient
14 operation; and whether there was no acceptable alternative, or it was a "business
15 necessity." (*See Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 986
16 (9th Cir 1999) ["a need to reopen discovery and, therefore, delay the proceedings
17 supports a district court's finding of prejudice from a delayed motion to amend."]; c.f.
18 *Owens, supra,* at 712 [no discovery needed as to *res judicata* defense]). Since these
19 defenses have never been raised, the parties have not conducted discovery into these
20 issues. While this district may have liberalized the requirement that defendants must
21 raise affirmative defenses in their initial pleadings," this only applies "if the delay
22 does not prejudice the plaintiff." (*Owens, supra,* at 712; *Magana v.*
23 *Commonwealth,* 107 F.3d 1436, 1446 (9th Cir. 1997); *see also Healy Tibbitts Constr.*
24 *Co. v. Ins. Co. of North America,* 679 F.2d 803, 804 (9th Cir.1982)). Whereas, here,
25 Plaintiff will be prejudiced if Defendant is permitted to add these brand new defenses
26 at this stage of litigation, Defendant's Motion must be denied.
27 ///
28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND

## IV.   CONCLUSION

Defendant does not have good cause to seek relief for its negligent failure to assert two "potentially dispositive" affirmative defenses that should have been known to three handling attorneys upon receipt of this clear-cut religious discrimination, and at the very least failure to accommodate, retaliation lawsuit.

- Defendant is acting in bad faith, herein by this Motion, as well as by its ex parte application to alter unambiguous Court deadlines on Christmas Eve **knowing** Plaintiff's counsel was suffering from her own personal medical emergencies;

- Defendant is acting in bad faith relying on facts not known to Plaintiff until a week ago, which – had Plaintiff known of – Plaintiff would have accommodated for the same;

- Defendant is acting in bad faith by disingenuously claiming that granting it leave to amend to assert two brand new affirmative defenses that have never been alleged before that – by Defendant's own admission – "could dispose of all of the claims Plaintiff asserts against CSU in this case" will not prejudice Plaintiff, generally, but even after the discovery cut-off date has run;

- Defendant delayed seeking to rectify its "oversight" where Defendant is represented by a law firm with **over 550 attorneys,** and assigned **three** specifically to this lawsuit (Ms. Davis, Senior Associate, Ms. Klekowski, Partner, and Ms. Atuna, Associate) and (1) **at least one**, if not all, of these experienced attorneys should have known all of the applicable affirmative defenses **upon receipt** of Plaintiff's lawsuit, and certainly after the following:

  - December 11, 2023: seeking and obtaining an extension to file its answer to the Complaint, presumably to investigate Plaintiff's

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND

claims and damages, and all grounds for defending against the same;

o January 24, 2024: filing a Motion to Dismiss the Complaint for "lack of subject matter jurisdiction" and "failure to state claims," which necessarily entails understanding Plaintiff's claims *and, thus, Defendant's corresponding defenses,* and filing a reply to Plaintiff's opposition thereto;

o February 28, 2024: filing another Motion to Dismiss the First Amended Complaint on the same grounds, and filing a reply to Plaintiff's opposition thereto;

o January-February 2024 (various): meeting and conferring with Plaintiff's counsel by phone and by email to prepare the Rule 26(f) Report, **which included discussion of Plaintiff's claims and damages and Defendant's defenses;**

o May 2, 2024: Partner Ms. Klekowski attending the hearing on Defendant's Motion to Dismiss, arguing the motion substantively, including extensive oral argument regarding the nature of Plaintiff's case and Defendant's defenses, and thereafter meeting and conferring with Plaintiff's counsel regarding Plaintiff's claims and Defendant's defenses, the "strengths" of Defendant's defenses and "weakness" of Plaintiff's case, and potential settlement;

o July 24, 2024: preparing and filing Defendant's Answer to the First Amended Complaint;

o August 23, 2024: filing *another* Motion to Dismiss, this time on behalf of former defendant David Forgues, and filing a reply to Plaintiff's opposition thereto; and

o October 10, 2024: Partner Ms. Klekowski attending the hearing on

former defendant Forgues's Motion to Dismiss, arguing the motion substantively, including oral argument regarding the nature of Plaintiff's case against Dr. Forgues, as well as his defenses.

- All of these events are also demonstrative of Defendant's "bad faith." Defendant has had more than enough time and opportunity to (1) identify its omitted affirmative defenses and (2) rectify the situation.

   o November 26, 2024: reaching out to Plaintiff's counsel to rectify its "oversight," two days before the non-expert discovery cut-off date ran, even though counsel was working on this case while out on leave;

- Plaintiff will be absolutely and irreparably prejudiced if Defendant is granted leave to include two potentially dispositive affirmative defenses to claims it has known about for over a year, and absolutely should have identified upon receipt of Plaintiff's religious discrimination / failure to accommodate / retaliation lawsuit, generally, but especially after the non-discovery cut off date has passed, and other trial-readiness deadlines are upon the parties.

While it is extremely difficult for Plaintiff to oppose this Motion on a personal level – as a mother and litigator herself – Plaintiff has **repeatedly** offered to move the Court jointly to seek resolution of **both parties'** needs, e.g. by suggesting the parties re-open discovery and modify motion deadlines, but Defendant has flat out refused every time. Additionally, it is simply not true that Defendant, represented by a prestigious national firm and several attorneys, did not have the time, money, or resources to identify these two important affirmative defenses **at any time** prior to November 2024, over one year after this lawsuit was filed.

Accordingly, Plaintiff respectfully requests that Defendant's Motion be denied.

1

2   Dated: December 26, 2024          YODER DREHER PEARSON, LLP

3

4                                     By: _/s/ Nicole C. Pearson_____
                                          NICOLE C. PEARSON
5                                         Attorneys for Plaintiff Katie Cappuccio

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NICOLE C. PEARSON (SBN 265350)
npearson@ydplaw.com
**YODER DREHER PEARSON, LLP**
5319 University Drive, Ste. 503
Irvine, CA 92612
Telephone: (949) 200 9170

Attorneys for Plaintiff Katie Cappuccio

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| KATIE CAPPUCCIO, | Case No. 8:23-cv-02026-FWS-DFM |
| Plaintiff, | **DECLARATION OF NICOLE C. PEARSON IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE MOTION FOR LEAVE TO AMEND OF DEFENDANT CALIFORNIA STATE UNIVERSITY** |
| v. | |
| CALIFORNIA STATE UNIVERSITY, FULLERTON, and DAVID FORGUES, in his individual capacity and office capacity as Vice President of Human Resources, | |
| Defendants. | Judge: Hon. Fred W. Slaughter |
| | Crtrm.: Santa Ana, 10D |
| | Magistrate: Douglas F. McCormick |
| | Crtrm: Santa Ana, 6B |

## <u>DECLARATION OF NICOLE C. PEARSON</u>

I, Nicole C. Pearson, declare as follows:

1.      I am a partner at YODER DREHER PEARSON LLP, counsel of record for Plaintiff KATIE CAPPUCCIO in the above-entitled matter, and am licensed to practice before this Court. I have personal knowledge of the following facts and, if called as a witness, could and would testify competently thereto.

2.      This declaration is being submitted in support of Plaintiff's Opposition to the Motion for Leave to Amend the Answer of Defendant California State University, Fullerton ("CSU" or "Defendant") set to be heard January 9, 2025. ("Motion").

/ / /

---

1
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE – PEARSON DECL.

3.     Upon request of defense counsel, the parties filed a Joint Stipulation extending Defendant CSU's time to file its answer to the Complaint.

4.     On February 14, 2024, I amended Plaintiff's complaint to add former defendant Forgues. All other claims, requests for relief, and substantive allegations remained the same.

5.     On May 2, 2024, defense counsel Partner Corrie Klekowski attended the hearing on Defendant CSU's Motion to Dismiss. Threat, Ms. Klekowski argued extensively why *res judicata,* qualified and 11th amendment immunity, and other affirmative defenses barred Plaintiff's lawsuit. Thereafter, Ms. Klekowski and I discussed the parties' respective positions, including Plaintiff's case's "strengths" and "weaknesses," and Defendant's defenses, and the possibility for informal dispute resolution and settlement.

6.     On October 10, 2024, Ms. Klekowski attended the hearing on former defendant Forgues's Motion to Dismiss. Threat, she argued why various affirmative defenses barred Plaintiff's lawsuit against him. Thereafter, Ms. Klekowski and I, again, discussed the parties' positions, and the possibility for informal dispute resolution and settlement.

7.     On November 26, 2024, two days before the non-expert discovery deadline, Ms. Davis reached out to me to ask her to stipulate to grant Defendant leave to amend its answer to assert the affirmative defenses of undue hardship and business necessity. Over the course of the following week, we met and conferred regarding our respective positions on granting Defendant leave to amend its answer. Ultimately, we did not agree and Defendant filed this Motion. Attached hereto as **Exhibit A** is a true and correct copy of these email communications.

/ / /

/ / /

/ / /

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE – PEARSON DECL.

8.    I have offered to stipulate to re-open the discovery deadline on at least three separate occasions. Each time, defense counsel has declined, saying that she does not "have authority" to do so.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 26th day of December, 2024, at Newport Beach, California.

_____/s/ Nicole C. Pearson_____

Nicole C. Pearson, Esq.

Yoder Dreher Pearson LLP Mail - CSU/Cappuccio - Stipulation to Amend Answer [QBLLP-ACTIVE.FID44269781]    12/26/24, 8:47 PM



Nicole Pearson <npearson@ydplaw.com>

---

# CSU/Cappuccio - Stipulation to Amend Answer [QBLLP-ACTIVE.FID44269781]

**Nicole Pearson** <npearson@ydplaw.com>                                    Mon, Dec 2, 2024 at 1:25 PM
To: "Davis, Heather" <Heather.Davis@quarles.com>
Cc: "Klekowski, Corrie" <Corrie.Klekowski@quarles.com>, "clerk@ydplaw.com" <clerk@ydplaw.com>

Hi Heather:

Thank you for your patience. I do not have authority to stipulate to allow CSU to amend its answer.

On Mon, Dec 2, 2024 at 7:57 AM Davis, Heather <Heather.Davis@quarles.com> wrote:

> Good Morning Nicole,
>
>
> Following up on my email below.  Is Plaintiff willing to stipulate to allow CSU to amend its answer to include
> affirmative defenses for undue burden and business necessity?  If Plaintiff is agreeable, I'll send you a draft
> stipulation along with our amended answer.  Thanks.
>
>
>
> 
>
>
> **Heather Davis | Attorney**
>
> heather.davis@quarles.com | D. 619-243-1572
>
> Quarles & Brady LLP
>
> 101 West Broadway, Ninth Floor, San Diego, CA 92101-8285
>
> Bio | quarles.com | LinkedIn
>
> Assistant: Jenny Gonzalez, 619-400-1188

CONFIDENTIALITY NOTICE: This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission from your system. This communication is not intended to constitute an electronic signature unless expressly stated otherwise.

---

**From:** Davis, Heather
**Sent:** Tuesday, November 26, 2024 2:11 PM
**To:** Nicole Pearson <npearson@ydplaw.com>
**Cc:** Klekowski, Corrie <Corrie.Klekowski@quarles.com>
**Subject:** CSU/Cappuccio - Stipulation to Amend Answer [QBLLP-ACTIVE.FID44269781]


Nicole,


To follow up on our call from this morning, please let us know if Plaintiff is willing to stipulate to allow CSU to amend its answer to include the affirmative defenses for undue burden and business necessity.  We would attach the draft amended answer with these defenses to the stipulation.  I'm happy to discuss further with you if needed.  Thanks.

Yoder Dreher Pearson Clerk Mail - CSU/Cappuccio - CSU's Motion to Modify Scheduling Order/Motion to Amend Answer [QBLLP-ACTIVE.FID44269781]    12/5/24, 9:06 PM



Nicole Pearson <npearson@ydplaw.com>

## CSU/Cappuccio - CSU's Motion to Modify Scheduling Order/Motion to Amend Answer [QBLLP-ACTIVE.FID44269781]

**Davis, Heather** <Heather.Davis@quarles.com>                    Thu, Dec 5, 2024 at 2:18 PM
To: Nicole Pearson <npearson@ydplaw.com>
Cc: "Klekowski, Corrie" <Corrie.Klekowski@quarles.com>, "clerk@ydplaw.com" <clerk@ydplaw.com>

Nicole,

I would be happy to continue discussing this with you, and it would be my preference for the parties to agree and stipulate instead of moving forward with a motion.  However, we do believe we have sufficient grounds to move forward with a motion if necessary.

As you know, I am trial counsel on this case and was out on maternity leave when the answer was filed in my absence.  The very same month of my return, I reviewed the answer, determined other viable affirmative defenses existed, and sought to amend the answer.  I do not believe the Court will believe I acted in any dilatory manner with seeking the amendment.

Further, it is of note that the request is not made on the eve of trial, or even within six months of trial.  Trial in this matter is not scheduled until the end of June, leaving plaintiff with plenty of time to adjust her strategy if needed to account for these defenses.  No depositions have taken place yet, and CSU's motion for summary judgment has not yet been filed.  So, there is no prejudice to plaintiff with respect to conducting those proceedings.

CSU, on the other hand, will be unduly prejudiced should it not be able to present these defenses, as it is our position that Plaintiff's entire case may be disposed of on the basis of one or both of these defenses.

This is more than sufficient for good cause.  Please let me know if Plaintiff is willing to agree to the stipulation and I will send you a draft along with the Amended Answer.  Thank you.

Heather

**From:** Nicole Pearson <npearson@ydplaw.com>
**Sent:** Thursday, December 5, 2024 1:43 PM

**To:** Davis, Heather <Heather.Davis@quarles.com>
**Cc:** Klekowski, Corrie <Corrie.Klekowski@quarles.com>; clerk@ydplaw.com
**Subject:** Re: CSU/Cappuccio - CSU's Motion to Modify Scheduling Order/Motion to Amend Answer [QBLLP-ACTIVE.FID44269781]

Hi Heather:

Thank you for your email. Could you please provide the basis for your request to amend? What is the good cause and how can you argue that your client did not delay in bringing this motion when it filed its answer in July and it is now December?

I am always open to working with you to resolve issues like this together without engaging the Court; however, I do not see the proper basis(es) for your request and, thus, do not have authority to grant your client leave at this point. Can you please provide us with more information to evaluate your position before you file?

Thank you, in advance,

Nicole

On Wed, Dec 4, 2024 at 9:48 AM Davis, Heather <Heather.Davis@quarles.com> wrote:

> Good Morning Nicole,
>
> Since plaintiff is unwilling to agree to a stipulation at this time, CSU is forced to move forward with filing a motion regarding this issue. Specifically, CSU will be filing a motion to modify the scheduling order to allow it to file a motion to amend its answer.
>
> CSU has good cause to seek leave of court to amend its answer to include the affirmative defenses for undue burden and business necessity. Further, CSU has not delayed in seeking leave to amend. CSU's request is made sufficiently in advance of the June 2024 trial, which is over six months away. As a result, Plaintiff will not be unduly prejudiced by the Court granting CSU leave to amend. As you know, courts freely grant leave in these circumstances, and we fully anticipate the Court will grant CSU leave to amend its answer here.
>
> I remain willing to continue to discuss these issues with you further by phone or email. Should you wish to discuss further, give me a call when you are free. Thank you.

**From:** Nicole Pearson <npearson@ydplaw.com>
**Sent:** Monday, December 2, 2024 1:26 PM
**To:** Davis, Heather <Heather.Davis@quarles.com>
**Cc:** Klekowski, Corrie <Corrie.Klekowski@quarles.com>; clerk@ydplaw.com
**Subject:** Re: FW: CSU/Cappuccio - Stipulation to Amend Answer [QBLLP-ACTIVE.FID44269781]

Hi Heather:

Thank you for your patience. I do not have authority to stipulate to allow CSU to amend its answer.

On Mon, Dec 2, 2024 at 7:57 AM Davis, Heather <Heather.Davis@quarles.com> wrote:

Good Morning Nicole,

Following up on my email below.  Is Plaintiff willing to stipulate to allow CSU to amend its answer to include affirmative defenses for undue burden and business necessity?  If Plaintiff is agreeable, I'll send you a draft stipulation along with our amended answer.  Thanks.



**Heather Davis | Attorney**

heather.davis@quarles.com | D. 619-243-1572

Quarles & Brady LLP

101 West Broadway, Ninth Floor, San Diego, CA 92101-8285

Bio | quarles.com | LinkedIn

Assistant: Jenny Gonzalez, 619-400-1188

CONFIDENTIALITY NOTICE: This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the

transmission from your system. This communication is not intended to constitute an electronic signature unless expressly stated otherwise.

---

**From:** Davis, Heather
**Sent:** Tuesday, November 26, 2024 2:11 PM
**To:** Nicole Pearson <npearson@ydplaw.com>
**Cc:** Klekowski, Corrie <Corrie.Klekowski@quarles.com>
**Subject:** CSU/Cappuccio - Stipulation to Amend Answer [QBLLP-ACTIVE.FID44269781]


Nicole,


To follow up on our call from this morning, please let us know if Plaintiff is willing to stipulate to allow CSU to amend its answer to include the affirmative defenses for undue burden and business necessity.  We would attach the draft amended answer with these defenses to the stipulation.  I'm happy to discuss further with you if needed.  Thanks.

Yoder Dreher Pearson, LLP Mail - CSU/Cappuccio - CSU's Motion to Modify Scheduling Order/Motion to Amend Answer [QBLLP-ACTIVE.FID44269781] 12/12/24, 9:05 PM

Case 8:23-cv-02026-FWS-DFM   Document 63-1   Filed 01/09/25   Page 98 of 117
ID #:1740



Nicole Pearson <npearson@ydplaw.com>

---

## CSU/Cappuccio - CSU's Motion to Modify Scheduling Order/Motion to Amend Answer [QBLLP-ACTIVE.FID44269781]

**Nicole Pearson** <npearson@ydplaw.com>                                      Thu, Dec 12, 2024 at 2:08 AM
To: "Davis, Heather" <Heather.Davis@quarles.com>
Cc: "Klekowski, Corrie" <Corrie.Klekowski@quarles.com>, "clerk@ydplaw.com" <clerk@ydplaw.com>
Bcc: Katie Cappuccio <katiecappuccio@yahoo.com>, Rachel Dreher <rdreher@ydplaw.com>

Hi Heather:

Thank you for giving us the time to prepare this analysis and response. As I mentioned to you, today, during Ms. Cappuccio's deposition, I have been working to gather the information I needed to corroborate our representations that this answer was prepared after you went out on maternity leave, and that you raised the issue as soon as you returned. I also needed to confirm our litigation timeline, and research the applicable standard for granting a request for leave to amend an answer under these circumstances, as I have only encountered this request where **new facts** were discovered to reveal the existence of a never-before-seen affirmative defense. Conversely, here, this is, and has always been, a case about discrimination / disparate treatment, failure to accommodate and retaliation due to Ms. Cappuccio's sincerely held religious beliefs in violation of Title VII, FEHA, and the First Amendment of the USC. Because of this, the affirmative defenses of "undue hardship" and "business necessity" have **always** been known to Defendants, and should have -- respectfully -- been asserted in the first instance.

While I do recognize that leave is typically "liberally granted," this is (1) usually related to plaintiffs amending their complaints and (2) "good cause" must always be shown first before the court will discuss or analyze any other factor considered in deciding whether to leave (e.g. bad faith, undue delay, prejudice, futility). Here, again, I do not see that you can satisfy this threshold showing of "good cause." This case was filed in October 2023 -- 6 months before your leave, which started per one of your last emails to me on or about April 26, 2024 -- alleging 4 causes of action for violation of Title VII failure to accommodate, violation of Title VII disparate impact, violation of FEHA failure to accommodate, and violation of 1st Am Free Exercise Clause. The complaint was amended on February 14, 2024 -- two months before your leave -- but only to name Mr. Forgues. The claims were not modified and, again, have always been about discrimination, failure to accommodate, and retaliation on the basis of religion.

Presumably -- and I actually know this to be true because you are an extremely intelligent, competent, and thoughtful attorney, and dedicated advocate for your client -- you were preparing for your leave by reviewing all of your cases with the attorneys who would be handling them while you were away. This would include, as you noted this afternoon, deciding whether to file a Motion to Dismiss on behalf of CSU, which you did on January 24, three months before your leave; another Motion to Dismiss February 28, two months before your leave; a reply to our oppositions on March 10, 6 weeks before your leave; and a Motion to Quash Service on March 27, one month before your leave. Two important facts to note as part of our discussion: (1) These filings were made after we granted your clients **two** extensions to file their responsive pleadings, pursuant to your office's request for more time to investigate and determine the best course of action for your clients. (Please see Dkt. Nos. 12 and 13 [Stipulations Extending CSU's time to Answer]); and (2) Although you state you are "trial counsel" on this matter, Ms. Klekowski has always been listed above you on the caption and is a Partner at your firm, while you are an Associate. This is a horrible thing to write because, again, I think you are an excellent litigator, and also because -- in my personal professional experience -- I have several times been the more hands on or "lead" advocate for my client than my supervising partner and I **know** for a **fact** that neither title nor bar number is an indicator of talent or proficiency. However, this did not vitiate the fact that the partner on the case was ultimately lead trial attorney, not me. Additionally, in my almost 20 years' of experience, the typical "rule of thumb" is that trial counsel is not an associate, but rather a partner at the firm. This is especially true with larger, more significant clients, like CSU. All this to say it is difficult for me to believe that you were the deciding attorney and driver of this litigation while pregnant; that you had no idea -- or opportunity to know -- that these two defenses were available to and should have been asserted on behalf of your clients; and that your leave impacted

your firm's failure to assert them by the time they filed an answer on CSU's behalf, after several months of understanding, discussing, and litigating the underlying facts and claims of the case.

Even if the court were to find that you have "good cause" to make your request, now, I still believe that the factors it will consider in deciding whether leave to amend is appropriate weigh **against** granting it. As you know, the district court will consider "the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility," among others. (Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001 [citing Griggs v. Pace Am. Group, Inc. 170 F.ed 877, 880 (9th Cir. 1999)]). Of these, "[p]rejudice to the opposing party is the most important consideration." (Kuschner v. Nationwide Credit, Inc., 256 F.R.D. 684, 687 (E.D. Cal. 2009); see also Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir.1990)). Additionally, while delay, alone, is insufficient to deny amendment (Loehr v. Ventura County Community College,743 F.2d 1310, 1319–20 (9th Cir 19804)), undue delay should be considered. (Ibid.; See Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir.1990) [affirming district court's denial of motion for leave to amend to add new claims made two years into litigation (we are over one year into litigation)]). Leave to amend also should not be granted where amendment would be futile. (Miller v. Rykoff–Sexton, Inc., 845 F.2d 209, 214 (9th Cir.1988); Kiser v. General Electric Corp., 831 F.2d 423, 428 (3d Cir.1987), *cert. denied,* 485 U.S. 906, 108 S.Ct. 1078, 99 L.Ed.2d 238 (1988). A proposed amendment is "futile" if "no set of facts can be proved under the amendment to the pleading that would constitute a valid and sufficient claim or defense." (Kushner, supra, at 687). Here I believe we have evidence of bad faith, undue delay, and prejudice to our client, cutting against granting your client leave to amend.

**Bad Faith:** I do not think that you -- or anyone on your team -- acted in "bad faith" in failing to include these two critical affirmative defenses in your clients' answer, however, I do not believe they are acting in good faith, now, claiming it is a simple oversight that will not prejudice our client. As explained above, I believe there is no "plausible explanation" for your delayed "undue hardship" or "business necessity" application. (Compare Owens [new counsel was not told by former counsel that the prior action had been dismissed with prejudice]). You have simply stated that the answer was filed while you were out on leave, that these defenses were erroneously omitted, and that you notified me of the oversight and sought to rectify it immediately upon your return. While I agree that you are moving quickly to rectify this oversight, I -- respectfully -- do not understand how it was not identified in the 6 months leading up to your leave -- or the 6 months during it -- where you and your clients had ample time to identify these defenses to this discrimination, failure to accommodate, retaliation case and filed multiple motions dissecting our client's allegations and claims.

**Delay:** Again, while *you* have personally moved quickly on this, you have given no reason why these defenses were not discussed in the months leading up or during your leave -- now totaling over 1 year -- nor why the supervising partner on this matter did not realize their omission prior to your return. This is the same partner who has attended two hearings on your clients' behalves, and who has met and conferred with me on several occasions regarding the facts of the case, which has always been religious discrimination, retaliation, and failure to accommodate. Of note, this distinction was the basis for the Court denying CSU's rule 12b Motion to Dismiss, a point Ms. Klekowski and I argued before Judge Slaughter for over an hour.

**Prejudice:** Finally, and most importantly, Ms. Cappuccio will absolutely be prejudiced if you are allowed to assert these two brand new defenses weeks before motion, settlement conference, and other trial readiness deadlines pass. Yes, trial is currently set for June 24, 2025; however, **the discovery cut off date has already passed;** we are, basically, looking at our 2025 calendars to do any additional work on this case, with both of our offices, and your clients' campus, closed the majority of the weeks of December 23 to January 9, the last date to hear motions is February 19; and the settlement conference deadline is February 27. If these two defenses are added, we will need to conduct discovery into, *inter alia,* whether granting Ms. Cappuccio's exemption request would have caused an "undue hardship" on CSU's operations, whether denying her request was necessary for CSU's safe and efficient operation, and whether there was no acceptable alternative, or it was a "business necessity." (*See* Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir 1999) ["a need to reopen discovery and, therefore, delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend."]; *compare* Owens, supra, at 712 [no discovery needed as to *res judicata* defense]). Since these defenses have never been raised, we have not conducted discovery into these issues. While this district may have  liberalized the requirement that defendants must raise affirmative defenses in their initial pleadings," this only applies "if the delay does not prejudice the plaintiff." (Owen, supra at 712; Magana v. Commonwealth, 107 F.3d 1436, 1446 (9th Cir. 1997); *see also* Healy Tibbitts Constr. Co. v. Ins. Co. of North America, 679 F.2d 803, 804 (9th Cir.1982)). Again, Ms. Cappuccio will be prejudiced if you are permitted to add these brand new defenses at this stage of litigation.

Yoder Dreher Law Firm - Fwd: Graphic Designs - CSU's Motion to Strike Yoder Motion to Amend/Leave [WSLLP-ACTIVE.FID4288794]

I would like to add one more point that is totally unnecessary and semi-unprofessional as it is personal, but I need to say it anyways: as a woman who has had 3 children of her own while running her own firm, I wholeheartedly understand the difficulties, heartache, and stress of going on leave, being the lead on your cases, and having to split time between your babies and work. It pains me to write this email, and is probably a big reason it took me so long to do so. However, I believe in the position I have laid out for you, above, and I, too, have had my swollen new mom feet held to the fire in my cases. While I wish I did not have to do it to a fellow mom, now, especially one whom I respect and think is an excellent attorney, I have to protect my client's interests and believe we are right on this issue.

That said, **I am happy to continue discussing this with you and to hearing any response to my arguments, above.** I gave you my availability in my previous email regarding discovery -- today, Thursday, between 2 and 4 p.m. and Friday after 12 p.m. -- and will gladly discuss this with you during that time, as well.

Thank you, in advance,
Nicole

EXHIBIT F



Nicole Pearson <npearson@ydplaw.com>

---

## RE: Cappuccio v. CSUF - Stipulation / Motion for Leave to Amend, Discovery [QBLLP-ACTIVE.FID44269781]

**Davis, Heather** <Heather.Davis@quarles.com>                                Tue, Jan 7, 2025 at 10:53 AM
To: Nicole Pearson <npearson@ydplaw.com>, "Klekowski, Corrie" <Corrie.Klekowski@quarles.com>
Cc: Law Clerk <clerk@ydplaw.com>, "Gonzalez, Jennifer A." <Jennifer.Gonzalez@quarles.com>, "Zelaya, Mary Q." <Mary.Zelaya@quarles.com>

Good Morning Nicole,

I cannot agree to stipulate to reconsider the ruling on defendant's motion for leave to amend or to generally reopen discovery.

Respectfully, *ex parte* applications are rarely justified, and neither of your requests are suitable for *ex parte* relief.  To receive *ex parte* relief, there must be some exigency – i.e., an immediate threat of injury or harm, possible destruction of evidence, an impending deadline, etc.  But no exigency exists for these issues.

There is no exigent circumstance or irreparable prejudice which would require the Court to reconsider defendant's motion for leave to amend *underline(outside of regular noticed procedures)*.  Nor is there any exigency which would necessitate reopening discovery on an *ex parte* basis.  To the extent you intend to raise these issues to the Court, it should be done through regularly noticed motions.

I am willing and available to continue discussing these issues with you further.

Best,

Heather



**Heather Davis | Attorney**
heather.davis@quarles.com | D. 619-243-1572
Quarles & Brady LLP

101 West Broadway, Ninth Floor, San Diego, CA 92101-8285
Bio | quarles.com | LinkedIn
Assistant: Jenny Gonzalez, 619-400-1188

CONFIDENTIALITY NOTICE: This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or
retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission
from your system. This communication is not intended to constitute an electronic signature unless expressly stated otherwise.

**From:** Nicole Pearson <npearson@ydplaw.com>
**Sent:** Monday, January 6, 2025 5:16 PM
**To:** Davis, Heather <Heather.Davis@quarles.com>; Klekowski, Corrie <Corrie.Klekowski@quarles.com>
**Cc:** Law Clerk <clerk@ydplaw.com>; Gonzalez, Jennifer A. <Jennifer.Gonzalez@quarles.com>; Zelaya,
Mary Q. <Mary.Zelaya@quarles.com>
**Subject:** Cappuccio v. CSUF - Stipulation / Motion for Leave to Amend, Discovery

Hi Heather:

I will be moving to court *ex parte* to reconsider its ruling on your Motion for Leave to Amend. I realize, now, that I
confused your reply date with our opposition date. As you know, I dedicated serious time and effort into analyzing your
position, including very detailed emails laying out the facts and law in support of our opposition. It was not for want of
doing the work to oppose your motion that we didn't; it is that I confused the deadlines due to my family's medical
emergencies.

I will also be asking the court to reopening discovery given the new defenses.

Please let me know if you are amenable to agreeing to stipulate to either.

Thank you,

Nicole

--

**Nicole C. Pearson, Esq.**

YODER DREHER PEARSON LLP, *Partner*

5319 University Drive, Ste. 503 | Irvine, CA 92612
tel: (949) 200-9170 | www.ydplaw.com [yoderesq.com]



Nicole Pearson <npearson@ydplaw.com>

---

## RE: Cappuccio v. CSUF - Stipulation / Motion for Leave to Amend, Discovery [QBLLP-ACTIVE.FID44269781]

**Nicole Pearson** <npearson@ydplaw.com>                                    Tue, Jan 7, 2025 at 4:01 PM
To: "Davis, Heather" <Heather.Davis@quarles.com>
Cc: "Klekowski, Corrie" <Corrie.Klekowski@quarles.com>, Law Clerk <clerk@ydplaw.com>, "Gonzalez, Jennifer A."
<Jennifer.Gonzalez@quarles.com>, "Zelaya, Mary Q." <Mary.Zelaya@quarles.com>
Bcc: Katie Cappuccio <katiecappuccio@yahoo.com>

Hi Heather:

You filed a Motion for Leave to Amend over one year after having notice of your clients' affirmative defenses, and **after**
the discovery cut off date passed. If your clients are going to claim "undue hardship" and "business necessity," we
need to conduct discovery into these issues. Again, as they have **never** been raised or investigated in the year this
case has been pending with **zero** information or documents to support your clients' new claims. Along those lines
or to that end, the expert cut off is in **two days.** Not only do we not have any information for that expert to review and
analyze, we cannot locate or retain an expert to analyze these before that deadline, let alone depose them.

The filing of your clients' new answer just last week opened up a slew of issues that need to be investigated. My hope
is to have that decision set aside or, at the very least, to get an order re-opening discovery and continuing upcoming
deadlines to allow that. Are you amenable to re-opening discovery and to modifying the scheduling order to permit
discovery into your clients two new defenses given their belated assertion?

Please let me know.

Thank you, in advance,
Nicole

> On Tue, Jan 7, 2025 at 10:55 AM Davis, Heather <Heather.Davis@quarles.com> wrote:
>
> Good Morning Nicole,
>
> I cannot agree to stipulate to reconsider the ruling on defendant's motion for leave to amend or to
> generally reopen discovery.
>
> Respectfully, *ex parte* applications are rarely justified, and neither of your requests are suitable for *ex
> parte* relief.  To receive *ex parte* relief, there must be some exigency – i.e., an immediate threat of
> injury or harm, possible destruction of evidence, an impending deadline, etc.  But no exigency exists
> for these issues.
>
> There is no exigent circumstance or irreparable prejudice which would require the Court to reconsider
> defendant's motion for leave to amend *outside of regular noticed procedures*.  Nor is there any

Yoder Dreher Pearson LLP Mail - Re: Cappuccio v. CSUF - Stipulation / Motion for Leave to Amend, Discovery (QBLLP-ACTIVE#42669#41)    1/9/25, 9:42 AM

exigency which would necessitate reopening discovery on an *ex parte* basis.  To the extent you intend to raise these issues to the Court, it should be done through regularly noticed motions.


I am willing and available to continue discussing these issues with you further.


Best,

Heather




**Heather Davis | Attorney**
heather.davis@quarles.com | D. 619-243-1572
Quarles & Brady LLP
101 West Broadway, Ninth Floor, San Diego, CA 92101-8285
Bio | quarles.com | LinkedIn
Assistant: Jenny Gonzalez, 619-400-1188

CONFIDENTIALITY NOTICE: This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission from your system. This communication is not intended to constitute an electronic signature unless expressly stated otherwise.

**From:** Nicole Pearson <npearson@ydplaw.com>
**Sent:** Monday, January 6, 2025 5:16 PM
**To:** Davis, Heather <Heather.Davis@quarles.com>; Klekowski, Corrie <Corrie.Klekowski@quarles.com>
**Cc:** Law Clerk <clerk@ydplaw.com>; Gonzalez, Jennifer A. <Jennifer.Gonzalez@quarles.com>; Zelaya, Mary Q. <Mary.Zelaya@quarles.com>
**Subject:** Cappuccio v. CSUF - Stipulation / Motion for Leave to Amend, Discovery


Hi Heather:


I will be moving to court *ex parte* to reconsider its ruling on your Motion for Leave to Amend. I realize, now, that I confused your reply date with our opposition date. As you know, I dedicated serious time and effort into analyzing your position, including very detailed emails laying out the facts and law in support of our opposition. It was not for want of doing the work to oppose your motion that we didn't; it is that I confused the deadlines due to my family's medical emergencies.


I will also be asking the court to reopening discovery given the new defenses.

Yoder Dreher Pearson LLP Mail - Re: Cappuccio v. CSUF - Stipulation / Motion for Leave to Amend, Discovery QBLLP: ACHI EHVLS 4269F8+1          1/9/25, 9:42 AM

Case 8:23-cv-02026-FWS-DFM          Document 71          Filed 01/09/25          Page 106 of 117          Page
ID #:1148

Please let me know if you are amenable to agreeing to stipulate to either.


Thank you,

Nicole

--

**Nicole C. Pearson, Esq.**

YODER DREHER PEARSON LLP, *Partner*

5319 University Drive, Ste. 503 | Irvine, CA 92612
tel: (949) 200-9170  | www.ydplaw.com [yoderesq.com]

Case 8:23-cv-02026-FWS-DFM    Document 71    Filed 01/09/25    Page 107 of 117    Page
ID #:1149
Yoder Dreher Pearson LLP Mail - RE: Cappuccio v. CSUF - Stipulation / Motion for Leave to Amend, Discovery [QBLLP-ACTIVE.FID44269781]          1/9/25, 9:42 AM



Nicole Pearson <npearson@ydplaw.com>

---

## RE: Cappuccio v. CSUF - Stipulation / Motion for Leave to Amend, Discovery [QBLLP-ACTIVE.FID44269781]

---

**Davis, Heather** <Heather.Davis@quarles.com>                       Wed, Jan 8, 2025 at 11:09 AM
To: Nicole Pearson <npearson@ydplaw.com>
Cc: "Klekowski, Corrie" <Corrie.Klekowski@quarles.com>, Law Clerk <clerk@ydplaw.com>, "Gonzalez, Jennifer A."
<Jennifer.Gonzalez@quarles.com>, "Zelaya, Mary Q." <Mary.Zelaya@quarles.com>

Good Morning Nicole,


To the extent Plaintiff claims she was not on notice of CSU's new affirmative defenses until it filed its amended answer last week, this is simply not true.  Plaintiff was aware of the new defenses in November, prior to the non-expert discovery cutoff, and prior to deposing David Forgues.  Further, Plaintiff asked David Forgues questions about CSU's new defenses during his deposition.  So, Plaintiff's statement that she has not conducted any discovery into the new defenses is also not accurate.


With respect to your request to generally re-open discovery without any limitation, we cannot agree to such a broad request.  Nor do we believe the Court would grant one.  We ask that you identify exactly what discovery Plaintiff would like to conduct which so that we may consider whether to stipulate conducting any new discovery.  We are not agreeable to conducting additional discovery that does not directly relate to the new defenses.  Once I receive further information from you regarding the specific discovery Plaintiff would like, I can discuss it with my client.


On the topic of expert discovery, we see no need to extend expert discovery at this time.  Plaintiff was on notice of CSU's new defenses prior to the deadline to designate expert witnesses, but did not designate any expert.  To the extent Plaintiff now seeks to designate experts and to extend expert discovery generally, we cannot agree to such a broad blanket request.  As with Plaintiff's request to re-open non-expert discovery, any request to extend expert discovery must be directly tied to CSU's new defenses.  Please provide us with additional specific information regarding the expert discovery Plaintiff requests, subject matter of expert testimony, and possible expert witnesses.


We will not agree to stipulate to set aside the order granting CSU leave to file its amended answer, nor will we stipulate to have that order reconsidered.  We will agree to continue discussing the discovery issues with you, but we require more information from Plaintiff, as described above.


Please advise if you are still planning to seek *ex parte* relief on these issues so that we may plan accordingly.  I remain available to discuss these issues with you further.


Best,

Heather

---

Yoder Dreher Pearson LLP Mail - RE: Cappuccio v. CSUF - Stipulation / Motion for Leave to Amend, Discovery [QBLLP-ACTIVE.FID44269781]    1/9/25, 9:42 AM



Nicole Pearson <npearson@ydplaw.com>

## RE: Cappuccio v. CSUF - Stipulation / Motion for Leave to Amend, Discovery [QBLLP-ACTIVE.FID44269781]

**Nicole Pearson** <npearson@ydplaw.com>                     Wed, Jan 8, 2025 at 12:25 PM
To: "Davis, Heather" <Heather.Davis@quarles.com>
Cc: "Klekowski, Corrie" <Corrie.Klekowski@quarles.com>, Law Clerk <clerk@ydplaw.com>, "Gonzalez, Jennifer A." <Jennifer.Gonzalez@quarles.com>, "Zelaya, Mary Q." <Mary.Zelaya@quarles.com>
Bcc: Katie Cappuccio <katiecappuccio@yahoo.com>, Mike Yoder <myoder@ydplaw.com>

Heather:

I am flabbergasted by your email. It is outrageous that you would suggest that a party should conduct discovery on an issue that is not part of the litigation just because they have notice of it. Do you have **any** authority to support this proposition? I have had notice that you and your colleagues have been erroneously framing this case as an "administrative proceeding" since the outset, and that you had not done your job to assert two essential retaliation / discrimination / failure to accommodate defenses, but it is not my job to notify you of that.

Or is that part of your position, as well? That an opposing party has the obligation to advise the other party that they are missing a claim, damage or defense so that they should add it and the parties conduct discovery around it? Please clarify and, again, provide **any** legal authority to support that novel argument.

Your firm -- a national firm with over 500 attorneys, **3** of whom were assigned to this case -- completely failed their clients. You then waited until **2 days before the discovery cut-off**, *even though you were working on this case and monitoring it from afar "while on leave,"* to raise the issue of adding two affirmative defenses you should have absolutely recognized and asserted from the outset, over 1 year ago. You then abused the Court's processes by filing a baseless *ex parte* application **on Christmas Eve,** *while my kids were in and out of the hospital*, seeking relief you already had because we had already agreed to sit for deposition before January 17 and already provided you dates, and to extend your client's deadline to file an MSJ. We simply did **not** want to agree to something that was never discussed or agreed to: waiving Plaintiff's right to file an MSJ.

You asked me -- and the Court -- for our understanding because for over 1 year *three* attorneys who were **all** continuously working on this case did not assert two "potentially dispositive" affirmative defenses -- but won't grant me, a single mom who is the **only** attorney working on this case and whose children were in and out of the hospital over the Christmas and New Years holidays when the courts were closed, the decency to allow the Court to consider my timely filed opposition (albeit to the wrong deadline), or to reopen discovery into two issues you negligently failed to make part of this lawsuit for over one year?

I do not have the answers to your questions re: discovery. We need an expert to analyze your client's information regarding alleged undue hardships and business needs that precluded it from allowing Ms. Cappuccio from **continuing** to work without being vaccinated, and/or **continuing** to test herself with tests provided by your client. We need written requests to CSUF regarding its business operations, staffing, resources, costs thereof, etc., then to take the depositions of every person with personal knowledge regarding these topics.

The deadline to **conclude** expert discovery is tomorrow. Again, it is outrageous that you would say that we had to incur the thousands of dollars in expenses to retain expert(s) to potentially analyze issues that were never part of this lawsuit. We did and do not have time to even **locate** an expert over the holidays and days after you filed your Amended Answer. Even if we did, we have no information to give her or him!

I would ask that Defendant agree to:

1. Reopen discovery an additional 90 days from the date we file our Joint Stipulation to investigate the new affirmative defenses of undue hardship and business necessity. This would include written and oral discovery.
2. Continue all other dates from whatever date we agree to or the Court sets.
3. The current deadlines are as follows:

   - Non expert discovery: 11/28/24
   - Expert discovery: 1/9/25
   - Last Date to Hear Motions: 2/13/25
   - Settlement Conference: 2/27/25
   - Motions in Limine: 4/3/25
   - Joint Proposed Final PC: 4/10/25
   - Jury Trial: 6/24/25

So continue No. 1 90 days, and all other dates to trail accordingly.

Please let me know by 2 p.m. Otherwise we will file our *ex parte* application. It was **literally** preparing to file it when I received your email but I will give you time to discuss with your clients. **It needs to be filed today before the expert discovery cut off date expires tomorrow.**

Thank you,
Nicole



Nicole Pearson <npearson@ydplaw.com>

## RE: Cappuccio v. CSUF - Stipulation / Motion for Leave to Amend, Discovery [QBLLP-ACTIVE.FID44269781]

**Davis, Heather** <Heather.Davis@quarles.com>                                Wed, Jan 8, 2025 at 1:54 PM
To: Nicole Pearson <npearson@ydplaw.com>
Cc: "Klekowski, Corrie" <Corrie.Klekowski@quarles.com>, Law Clerk <clerk@ydplaw.com>, "Gonzalez, Jennifer A." <Jennifer.Gonzalez@quarles.com>, "Zelaya, Mary Q." <Mary.Zelaya@quarles.com>

Nicole,

First, the tone of your email is neither productive, nor appreciated.

Second, you have repeatedly made statements that you believe I was working on this case while I was on maternity leave, but this is entirely untrue.  There is nothing supporting this belief, and I request that you cease from continuing to make these inaccurate statements to me and to the Court.

Third, I was understanding of your family's personal health situation prior to the Christmas holiday and agreed to reschedule Plaintiff's deposition for another date.  Respectfully, I did not abuse the *ex parte* process by seeking to continue my client's MSJ deadline.  The *ex parte* was necessary because you refused to continue our deadline after cancelling the deposition unless we agreed to continue plaintiff's MSJ deadline which had already expired.

Fourth, and more pertinent to the discovery issues at hand, I indicated that I would discuss and consider your request to reopen discovery in my last email.  However, I stated that any request to do additional discovery needed to be directly related to CSU's newly asserted defenses for undue burden and business necessity.  To consider your request, I asked you to specifically identify what discovery you wanted to conduct.  Your latest email only references wanting to conduct written and oral discovery generally and asks for a blanket 90-day extension to all remaining deadlines in the case.  Please let me know exactly what discovery you propose so that I can consider your request.

I remain willing to discuss this issue with you further, but request that you please leave personal attacks out of the rhetoric going forward.

Yoder Dreher Pearson Law Mail - Re: Cappuccio v. CSUF - Stipulation / Motion for Leave to Amend, Discovery [QBLLP-ACTIVE.FID44269781]    1/9/25, 9:42 AM

Case 8:23-cv-02026-FWS-DFM    Document 71    Filed 01/09/25    Page 111 of 117    Page ID #:1153

**From:** Nicole Pearson <npearson@ydplaw.com>
**Sent:** Wednesday, January 8, 2025 12:26 PM
**To:** Davis, Heather <Heather.Davis@quarles.com>
**Cc:** Klekowski, Corrie <Corrie.Klekowski@quarles.com>; Law Clerk <clerk@ydplaw.com>; Gonzalez, Jennifer A. <Jennifer.Gonzalez@quarles.com>; Zelaya, Mary Q. <Mary.Zelaya@quarles.com>
**Subject:** Re: Cappuccio v. CSUF - Stipulation / Motion for Leave to Amend, Discovery [QBLLP-ACTIVE.FID44269781]

Heather:

[Quoted text hidden]

Yoder Dreher Pearson LLP Mail - RE: Cappuccio v. CSUF - Stipulation / Motion for Leave to Amend, Discovery [QBLLP-ACTIVE.FID44269781]    1/9/25, 9:43 AM



Nicole Pearson <npearson@ydplaw.com>

---

## RE: Cappuccio v. CSUF - Stipulation / Motion for Leave to Amend, Discovery [QBLLP-ACTIVE.FID44269781]

**Nicole Pearson** <npearson@ydplaw.com>                                         Wed, Jan 8, 2025 at 2:50 PM
To: "Davis, Heather" <Heather.Davis@quarles.com>
Cc: "Klekowski, Corrie" <Corrie.Klekowski@quarles.com>, Law Clerk <clerk@ydplaw.com>, "Gonzalez, Jennifer A."
<Jennifer.Gonzalez@quarles.com>, "Zelaya, Mary Q." <Mary.Zelaya@quarles.com>
Bcc: Katie Cappuccio <katiecappuccio@yahoo.com>, Mike Yoder <myoder@ydplaw.com>

Heather:

1. I apologize for the tone of my email. I am completely floored that you would actually take the position that it is our fault that we did not conduct discovery into two defenses that should have been / were known to your clients over one year ago, and were waived by them over 6 months ago. Again, **do you have authority to support your position that we should have conducted discovery into defenses that were not asserted and were waived just because we knew they should have been asserted?** Assuming there is authority that stands for the proposition that we should have done discovery into defenses that were not asserted, **do you have authority to support your position that we could have completed discovery into new affirmative defenses that were raised two days before the discovery cut-off was set to run?** I would like to see this authority because, if it exists, 1/2 of our *ex parte* is not needed and I owe you another apology.

 2. Could you please explain Docket No. 50: "Joint STIPULATION Extending Time to Answer the complaint as to David Forgues answer now due 8/23/2024, re Amended Complaint/Petition 17 filed by defendant David Forgues. (**Davis, Heather**) (Entered: 08/09/2024)". I am attaching a screenshot for your reference and review, as well.

3. I never refused to continue your deadline to file your MSJ. I expressly -- and repeatedly -- agreed to it. I did **not** agree to not continuing my client's deadline to file an MSJ, where that was never discussed, or waived. Please see our **complete** email chain, which I recognize you omitted from your *ex parte.*

Your *ex parte* asked the Court for two orders (1) compelling Ms. Cappuccio to sit for her second round of deposition on or before January 17, 2025, which we had already agreed to and given you dates for, and (2) continuing your deadline to file an MSJ to January 31, 2025, which we had also already agreed to. As you accurately stated in your application, *ex parte* relief is "extraordinary relief" that can only be granted where **necessary to avoid** irreparable prejudice to the moving party, and where the moving party is not at fault, or is guilty of excusable neglect. Since we had already agreed to the things you requested from the Court, your application was not necessary or proper and, in our opinion, an abuse of this extraordinary process. Again, **we never did not agree to continue CSUF's MSJ deadline.** We simply refused to agree to terminate Ms. Cappuccio's.

4. My email specifically identified topics I would want to discover via written and oral discovery. These include (copying and pasting from my email below):

> We need an expert to analyze your client's information regarding alleged undue hardships and business needs that precluded it from allowing Ms. Cappuccio from *continuing* to work without being vaccinated, and/or *continuing* to test herself with tests provided by your client. We need written requests to CSUF regarding its business operations, staffing, resources, costs thereof, etc., then to take the depositions of every person with personal knowledge regarding these topics.

If you are asking me to draft discovery requests to you right now in order for you to agree to them, I cannot do that, as

Yoder Dreher - Pearson Der Mail - Re: Cappuccio v. CSUF - Stipulation / Motion for Leave to Amend, Discovery [QBLLP-ACTIVE.FID4269784]                1/9/25, 9:43 AM

I need to file our *ex parte* application to set aside and/or reconsider the Court's ruling on your Motion to Dismiss or, in the alternative, re-open discovery to allow us to investigate the two affirmative defenses you just asserted December 31 and no party has conducted discovery on, and after the discovery deadline had closed.

Please let me know if these topics will suffice as, again, it significantly impacts our application.

Nicole

[Quoted text hidden]

---

**2 attachments**


**Screenshot 2025-01-08 at 2.32.29 PM.png**
922K


**Exhibit D.pdf**
158K

EXHIBIT G





