NICOLE C. PEARSON (SBN 265350)
npearson@ydplaw.com
**YODER DREHER PEARSON, LLP**
5319 University Drive, Ste. 503
Irvine, CA 92612
Telephone: (949) 200 9170

Attorneys for Plaintiff Katie Cappuccio

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| KATIE CAPPUCCIO,<br><br>        Plaintiff,<br><br>  v.<br><br>CALIFORNIA STATE UNIVERSITY, FULLERTON, and DAVID FORGUES, in his individual capacity and office capacity as Vice President of Human Resources,<br><br>        Defendants. | Case No. 8:23-cv-02026-FWS-DFM<br><br>**DECLARATION OF NICOLE C. PEARSON IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR RELIEF FROM THE COURT'S ORDER GRANTING DEFENDAN'S MOTION FOR LEAVE TO AMEND (DKT. 68), OR, IN THE ALTERNATIVE, AN ORDER RE-OPENING DISCOVERY AND MODIFYING THE SCHEDULING ORDER (DKT. 58, 63)**<br><br>Judge:       Hon. Fred W. Slaughter<br>Crtrm.:      Santa Ana, 10D<br>Magistrate:  Douglas F. McCormick<br>Crtrm:       Santa Ana, 6B |

## DECLARATION OF NICOLE C. PEARSON

I, Nicole C. Pearson, declare as follows:

1.  I am a partner at YODER DREHER PEARSON LLP, counsel of record for Plaintiff KATIE CAPPUCCIO in the above-entitled matter, and am licensed to practice before this Court. I have personal knowledge of the following facts and, if called as a witness, could and would testify competently thereto.

2.  This declaration is being submitted in support of Plaintiff's *Ex Parte* Application for Relief from the Court's December 26 Order granting the Motion for

Leave to Amend the Answer of Defendant California State University, Fullerton ("Defendant") (Dkt. 68), or, in the alternative, modifying the scheduling order to allow the parties to conduct regular and expert discovery into Defendant's two new affirmative defenses and perform motion and trial-readiness practice as necessary and as a result thereof. (Dkt. 58, 63).

3. Plaintiff filed the underlying lawsuit in October 2023. (Dkt. 1). Upon request from defense counsel, Defendant CSU and former Defendant David Forgues were each granted extensions to file their answers to the Complaint (Dkt. 1) and Amended Complaint (Dkt. 17) on December 11, 2023 and August 9, 2024, respectively.

4. On February 14, 2024, we amended Plaintiff's complaint to add former defendant Dr. Forgues, only. We did not add any new claims, change the requests for relief, or modify Plaintiff's substantive allegations.

5. It is my understanding that Ms. Davis went out on maternity leave on or about April 26, 2024.

6. On May 2, 2024, defense counsel Partner Corrie Klekowski attended the hearing on Defendant's Motion to Dismiss with me. Thereat, Ms. Klekowski argued extensively why *res judicata,* qualified and 11th amendment immunity, and other affirmative defenses barred Plaintiff's lawsuit. Thereafter, Ms. Klekowski and I discussed the parties' respective positions, including Plaintiff's case's "strengths" and "weaknesses," and Defendant's defenses, and the possibility for informal dispute resolution and settlement.

7. On October 10, 2024, defense counsel Ms. Klekowski attended the hearing on former defendant Forgues's Motion to Dismiss with me. Thereat, she argued why various affirmative defenses barred Plaintiff's lawsuit against him. Thereafter, Ms. Klekowski and I, again, discussed the parties' positions, and the possibility for informal dispute resolution and settlement.

8. On November 26, 2024, two days before the non-expert discovery deadline was set to run, Ms. Davis reached out to me to ask me to stipulate to grant

Defendant leave to amend its answer to assert the affirmative defenses of undue hardship and business necessity. Over the course of the following week, we met and conferred regarding our respective positions and, ultimately, disagreed on whether Defendant had demonstrated "good cause" to justify the request, and whether Plaintiff would be irreparably harmed or prejudiced as a result, Defendant had delayed, and/or Defendant was acting in bad faith. I did not believe that three attorneys assigned to the case failing to identify two standard affirmative defenses to a religious discrimination, retaliation, and failure to accommodate case (undue hardship and business necessity) for over one year was "good cause" justifying their request.

  I also believed that allowing Defendant to add two defenses after being on notice of them for over 1 year; 6 months after filing its answer and waiving the omitted defenses; and after the discovery cutoff date had already run and the expert date was about to run, was unduly prejudice and harm Plaintiff. I also had questions about the delay, given that Defendant had notice of the nature of the case and heavily litigated it for over 9 months prior to filing its Answer, and the handling attorney, Ms. Davis, appears to have been working on the case even while out on maternity leave. (*See* Dkt. 50). Therefore, it appeared that Defendant had the opportunity to both identify and assert all applicable affirmative defenses any time before October 30, 2023 – the date the case was filed – and November 26, 2024 – the date the missing affirmative defense were raised for the first time – and Defendant's request was both late and, arguably, made in bad faith.

  As part of this discussion and to minimize the impact on Plaintiff, I offered to stipulate to re-open discovery deadline on at least three separate occasions. Each time, Defendant declined. Attached hereto as **Exhibit "A"** is a true and correct copy of our correspondence regarding granting Defendant leave to amend its answer.

  9. On December 17, 2024, I took the deposition of former-defendant David Forgues. During said deposition, Forgues admitted that Defendant did not provide religious accommodations to its testing requirement, and that he had **zero** legal

authority to support this position. He also specifically testified that he was not responsible for reviewing, granting or denying accommodation requests. Rather, this was done by an entirely different department. As a result of this testimony, I decided Ms. Cappuccio had grounds to and should file an MSJ. At that time Ms. Cappuccio had neither waived her right, nor allowed the deadline, to file an MSJ to expire, and we had never discussed an MSJ by Plaintiff with Defendant.

10. The next day, on Wednesday, December 18, 2024, and the day before Plaintiff's Opposition to Defendant's Motion for Leave was due, my 6-year-old daughter was rushed to urgent care for lethargy, trouble swallowing and breathing, and extreme fever.

11. That same day, my 8-year-old daughter was rushed to urgent care for a potential fractured heel.

12. Later that night she also developed strep and flu like symptoms and by Saturday, December 21, 2024, was rushed to urgent care for lethargy, extreme fever, stiff neck, uncontrollable, spasmatic cough, and abdominal tenderness.

13. On Sunday, December 22, 2024, my 1.5-year-old son spiked a 104 fever and, that same day, at approximately 8:30 p.m., my babysitter called to say she was sick and could not come to work the next day.

14. I attempted, but was unable, to secure alternate childcare for my sick children so that I could attend Plaintiff's second session of deposition Monday, December 23. I, therefore, emailed defense counsel to let her know that I would not be able to attend, acknowledging that it was a last-minute cancellation, apologizing for and explaining why, and offering to send over medical notes to confirm our status, and pay any late cancellation fee.

Defense counsel acknowledged my predicament, wished me and my children well, thanked me for offering to pay the late cancellation fee, and asked if Plaintiff would stipulate to (1) sitting for a second session to allow Defendant to file an MSJ, and (2) continue Defendant's MSJ deadline. I agreed to stipulate to move the MSJ

4

hearing deadline, asked for her general availability so I could get new deposition dates from Ms. Cappuccio, and asked whether Defendant wanted to re-open the non-expert discovery deadline, as well, given that Defendant had served document subpoenas a few days prior despite the cut off having passed. I also gave defense counsel (Ms. Davis) my personal cell phone number because I was going to be out of office that day taking care of my children, but wanted to continue to work to resolve these issues. Attached hereto as **Exhibit "B"** is a true and correct copy of these communications.

15.    Ms. Davis emailed over the draft Joint Stipulation and texted me that it was in my inbox later that day. She did not know, that my son had been diagnosed with RSV and placed on a breathing treatment that day.

16.    I reviewed the proposed Joint Stipulation and saw that defense counsel added in a "dispositive motion deadline" that was had never been discussed, was not included in the Court's Scheduling Order (Dkt. 58), and that was unilateral. Because Ms. Cappuccio never waived her right to file an MSJ; her deadline to do so had not expired; we intended to file one due to Dr. Forgues's deposition testimony given on December 17; and the Court's Scheduling Order did not consider a dispositive motion filing deadline, I modified the proposed Joint Stipulation so that the it stated that the deadline to hear any motion was February 13, and to file any dispositive motion by any party was reciprocal. I emailed Ms. Davis my edits with an email explaining them later that same date. Attached hereto as **Exhibit "C"** is a true and correct copy of this email.

17.    Ms. Davis called me at 10:30 a.m. the next day to discuss my proposed edits to the Joint Stipulation. She stated that we had never mentioned filing an MSJ, and that Ms. Cappuccio's deadline to file one had "run a long time ago," therefore, she could not ask that the "Last Day to **Hear** Motion" deadline be continued to allow both parties to file an MSJ. She also asked if Ms. Cappuccio would still agree to sit for her second session of deposition before January 17, 2025.

18.    I disagreed with her regarding the MSJ issue, but continued to agree to

extend Defendant's deadline to file an MSJ to account for Plaintiff's delayed deposition, and to sit for a second round of deposition before January 17, 2025. I further stated that, in order to properly analyze my position on the MSJ deadline issue, I needed to review the parties' correspondence, stipulations, and the Court's orders, to determine whether Ms. Cappuccio had, in fact, waived her right to file an MSJ, such that her requested edits were improper.

19. I conducted my due diligence that same day and at 1:26 p.m. responded that, while **I continued to agree to continue Defendant's deadline to file an MSJ**, I did not believe Plaintiff's deadline had been waived or expired. I explained:

> Hi Heather:
>
> Following up on our call this morning:
>
> 1. …
>
> 2. I have read our November Joint Stipulation to Modify the Scheduling Order (Dkt. 57) and Court's Order (Dkt. 58). I do not see where our Joint Stip it (a) did not extend Ms. Cappuccio's deadline to file an MSJ, which is the same as Defendants, or (b) precludes her from filing one. It merely states that we agreed to continue the motion hearing deadline to accommodate the outstanding depositions, as well as any MSJ, which you, at that time, contemplated filing and which required a 6 week filing-to-hearing window. Nowhere did we actually or intent [sic] to waive our right to file an MSJ along those same deadlines. I also do not see any order showing that Ms. Cappuccio's deadline to file an MSJ "ran a while ago," as you stated in our call. Again, the parties' deadline to file an MSJ has always been and is the same, and was modified by our Joint Stip (Dkt. 57) and the Judge's November 27 Order (Dkt. 58) which moved the date to hear **all** motions for **all** parties until February 13, 2025. The Order states: "Last Date to **Hear** Motions, February 13, 2025, **Thursday,**" [emphasis in original]. Footnote 3 states that this date was continued "*To accommodate the request that Defendant 'CSU may file its dispositive motion on or before December 30, 2024,'" (Stipulation at 3).*" This was not a limitation on what motions could be filed or by whom, but to explain how the February 13 date was calculated, taking into consideration the requisite 6 week filing to hearing window. All this to say, **we do agree to continue the February 13 deadline due to our inability to attend Ms. Cappuccio's second session of deposition yesterday; however, we do not agree to limit that**

> 1. **extension to the filing of Defendants' MSJ, only, or to MSJ's, only, for that matter.** I believe the Court's Order is clear: the deadline to hear any and all motions filed by any and all parties is February 13, 2025. We can continue that deadline to accommodate Ms. Cappuccio's second session of deposition, and for any MSJ to be filed by either party.
>
> 3. I note in your email, below, you state Ms. Cappuccio is required to sit for an additional 2-3 hours. Could you please advise for how long she sat during her first session already?
>
> Please let me know if you have any questions, or care to discuss further. I am working today until 5 p.m.
>
> Best,
> Nicole

Attached hereto as **Exhibit "D"** is a true and correct copy of these communications.

20. Ms. Davis immediately responded that the parties continued to disagree and that it would be moving forward with an *ex parte* application seeking to continue only Defendant's deadline to file an MSJ. She also asked if Ms. Cappuccio would be able to sit for deposition before January 17, 2025, and if she could provide dates that day to assist with Defendant's requests for relief. I reiterated our agreement to sit for deposition before January 17 and provided Defendant with six dates. *See* Exh. D.

21. Due to the chaos and panic surrounding my children's health and medical emergencies as well as the discovery and MSJ dispute, I confused Plaintiff's deadline to file an Opposition to Defendant's Motion for Leave with Defendant's deadline to file its reply to any such opposition. Accordingly, I "timely" filed Ms. Cappuccio's Opposition to Defendant's Motion for Leave to Amend on December 26, 2024. I also re-filed the Opposition Memorandum of Points and Authorities and Declaration in support on December 27, 2024 at 12:19 a.m. after I realized that the caption and footers had not been updated from the Opposition to Defendant's *Ex Parte* Application, which I had filed earlier that day. Attached hereto as **Exhibit "E"** are true and correct copies of my filings, Dkt. 65, 66, 67.

22. On December 27, I emailed the Court informing the Court of Plaintiff's Opposition and providing copies of the same.

23. On December 28, Plaintiff followed up with the Court to confirm that it had, in fact, received her opposition.

24. As of the date of filing this Application, the Court has not responded to Plaintiff's emails.

25. I have offered to reopen and continue discovery deadlines at least 6 times, now, the latest of which was January 6, 2024 when, after realizing my filing calculation error, I asked Defendant to stipulate to the Court (1) relieving Plaintiff of her belated filing due my children's medical emergencies, and allow the Court to reconsider its ruling on Defendant's Motion for Leave, and (2) reopen discovery and modify the Court's discovery, motion and trial-related deadlines to allow the parties to conduct discovery to Defendant's new defenses. Attached hereto as **Exhibit "F"** is a true and correct copy of our correspondence.

26. On January 7, 2025, Ms. Davis responded that there were no "exigent circumstances" justifying *ex parte* relief, and that she would not stipulate to "generally reopen discovery." The same day I explained that Defendant's belated assertion of two new affirmative defenses after the discovery cut off date expired and the expert date was set to expire January 9, coupled with Defendant's refusal to stipulate to continue or reopen these dates, justified *ex parte* relief. *See* Exh. F.

27. On January 8, Ms. Davis responded, saying that Plaintiff had been "on notice" of Defendant's two new affirmative defenses since November 26 and should have conducted discovery into the defenses in the two days before the non-expert deadline ran on November 28. She also stated that I had taken the deposition of Dr. Forgues and asked him about the accommodation request review process so that I had, in fact, conducted discovery into its two new defenses. She also stated that she saw "no need" to extend expert cut-off because, again, Plaintiff was "on notice" of the two potential defenses and should have retained an expert to review and analyze defenses

that were not even a part of this litigation. She also asked that for "additional specific information regarding the expert discovery Plaintiff requests, subject matter of expert testimony, and possible expert witnesses." *See* Exh. F.

28. In response, I provided her with the following:

> We need an expert to analyze your client's information regarding alleged undue hardships and business needs that precluded it from allowing Ms. Cappuccio from *continuing* to work without being vaccinated, and/or *continuing* to test herself with tests provided by your client. We need written requests to CSUF regarding its business operations, staffing, resources, costs thereof, etc., then to take the depositions of every person with personal knowledge regarding these topics.
>
> If you are asking me to draft discovery requests to you right now in order for you to agree to them, I cannot do that, as I need to file our *ex parte* application to set aside and/or reconsider the Court's ruling on your Motion to Dismiss or, in the alternative, re-open discovery to allow us to investigate the two affirmative defenses you just asserted December 31 and no party has conducted discovery on, and after the discovery deadline had closed.
>
> Please let me know if these topics will suffice as, again, it significantly impacts our application.
>
> Nicole

*See* Exh. F (emphasis in original).

29. As of the time of filing this Application, Defendant has not confirmed whether or not this discovery is appropriate, or that it would stipulate to permitting this or any other discovery, including expert discovery. *See* Exh. F.

30. I attempted to file this Application on January 8, 2025 before the expert discovery cut-off ran; however, I am located in Southern California and extreme winds and firestorms cut off our electricity and there were outages to our internet provider (Spectrum). Accordingly, I filed it as soon as she could secure WiFi to access PACER and her email. Attached hereto as **Exhibit "G"** are true and correct copies of proof of outage.

1  I declare under penalty of perjury under the laws of the United States of
2  America that the foregoing is true and correct. Executed on this 8th day of January,
3  2025, at Newport Beach, California.

                                                    */s/ Nicole C. Pearson*

                                                    Nicole C. Pearson, Esq.

## CERTIFICATE OF SERVICE

      I hereby certify that on January 9, 2025, a copy of the foregoing document, filed through the ECF system, will be served on all parties as provided by the Notice of Electronic Filing (NEF).

                                           */s/ Nicole C. Pearson*
                                           Nicole C. Pearson