___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:23-cv-02026-FWS-DFM                  Date: March 28, 2025
Title: Katie Cappuccio v. California State University, Fullerton

___

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Rolls Royce Paschal | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**PROCEEDINGS: ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [78]**

     In this case, Plaintiff Katie Cappuccio ("Plaintiff") brings claims against Defendant California State University, Fullerton ("Defendant") after Defendant terminated Plaintiff's employment when she refused to comply with Covid-19 vaccination and testing policies based on her alleged religious objections to those policies. (*See generally* Dkt. 17 ("First Amended Complaint" or "FAC").) Before the court is Defendant's Motion for Summary Judgment. (Dkt. 78 ("Motion" or "Mot.").) Plaintiff opposes the Motion. (Dkt. 79 ("Opposition" or "Opp.").) Defendant filed a reply in support of the Motion. (Dkt. 83 ("Reply").) With the court's leave, (Dkt. 86), Plaintiff filed a surreply. (Dkts. 87, 89 (together, "Surreply")[1].) The parties' positions regarding undisputed facts are set forth in Defendant's Response to Plaintiff's Opposition to Defendant's Statement of Uncontroverted Facts. (Dkt. 83-2 ("SUF").) The court held a hearing on this matter on March 27, 2025. (Dkt. 91.) Based on the state of the record, as applied to the applicable law, the Motion is **GRANTED IN PART AND DENIED IN PART**.

**I.    Background**

     Plaintiff was a police officer assigned to Defendant's police department. (SUF ¶ 1.) On June 24, 2021, Defendant issued "President's Directive No. 22" titled "COVID-19: Mitigation

___

[1] The court **OVERRULES** Defendant's objections to the Surreply. (Dkts. 88, 90.)

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:23-cv-02026-FWS-DFM | Date: March 28, 2025 |

Title: Katie Cappuccio v. California State University, Fullerton

___

Measures and Guidelines" (the "President's Directive").  (Dkt. 78-10.)  The President's Directive stated that "[a]ll active University employees and matriculated students are required to undergo re-entry testing prior to returning to campus for the fall 2021 semester and weekly surveillance testing during that semester."  (*Id.* at 3 of 5.)  "Notwithstanding the above and unless not otherwise exempted, all active University employees and matriculated students who are fully vaccinated and have voluntarily provided their vaccine record to the University will not need to undergo re-entry or surveillance testing."  (*Id.*)  In addition, the President's Directive required that "unvaccinated individuals wear face coverings indoors."  (*Id.*)

On July 26, 2021, the California Department of Public Health ("DPH") issued State Public Health Officer Order of July 26, 2021 (the "2021 DPH Order"), which was in effect until it was rescinded effective September 17, 2022.  (Dkt. 78-27.)  Recognizing that "[t]he COVID-19 pandemic remains a significant challenge in California" and that "COVID-19 vaccines are effective in reducing infection and serious disease," the 2021 DPH Order directed that "facilities identified in this Order must verify vaccine status of all workers," meaning the facilities needed to obtain "proof of vaccination" and "track[] verified worker vaccination status."  (*Id.* at 2-3 of 8.)  For "High-Risk Congregate Settings," which included "State and Local Correctional Facilities and Detention Centers," "[a]symptomatic **unvaccinated** or incompletely vaccinated workers are **required to undergo** diagnostic screening testing. . . **at least once weekly** with either PCR testing or antigen testing."  (*Id.* at 3, 6 of 8.)  For "All Facilities," "[u]nvaccinated or incompletely vaccinated workers must also observe all other infection control requirements, including masking, and are not exempted from the testing requirement even if they have a medical contraindication to vaccination, since they are still potentially able to spread the illness."  (*Id.*)  "CSU and the Statewide University Police Association ('SUPA'), [Plaintiff's] union, interpreted the [2021 DPH Order] to apply to [Defendant's] Police Department employees."  (SUF ¶ 3.)

On July 27, 2021, Plaintiff wrote an email to "VP, Human Resources, Diversity & Inclusion <vphr@Fullerton.edu>" with the subject line "COVID-19 Exemptions" asking, "What is the process for obtaining a medical or religious exemption? / Who do we submit them

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-02026-FWS-DFM　　　　　　　　　　　　　　Date: March 28, 2025
Title: Katie Cappuccio v. California State University, Fullerton

to? / Who is reviewing them? / How quickly will they be approved?" (Dkt. 81-7 at 1-1291.)[2] Plaintiff "d[id] not appreciate [the] pre-scripted response to [Plaintiff's] very specific questions" that Plaintiff received from the human resources employee who replied, so Plaintiff emailed David Forgues[3] ("Forgues") directly, asking the same questions. (*Id.* at -1290.) Forgues replied, "For now, we are not allowing exemptions to our mandatory testing policy. We just learned of the Chancellor's mandatory vaccine policy and are working to implement it. Once we know how the exemptions process will work, we will communicate that to all of our

---

[2] Defendant objects to the July 27, 2021, emails on grounds of "[f]ailure to authenticate," "[l]acks personal knowledge," and "[h]earsay." (Dkt. 83-4 at 2 (citing Fed. R. Evid. 901).) Regarding authentication, Defendant produced the document in discovery, as reflected by the Bates stamps in the lower right corner of the document, (Dkt. 81-7), and "[t]here is no suggestion or allegation that the document is forged or manufactured." *Arismendez v. Deputy Velasquez*, 2020 WL 6162819, at *2 (C.D. Cal. Aug. 28, 2020); *see also Willig v. Exiqon, Inc.*, 2012 WL 10375, at *4 (C.D. Cal. Jan. 3, 2012) (overruling authentication objection where "[t]he bates stamps show this document was part of Plaintiff's document production and even if the Johnson Declaration does not authenticate this document, evidence that can be properly authenticated at trial may still be admitted on summary judgment"). Regarding personal knowledge, the court observes that "[a]t the summary judgment stage, [courts] do not focus on the admissibility of the evidence's form," but "instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). The contents of the emails "could be admitted into evidence at trial in a variety of ways," including Plaintiff's testimony. *Id.* Similarly, regarding hearsay, the court finds Defendant has failed to demonstrate that Plaintiff could not present the contents of the emails in admissible form at trial. *Cf. Brewster v. City of Los Angeles*, 672 F. Supp. 3d 872, 893 (C.D. Cal. 2023) ("Most of the parties' hearsay objections are likewise overruled. Declarations which contain hearsay are admissible for summary judgment purposes if they can be presented in admissible form at trial."). For purposes of the Motion, Defendant's objections to this exhibit are **OVERRULED**.

[3] David Forgues "served as the Vice President for Human Resources, Diversity, and Inclusion ("HRDI") for CSUF [from] approximately January 2017" to "April of 2024." (*See* Dkt. 78-2, ¶ 2.)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-02026-FWS-DFM                              Date: March 28, 2025
Title: Katie Cappuccio v. California State University, Fullerton

employees." (*Id.* at -1289.) Plaintiff responded by asking Forgues to "provide the legal authority for which [Forgues] believe[d] prohibits exemptions to the mandatory testing policy," and also asked, "should an employee wish to submit an exemption to the mask mandate, as outlined in your July 16, 2021 email, to whom and where would they send it?" (*Id.*)

On July 29, 2021, California State University ("CSU"), of which Defendant is one campus, issued "COVID-19 Vaccination Interim Policy" (the "Vaccination Policy"). (Dkt. 78-17.) The Vaccination Policy required that all campus employees provide by September 30, 2021 a "Certification," defined as a "Submission of information establishing that a Student or Employee has received an Approved Vaccine or qualifies for an Exemption from the vaccine requirement." (*Id.* at 2-3 of 6.) The Vaccination Policy permitted employees to request a "Religious Exemption: due to either (i) a person's sincerely held religious belief, observance, or practice, which includes any traditionally recognized religion, or (ii) beliefs, observances, or practices which an individual sincerely holds and that occupy a place of importance in that individual's life, comparable to that of traditionally recognized religions." (*Id.* at 3 of 6.) A person "who [had] not obtained an Approved Vaccine (even if they have an Exemption) may be subject to Other Safety Measures, as determined by the campus President." (*Id.*) "Other Safety Measures may include but are not limited to asymptomatic (surveillance) and symptomatic testing." (*Id.* at 2 of 5.)

On August 2, 2021, Plaintiff provided Defendant a signed "Religious Exemption Request Form" (the "Religious Exemption Request"). (Dkt. 78-16.) In the Religious Exemption Request, Plaintiff stated she "identif[ies] as a child of God, a Christian, who believes in the Bible," and "[t]he CSU policy, which mandates [she] receive the COVID-19 vaccine, conflicts with the word of God and [her] Christian faith, which prohibits [her] participation." (*Id.* at 2 of 3.) Plaintiff further stated that her "faith teaches [her] … to seek the help of a physician only when [she is] sick, and to uphold the sanctity of [her] blood, for [her] body was created by the hands of God." (*Id.* at 1 of 3.) Plaintiff stated that she "believe[s] the contents and mechanisms which formulate the COVID-19 vaccine are unnatural components, not created by God, which if injected into [her] healthy body, would be a betrayal of [her] faith and corruption of [her] blood," citing "Leviticus 17:11." (*Id.*) "Based upon [her] strong, sincerely held religious

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-02026-FWS-DFM            Date: March 28, 2025
Title: Katie Cappuccio v. California State University, Fullerton

beliefs, and to preserve the sanctity of [her] blood and the pureness of [her] soul, [Plaintiff] request[ed] a lifelong exemption from the COVID-19 vaccination and any other vaccinations that would require [her] to jeopardize [her] faith and relationship with [her] God." (*Id.*) Defendant granted Plaintiff's Religious Exemption Request. (SUF ¶ 7.)

However, Plaintiff "did not submit to weekly Covid-19 testing between August 9, 2021 and December 20, 2021" (*id.* ¶ 8), as Defendant required in the absence of a vaccination. (President's Directive at 1 of 5.) "On August 19, 2021, September 22, 2021, and October 12, 2021, [Plaintiff's] supervisor, Lieutenant [Robert] Mullaney, emailed her that she had not submitted to weekly Covid-19 testing and asked her to test." (SUF ¶ 9.)

On November 3, 2021, Lieutenant Mullaney wrote Plaintiff a Letter of Reprimand "relating to [her] noncompliance with [the] President's Directive." (Dkt. 78-8 at 2 of 3 (internal definition omitted).) The Letter of Reprimand stated that "[d]espite [] communications directing [Plaintiff] to submit to weekly surveillance testing, [Plaintiff] ha[d] failed to comply," which was "considered insubordination and a failure to comply with the health and safety requirements implemented by the University as outlined in [the] President's Directive." (*Id.*) The Letter of Reprimanded further stated that Plaintiff's "conduct will not be tolerated" and "[a]ny further instances of noncompliance may result in disciplinary action, including dismissal." (*Id.* at 3 of 3.)

On December 3, 2021, Plaintiff wrote Lieutenant Mullaney a Rebuttal to Letter of Reprimand ("Rebuttal"). (Dkt. 78-9.) The Rebuttal stated:

> Your requirement that I "immediately complete testing through the University's testing program" would **require me to abandon or alter my sincerely held religious beliefs. a violation of Title VII of the U.S. Civil Rights Act of 1964**. I understand that the University's testing program requires employees to consent to treatment and consent to sharing of results. Furthermore, compliance with your directions, as outlined in the "Letter of Reprimand," is predicated on

___

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:23-cv-02026-FWS-DFM | Date: March 28, 2025 |
| Title: Katie Cappuccio v. California State University, Fullerton | |

___

> willful consent.  However, I do not consent to any COVID-19 vaccination or COVID-19 testing, which would require me to abandon or alter my religious beliefs and practices, as outlined in my approved Religious Exemption.
>
> Furthermore, the law states that a person's activities - what activities they participate in, and what activities they refrain from, are a part of one's religious expression. "Religious creed," "religion," "religious observance," "religious belief," and "creed" include all aspects of religious belief, observance, and practice that are part of an individual observing a religious creed.  Taking a COVID-19 vaccine or COVID-19 test is an affront to my sincerely held religious beliefs.

(*Id.*)

On December 15, 2021, Plaintiff's union representative informed her that Defendant planned to suspend and/or terminate employees who refused to submit to Covid-19 testing.  (Dkt. 78-20 (Excerpts from Transcript of Plaintiff's Deposition, "Pl. Depo.") at 294:3-8; Dkt. 78-18.)  Two days later, Plaintiff emailed Defendant's human resources department and explained she understood "there [was] confusion about what [her] previously approved religious exemption covered."  (Pl. Depo. at 303:19-304:11; Dkt. 78-19 at 1.)  Plaintiff attached an "updated" religious exemption request stating that the requirement to take weekly Covid-19 tests conflicted with her religious beliefs.  (Dkt. 78-19 at 2.)  Plaintiff did not receive a response from Defendant regarding her December 17, 2021, exemption request.  (Pl. Depo. at 250:8-22.)  On December 27, 2021, Plaintiff submitted a third exemption request.  (*Id.*)  Plaintiff appears to have handwritten into the form that in addition to having a religious belief prohibiting her from receiving any Covid-19 vaccinations, she also could not receive "any Covid-19 medical procedures or medical tests."  (Dkt. 78-15 at 1.)

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-02026-FWS-DFM                      Date: March 28, 2025
Title: Katie Cappuccio v. California State University, Fullerton

___

Plaintiff "took two self-administered Covid-19 tests on December 31, 2021 and January 21, 2021," and "uploaded her results for both tests to [Defendant] using her Health Center portal." (SUF ¶ 15.)

"On January 18, 2022, Forgues gave [Plaintiff] a written Notice of Pending Disciplinary Action." (SUF ¶ 16.) "The Notice stated [Plaintiff] was being dismissed under Education Code section 89535(b) and (f) for unprofessional conduct and for failing or refusing to perform the normal and reasonable duties of her position," and "that [Plaintiff] had not complied with requirements to complete weekly Covid-19 testing as set forth in the following: (1) the SUPA/CSU Memorandum of Understanding - CSU Covid-19 Vaccination Interim Policy dated December 2, 2021; (2) the Vaccination Policy; (3) SUPA/CSU Memorandum of Understanding - Covid-19 Employee Testing Program dated August 2, 2021; and (4) [the 2021 DPH Order]." (*Id.*)

After a February 4, 2022, *Skelly* hearing[4] to review the dismissal decision, "the *Skelly* officer recommended [Plaintiff] be dismissed." (*Id.* ¶¶ 17-18.) During the *Skelly* hearing, Plaintiff stated "that she was willing to do self-administered Covid-19 tests." (*Id.* ¶ 17.) After the hearing, "the *Skelly* officer recommended [Plaintiff] be dismissed." (*Id.* ¶ 18.) "Forgues adopted this decision and dismissed [Plaintiff] on February 11, 2022." (*Id.*)

___

[4] "A Skelly hearing refers to the due process meeting required under *Skelly v. State Personnel Bd.*, 15 Cal. 3d 194 (1975), when a public employee faces a potential deprivation of his or her property interest as an employee." *Lopez v. City & Cnty. of San Francisco*, 2014 WL 2943417, at *1 n.1 (N.D. Cal. June 30, 2014); *see also Cason v. San Diego Transit Corp.*, 2011 WL 1596315, at *2 n.1 (S.D. Cal. Apr. 25, 2011) ("A Skelly hearing is a pre-disciplinary, administrative hearing, during which a public employee has an opportunity to present his version of relevant events.").

___

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:23-cv-02026-FWS-DFM | Date: March 28, 2025 |
| Title: Katie Cappuccio v. California State University, Fullerton | |

On October 30, 2023, Plaintiff filed this case. (*See* Dkt. 1.)

## II.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the case, and the "substantive law [] identif[ies] which facts are material." *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The moving party bears the initial burden of identifying the elements of the claim or defense on which summary judgment is sought and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party will have the burden of proof at trial, the movant can satisfy its initial burden by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id.* at 325; *see also Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) ("The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact.").

The non-moving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted); *see also Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (In opposing summary judgment, "the non-moving party must go beyond the pleadings and by its own evidence 'set forth specific facts showing that there is a genuine issue for trial'"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1389 (9th Cir. 1990) ("The non-moving party may not oppose summary judgment by allegations but must show specific trial-worthy facts."). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat.*

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-02026-FWS-DFM                                         Date: March 28, 2025
Title: Katie Cappuccio v. California State University, Fullerton

___

*Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The court must draw all reasonable inferences in the non-moving party's favor. *In re Oracle Corp.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 255).

Nevertheless, "inferences are not drawn out of thin air, but from evidence." *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1247 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48; *see also United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978) ("A summary judgment cannot be granted if a genuine issue as to any material fact exists.").

In *In re Oracle Corp.*, the Ninth Circuit described the burdens of proof in the summary judgment process:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. The non-moving party must do

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 8:23-cv-02026-FWS-DFM | Date: March 28, 2025 |
| Title: Katie Cappuccio v. California State University, Fullerton | |

> more than show there is some "metaphysical doubt" as to the material facts at issue. In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor.

627 F.3d at 387 (citations omitted).

### III. Discussion

In the FAC, Plaintiff asserts (1) claims against Defendant for failure to accommodate Plaintiff on the basis of her religion under Title VII of the Civil Rights Act of 1964 ("Title VII") and the California Fair Employment and Housing Act ("FEHA"), and (2) a Title VII claim for disparate impact on the basis of religion. (FAC ¶¶ 71-147.)[5] Defendant moves for summary judgment on each of these claims. (*See generally* Mot.) The court addresses the claims in turn.

#### A. Failure to Accommodate

"Both [Title VII and FEHA] require employers to accommodate job applicants' religious beliefs unless doing so would impose an undue hardship." *Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023); *see Heller v. EBB Auto Co.*, 8 F.3d 1433, 1437 (9th Cir. 1993) (explaining that Title VII "make[s] it an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practice of his employees . . . ."). "Claims under Title VII and FEHA for failure to accommodate religion are accordingly analyzed under a burden-shifting framework." *Bolden-Hardge*, 63 F.4th at 1222. "*First*, the employee must establish a prima facie case by proving

---

[5] Plaintiff also asserted a claim under 42 U.S.C. Section 1983 for violation of the First Amendment to the United States Constitution. (FAC ¶¶ 148-154.) However, the court dismissed the Section 1983 claim. (Dkt. 59 at 14.)

___

**CIVIL MINUTES – GENERAL**        10

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-02026-FWS-DFM            Date: March 28, 2025
Title: Katie Cappuccio v. California State University, Fullerton

___

that (1) [s]he had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) [s]he informed his employer of the belief and conflict; and (3) the employer threatened him with or subjected him to discriminatory treatment, including discharge, because of h[er] inability to fulfill the job requirements." *Heller*, 8 F.3d at 1438. "Second, if the employee proves a prima facie case of discrimination, the burden shifts to the employer to show either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998).

        1.       **Prima Facie Case**

Defendant argues Plaintiff cannot carry her burden to show (1) that Plaintiff's religious belief is bona fide and (2) that Plaintiff informed Defendant of a conflict between her belief and her job requirements. (Mot. at 16); *see Heller*, 8 F.3d at 1438. The court analyzes each issue in turn.

        a.     **Bona Fide Religious Belief**

To reiterate Plaintiff's stance: "Ms. Cappuccio believes God has a plan and purpose for [her] life and relies on his protection. Only when Ms. Cappucio is sick, or is unable to care for herself, or a specific medical condition, does she seek medical care from a physician." (Opp. at 5 (citations omitted).) Defendant argues that Plaintiff cannot meet her burden to show a bona fide religious belief because Plaintiff's behavior throughout her adult life is inconsistent with her stated beliefs. (Reply at 8.) In support of this argument, Defendant submits detailed evidence reflecting that Plaintiff "attended numerous medical appointments and conducted numerous medical tests when she was <u>not sick.</u>" (Mot. at 17; *see also* SUF ¶ 14 (citing Pl. Depo. at 101:22-102:8, 113:9-15, 114:16-25, 121:2-122:2, 122:9-24, 123:21-24, 127:9-23, 128:11-13, 128:23-129:7, 129:14-19, 129:23-25, 130:4-9 (reflecting several eye exams, several dental appointments, OB/GYN visits, and some primary care work)).)

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-02026-FWS-DFM               Date: March 28, 2025
Title: Katie Cappuccio v. California State University, Fullerton

___

However, "[a] religious belief need not be consistent or rational to be protected under Title VII, and an assertion of a sincere religious belief is generally accepted." *Keene v. City & Cnty. of San Francisco*, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023). "This principle does not mean that courts must take plaintiffs' conclusory assertions of violations of their religious beliefs at face value." *Bolden-Hardge v. Office of California State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023). "Still, the burden to allege a conflict with religious beliefs is fairly minimal." *Id.*

Courts regularly decline to hold that a plaintiff acting against their stated beliefs is grounds for summary judgment. For example, in *Dunbar v. Twentieth Century Fox Television*, a court in this district found a dispute of material fact even where a representative of the plaintiff's church confirmed that the plaintiff had received medical procedures that "would be violations of the [the church's] tenets." 2024 WL 2107712, at *2, 5 (C.D. Cal. Mar. 8, 2024). The plaintiff testified that "he has communicated with God who has made exceptions to the 'tenets of [his] beliefs and permitted [him] to act differently.'" *Id.* at 5. Despite evidence that "undermine[d] the sincerity" of plaintiff's beliefs, the court still found plaintiff put forward enough evidence to support "that his beliefs are strongly held and genuine nonetheless." *Id.*

In this case—despite the existence of substantial evidence that casts doubt on the sincerity of plaintiff's beliefs—the court cannot find that "the record taken as a whole could not lead a rational trier of fact to find" that Plaintiff holds a bona fide religious belief. *Matsushita Elec. Indus.*, 475 U.S. at 587; *see also Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). "A court generally may not discount a plaintiff's religious belief based on the court's determination that the belief is inconsistent, unreasonable, or at odds with the beliefs of the plaintiff's co-religionists; what matters is whether the position is based on an honest conviction." *Varkonyi v. United Launch All., LLC*, 2024 WL 1677523, at *3 (C.D. Cal. Feb. 21, 2024) (citing *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 715-16 (1981)). Moreover, Plaintiff raises a dispute of fact on this point when she contends that the medical visits Defendant points to were all in service of "several health conditions" which required care,

___

**CIVIL MINUTES – GENERAL**                                                                                     12

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:23-cv-02026-FWS-DFM | Date: March 28, 2025 |

Title: Katie Cappuccio v. California State University, Fullerton

___

including "monitor[ing] life-threatening medical conditions that she has had to treat in the past." (Opp. at 14-15; SUF ¶ 14.) And the fact that Plaintiff "took two self-administered Covid-19 tests" (Mot. at 8) does not necessarily require a reasonable juror to find that her religious belief against seeking care is insincere. *See Varkonyi*, 2024 WL 1677523, at *3 (denying summary judgment when the defendant contested the sincerity of the plaintiff's religious belief "contending that his lack of objection to other medications and vaccines developed using aborted fetal cell lines is inconsistent with his objection to the COVID-19 vaccine" because "a reasonable juror could find Varkonyi's religious beliefs to be sincerely held"); *Carrol v. Tobii Dynavox LLC*, 2024 WL 1600632, at *4 (C.D. Cal. Apr. 3, 2024) ("The undisputed evidence here shows that Plaintiff raised a religiously-grounded objection to COVID-19 vaccinations tied to the use of fetal cell lines. The Court will not second-guess that religious belief.") (citations omitted); *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1176 n.3 (9th Cir. 2021) ("We may not and do not question of legitimacy of [Plaintiff's] religious beliefs regarding COVID-19 vaccinations.").

Nor does Defendant's briefing convince the court that summary judgment is appropriate on this issue. Defendant cites *Bolden-Hardge*, 63 F.4th at 1223, for the proposition that "a limited inquiry into whether plaintiff's espoused belief represents an 'honest conviction' is permissible and appropriate." (Mot. at 16.) But even in that case the Ninth Circuit did "not interrogate the reasonableness of [plaintiff's] beliefs and instead" focused their inquiry on whether the plaintiff had alleged an actual conflict between her job requirements and religious beliefs. *Bolden-Hardge*, 63 F.4th at 1223.

Defendant further argues that Plaintiff's "preference for self-testing is entirely personal," (Mot. at 17), and that personal preferences are unprotected under *Tiano v. Dillard Dept. Stores, Inc.*, 139 F.3d 679, 682-83 (9th Cir. 1998). In *Tiano*, the Ninth Circuit held that a "district court's finding that [the plaintiff's] religious belief included a temporal mandate was clearly erroneous." *Id.* at 683. The plaintiff "offered no corroborating evidence to support [her] claim that she had to attend [a] pilgrimage between October 17 and 26" rather than another date. *Id.* at 682. And the "remainder of the record [was] replete with evidence that contradict[ed] Tiano's claim that the temporal mandate was part of her bona fide religious belief." *Id.* Here,

___

___

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:23-cv-02026-FWS-DFM | Date: March 28, 2025 |
| Title: Katie Cappuccio v. California State University, Fullerton | |

in contrast, the record is not "replete with evidence" that Plaintiff's aversion to testing by others is a personal preference rather than a religious belief. *Id.* It is plausible that Plaintiff acted consistently with her "belief that it's unnecessary to go to the doctor if you're not ill and to engage in medical practices that are unnecessary," when she administered her own tests rather than have someone else administer that care. (Pl. Depo. at 101:8-12.)

In summary, in this case, although there is substantial evidence supporting Defendant's argument that Plaintiff's belief is not bona fide, the court cannot find, as Defendant argues, that "no reasonable jury could conclude that her alleged belief about medical testing was sincerely held." (Mot. at 17.) Rather, the court finds the "[s]incerity of [Plaintiff's] belief is 'a question of fact'" for the jury to determine. *Varkonyi*, 2024 WL 1677523, at *3 (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)). Accordingly, the court concludes summary judgment on this basis is not warranted.[6]

### b. Informed the Employer

Defendant next argues that Plaintiff cannot meet her burden to show the second element of a prima facie case. (Mot. at 18.) Specifically, Defendant argues that Plaintiff's August 2021 religious exemption request related only to the Covid vaccine and not to testing, and although Plaintiff was repeatedly notified between August and November 2021 of her non-compliance with testing requirements, she did not seek any religious exemption for testing "until December 17, 2021—after [Plaintiff] engaged in misconduct by not testing, which was the basis for her

---

[6] Although the parties do not brief this issue, the court notes that "Title VII adopts a broader definition of religion than FEHA." *Bordeaux*, 2022 WL 19076668, at *6. Ultimately, the "Title VII and FEHA analyses follow a similar path, and "[s]ummary judgment [on the FEHA claim] is inappropriate for the reasons stated in this order's Title VII analysis." *Chavez v. San Francisco Bay Area Rapid Transit Dist.,* 723 F. Supp. 3d 805, 823 (N.D. Cal. 2024). However, the parties should consider this issue during further proceedings.

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-02026-FWS-DFM                                    Date: March 28, 2025
Title: Katie Cappuccio v. California State University, Fullerton

discipline" and "after [Defendant] had already decided to notify her of its intent to dismiss her." (*Id.*)

To satisfy Title VII's notice requirement, an employee need only provide "enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1439 (9th Cir. 1993). "The employee must, however, relay sufficient information about the conflict between the religious belief and the employer's practice or policy, not simply the employee's desired accommodation, in order for an employer to ensure it has met its obligations under both FEHA and Title VII." *Weiss v. Permanente Medical Group, Inc.*, 738 F.Supp.3d 1217, 1223 (N.D. Cal. 2024).

In this case, the court finds there is a genuine dispute of material fact whether Defendant was on notice of a conflict between the testing policy and Plaintiff's religious beliefs. In her original request for a religious exemption, Plaintiff told Defendant that, among other things, "My faith teaches me … to seek the help of a physician only when I am sick." (Dkt. 78-16 at 1 of 3.) Later, after she received a letter of reprimand for failing to comply with the testing policy, Plaintiff told Defendant that she "[did] not consent to any COVID-19 vaccination or COVID-19 testing, which would require [her] to abandon or alter [her] religious beliefs and practices." (Rebuttal.) A reasonable juror could find that Plaintiff's Rebuttal explaining her religious aversion to medical care unless sick along with her explicit objection to Covid-19 testing on religious grounds, met Plaintiff's burden to provide Defendant with enough information "to ensure it has met its obligations under both FEHA and Title VII." *Weiss*, 738 F.Supp.3d at 1223. Defendant's response—that Defendant did not receive any notice Plaintiff gave of the religious conflict with testing until "Defendant had already decided to notify of her its intent to dismiss her," (Mot. at 18)—is not unsupported by the evidence. However, the court determines that Defendant has not provided sufficient authority to persuade the court that notice delivered after Defendant decided to dismiss Plaintiff but before Defendant had actually done so is insufficient as a matter of law "to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." *Heller*, 8 F.3d at 1439.

___

---

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:23-cv-02026-FWS-DFM | Date: March 28, 2025 |
| Title: Katie Cappuccio v. California State University, Fullerton | |

---

Accordingly, the court concludes that Defendant has not shown summary judgment to be appropriate based on the theory that Plaintiff failed to inform Defendant of her objection to the testing requirements.

### 2. Undue Hardship

Defendant next argues that summary judgment is appropriate on Plaintiff's failure to accommodate claims because even if Plaintiff adequately demonstrates a prima facie case, Defendant has provided sufficient evidence that Defendant could not reasonably accommodate Plaintiff without undue hardship. (Mot. at 18-19.) Defendant argues two forms of hardship. (*Id.* at 20.) First, that "accommodating [Plaintiff's] request would have required [Defendant] to violate public health orders and exposed [Defendant] to potential liability." (*Id.*) Second, accommodating Plaintiff would have "compromised the health and safety of the University campus community." (*Id.*) The court notes that Defendant sets forth significant evidence about the burden that an unvaccinated, untested, individual might pose to Defendant's campus. But the court cannot resolve the case on that basis because—under the stringent standards of summary judgment— there remains a question whether Defendant could have raised a different accommodation with Plaintiff that would not have imposed an undue hardship on Defendant.

"A religious accommodation poses an 'undue hardship' when the accommodation 'would result in substantial increased costs in relation to the conduct of [the employer's] particular business.'" *Bordeaux v. Lions Gate Entertainment, Inc.*, 2025 WL 655065, at *1 (9th Cir. Feb. 28, 2025) (quoting *Groff v. DeJoy*, 600 U.S. 447, 470 (2023)) (alteration in original). "The undue hardship inquiry 'takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer.'" *Id.* (quoting *Groff*, 600 U.S. at 470-71). "Following *Groff*, district courts have continued to consider both economic and noneconomic costs when conducting the undue hardship analysis." *Snow v. Women's Healthcare Assocs., LLC*, 2024 WL 3640111, at *6 (D. Or. Aug. 2, 2024). The employer must "negotiate with the employee in an effort reasonably to accommodate the employee's religious beliefs." *Heller*, 8 F.3d at 1440.

---

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-02026-FWS-DFM　　　　　　　　　　　　　　Date: March 28, 2025
Title: Katie Cappuccio v. California State University, Fullerton

___

Yet an employer is "not required to discuss an infeasible alternative accommodation with" the employee. *Bordeaux*, 2025 WL 655065, at *1 n.3.

　　The question under *Heller* is whether there was an accommodation which would have avoided undue hardship, and if so, whether Defendant should have negotiated with Plaintiff about that accommodation. 8 F.3d at 1440. Defendant argues for summary judgment on the assumption that the only way to accommodate Plaintiff's religious beliefs was to exempt her from testing entirely. (*See* Mot. at 18-19.) But the court finds that the record supports a reasonable jury could determine that Defendant could have negotiated other ways to accommodate Plaintiff's religious beliefs that may not have caused an undue burden. Specifically, a reasonable jury could conclude Defendant should have negotiated with Plaintiff about the possibility of "self-testing on campus using Defendant's preferred test kit." (Opp. at 22.) On hardship, the record supports a reasonable jury could find that the first form of hardship Defendant puts forward—the risk of non-compliance with the DPH Order—is not sufficient to find for Defendant because the order does not specify who must administer the test to the employee, and self-testing under Defendant's supervision might be sufficient. (2021 DPH Order.) Likewise, for Defendant's second concern about campus health and safety, the record supports that a reasonable juror could determine that Plaintiff administering her own test would be equally effective. (*See* Mot. at 19-21.)

　　Moreover, the court finds the record does not compel the conclusion that it was not feasible for Defendant to explore a self-testing accommodation with Plaintiff. The parties agree that Plaintiff self-tested twice before she was terminated. (SUF ¶ 15.) The parties further agree that Plaintiff offered to self-test during the hearing which preceded her final termination. (*Id.* ¶ 17.) Even if this information came after Defendant had already decided to terminate Plaintiff, the court finds Defendant has not adequately shown that a reasonable jury necessarily must conclude that self-testing was always an "infeasible alternative accommodation." *Bordeaux*, 2025 WL 655065, at *1 n.3. As Defendant argued at the hearing, it may be that some of Plaintiff's statements on the bounds of her religious beliefs might have cast doubt on her willingness to self-test. (*See e.g.*, Rebuttal ("I do not consent to any COVID-19 vaccination or COVID-19 testing, which would require me to abandon or alter my religious beliefs and

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-02026-FWS-DFM             Date: March 28, 2025

Title: Katie Cappuccio v. California State University, Fullerton

___

practices").)  But the court cannot conclude that a reasonable jury is sure to find that it would have been futile to broach this topic with Plaintiff.  *See Carroll*, 2024 WL 1600632, at *6 ("[T]he Court finds that there are triable issues on the question of whether Defendant engaged in a good faith effort to ***explore*** various possible accommodations to Plaintiff's request."); *see also Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 310 F. Supp. 3d 1089, 1104–05 (S.D. Cal. 2018) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment.") (citation omitted).  Based on the state of the record, the court determines summary judgment is not appropriate.

Put another way, whether "a given accommodation would cause undue hardship is in any case, a fact-intensive inquiry," and in this case the court finds that fact-intensive inquiry must be performed by a jury.  *Chavez*, 723 F. Supp. 3d at 819.  Therefore, the court **DENIES** the Motion on Plaintiff's failure to accommodate claims under both Title VII and FEHA.

    **B.**     **Disparate Impact**

Plaintiff's final remaining claim is a disparate impact claim under which Plaintiff alleges "100% of the employees"—that is, Plaintiff herself—"who refused to violate their sincerely held religious beliefs and submit to asymptomatic surveillance testing were discriminated against or fired."  (Opp. at 24.)  Defendant moves for summary judgment on Plaintiff's disparate impact claim because (1) a policy that affects only one employee does not suffice to show disparate impact and (2) any disparate impact was justified by business necessity.  (Mot. at 22-23.)

"To plead a prima facie case of disparate impact, a plaintiff must (1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact."  *Bolden-Hardge*, 63 F.4th at 1227 (internal quotation marks omitted).  As stated, Plaintiff argues that she can adequately demonstrate a disparate impact at trial because Plaintiff "was the only employee who refused to test due to her sincerely held

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-02026-FWS-DFM                    Date: March 28, 2025
Title: Katie Cappuccio v. California State University, Fullerton

religious beliefs, and the only one who was fired." (Opp. at 24.)  But courts in this district reject disparate impact claims that point to an effect on only one employee, even at the less-strenuous pleading stage.  *See Dunbar*, 2022 WL 18357775, at *2 ("Although a plaintiff need not provide comprehensive statistical evidence at the pleading stage, he still must allege specific facts from which a reasonable inference can be drawn that an employment practice broadly impacts a certain *group* in an adverse manner—not merely a single person."); *Medrano v. Kaiser Permanente*, 2024 WL 3383704, at *6 (C.D. Cal. July 10, 2024) (quoting *Dunbar* and following its reasoning); *Andazola v. Permanente*, 2024 WL 3914610, at *11 (C.D. Cal. July 26, 2024) ("Pleading that she alone has been discriminated against by way of Defendant's facially-neutral policy is insufficient.").  Moreover, the court observes Plaintiff does not cite legal authority to support her alternative understanding of disparate impact beyond a citation to *Stout v. Potter*, 276 F.3d 1118, 1121 (9th Cir. 2002), for the limited proposition that "statistical evidence is not required to prove a disparate impact claim."  (Surreply at 10; Opp. at 24-25.)  And that citation does not change the court's conclusion that Plaintiff fails to adequately state a disparate impact claim in this case because her theory of disparate impact, relying solely on her own adverse experience, fails.  *See Dunbar*, 2022 WL 18357775, at *2; *Medrano*, 2024 WL 3383704, at *6; *Andazola*, 2024 WL 3914610, at *11.

Accordingly, the court **GRANTS** the Motion on Plaintiff's disparate impact claim.

## IV. Disposition

For the reasons stated above, the Motion is **DENIED** as to Plaintiff's failure to accommodate claims under Title VII and FEHA and **GRANTED** as to Plaintiff's disparate impact claim.  Accordingly, if a trial proceeds in this case, it will proceed only on Plaintiff's failure to accommodate claims under Title VII and FEHA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:23-cv-02026-FWS-DFM					Date: March 28, 2025
Title: Katie Cappuccio v. California State University, Fullerton

    The court observes that the deadline for the parties to complete a settlement conference before a magistrate judge passed on February 27, 2025. (Dkt. 74.) It does not appear that the parties complied with that deadline.[7] (*See generally* Dkt.) The court **ORDERS** as follows:

1. The parties shall participate in an **in-person** settlement conference before the assigned Magistrate Judge, Magistrate Judge Douglas F. McCormick, on or before **May 23, 2025**.
2. The parties shall contact Magistrate Judge McCormick's Courtroom Deputy within the next seven days to find a mutually convenient date and time for the settlement conference.
3. The parties shall file a joint report on or before **April 18, 2025**, stating the date scheduled for the settlement conference.
4. The parties shall file another joint report within **three days** of the settlement conference's conclusion, stating the result.
5. The trial and pretrial conference dates, currently scheduled for **August 19, 2025**, and **July 17, 2025**, respectively, remain in full effect.

---

[7] A scheduling order is "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). The court will consider what action or actions to take based on the parties' failure to comply with the operative scheduling order at the July 17, 2025, pretrial conference.