Title VII of the Civil Rights Act of 1964 | U.S. Equal Employment Opportunity Commission    8/14/25, 11:52 PM



**U.S. Equal Employment
Opportunity Commission**

# Title VII of the Civil Rights Act of 1964

*EDITOR'S NOTE: The following is the text of Title VII of the Civil Rights Act of 1964
(Title VII) (Pub. L. 88-352), as amended. Title VII is codified at 42 U.S.C. 2000e and
in subsequent sections. Title VII amendments include those introduced by the*
**Civil Rights Act of 1991 (https://www.eeoc.gov/statutes/civil-rights-act-
1991)** *(CRA) and the* **Lilly Ledbetter Fair Pay Act of 2009
(https://www.eeoc.gov/lilly-ledbetter-fair-pay-act-2009-original-text)** *.
Editor's notes appear in italics and include cross-references to the codified
version of Title VII. Title VII prohibits employment discrimination based on race,
color, religion, sex and national origin.*

---

An Act

To enforce the constitutional right to vote, to confer jurisdiction upon the
district courts of the United States to provide injunctive relief against
discrimination in public accommodations, to authorize the attorney General to
institute suits to protect constitutional rights in public facilities and public
education, to extend the Commission on Civil Rights, to prevent discrimination
in federally assisted programs, to establish a Commission on Equal
Employment Opportunity, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States
of America in Congress assembled, That this Act may be cited as the "Civil
Rights Act of 1964".

* * *

# DEFINITIONS

SEC. 2000e. [Section 701]

Case 8:23-cv-02026-FWS-DFM    Document 159-1    Filed 08/15/25    Page 2 of 36    Page
ID #:3101
Title VII of the Civil Rights Act of 1964 | U.S. Equal Employment Opportunity Commission                    8/14/25, 11:52 PM

SEC. 2000e. [Section 701]

For the purposes of this subchapter—

(a) The term "person" includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint--stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11 *[originally, bankruptcy ]*, or receivers.

(b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5 *[United States Code]*), or

(2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26 *[the Internal Revenue Code of 1986]*, except that during the first year after March 24, 1972 *[the date of enactment of the Equal Employment Opportunity Act of 1972]*, persons having fewer than twenty-five employees (and their agents) shall not be considered employers.

(c) The term "employment agency" means any person regularly undertaking

with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person.

(d) The term "labor organization" means a labor organization engaged in an industry affecting commerce, and any agent of such an organization, and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization.

(e) A labor organization shall be deemed to be engaged in an industry affecting commerce if (1) it maintains or operates a hiring hall or hiring office which procures employees for an employer or procures for employees opportunities to work for an employer, or (2) the number of its members (or, where it is a labor organization composed of other labor organizations or their

representatives, if the aggregate number of the members of such other labor organization) is (A) twenty-five or more during the first year after March 24, 1972 *[the date of enactment of the Equal Employment Opportunity Act of 1972]*, or (B) fifteen or more thereafter, and such labor organization-

> (1) is the certified representative of employees under the provisions of the National Labor Relations Act, as amended *[29 U.S.C. 151 et seq.]*, or the Railway Labor Act, as amended *[45 U.S.C. 151 et seq.]*;

> (2) although not certified, is a national or international labor organization or a local labor organization recognized or acting as the representative of employees of an employer or employers engaged in an industry affecting commerce; or

> (3) has chartered a local labor organization or subsidiary body which is representing or actively seeking to represent employees of employers within the meaning of paragraph (1) or (2); or

> (4) has been chartered by a labor organization representing or actively seeking to represent employees within the meaning of paragraph (1) or (2) as the local or subordinate body through which such employees may enjoy membership or become affiliated with such labor organization; or

> (5) is a conference, general committee, joint or system board, or joint council subordinate to a national or international labor organization, which includes a labor organization engaged in an industry affecting commerce within the meaning of any of the preceding paragraphs of this subsection.

(f) The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision. With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.

(g) The term "commerce" means trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof; or within the District of Columbia, or a possession of the United States; or between points in the same State but through a point outside thereof.

(h) The term "industry affecting commerce" means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry "affecting commerce" within the meaning of the Labor-Management Reporting and Disclosure Act of 1959 *[29 U.S.C. 401 et seq.]*, and further includes any governmental industry, business, or activity.

(i) The term "State" includes a State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, Wake Island, the Canal Zone, and Outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act *[43 U.S.C. 1331 et seq.]*.

(j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

(k) The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e-2(h) of this title *[section 703(h)]* shall be interpreted to permit otherwise. This subsection shall not require an employer to pay for health insurance benefits for abortion, except where the life of the mother would be endangered if the fetus were carried to term, or except where medical complications have arisen from an abortion: Provided, That nothing herein shall preclude an employer from providing abortion benefits or otherwise affect bargaining agreements in regard to abortion.

(l) The term "complaining party" means the Commission, the Attorney General, or a person who may bring an action or proceeding under this subchapter.

(m) The term "demonstrates" means meets the burdens of production and persuasion.

(n) The term "respondent" means an employer, employment agency, labor organization, joint labor management committee controlling apprenticeship or other training or retraining program, including an on-the-job training program, or Federal entity subject to section 2000e-16 of this title.

# APPLICABILITY TO FOREIGN AND RELIGIOUS EMPLOYMENT

# RELIGIOUS EMPLOYMENT

SEC. 2000e-1. *[Section 702]*

(a) Inapplicability of subchapter to certain aliens and employees of religious entities

This subchapter shall not apply to an employer with respect to the employment of aliens outside any State, or to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

(b) Compliance with statute as violative of foreign law

It shall not be unlawful under section 2000e-2 or 2000e-3 of this title *[section 703 or 704]* for an employer (or a corporation controlled by an employer), labor organization, employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining (including on-the-job training programs) to take any action otherwise prohibited by such section, with respect to an employee in a workplace in a foreign country if compliance with such section would cause such employer (or such corporation), such organization, such agency, or such committee to violate the law of the foreign country in which such workplace is located.

(c) Control of corporation incorporated in foreign country

(1) If an employer controls a corporation whose place of incorporation is a foreign country, any practice prohibited by section 2000e-2 or 2000e-3 of this title *[section 703 or 704]* engaged in by such corporation shall be presumed to be engaged in by such employer.

(2) Sections 2000e-2 and 2000e-3 of this title *[sections 703 and 704]* shall not apply with respect to the foreign operations of an employer that is a foreign person not controlled by an American employer.

(3) For purposes of this subsection, the determination of whether an employer controls a corporation shall be based on-

(A) the interrelation of operations;

(B) the common management;

(C) the centralized control of labor relations; and

(D) the common ownership or financial control, of the employer and the corporation.

# UNLAWFUL EMPLOYMENT PRACTICES

SEC. 2000e-2. *[Section 703]*

(a) Employer practices

It shall be an unlawful employment practice for an employer -

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

(b) Employment agency practices

It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin.

(c) Labor organization practices

It shall be an unlawful employment practice for a labor organization-

> (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

> (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such

individual's race, color, religion, sex, or national origin; or

(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

(d) Training programs

It shall be an unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training.

(e) Businesses or enterprises with personnel qualified on basis of religion, sex,

or national origin; educational institutions with personnel of particular religion

Notwithstanding any other provision of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees, for an employment agency to classify, or refer for employment any individual, for a labor organization to classify its membership or to classify or refer for employment any individual, or for an employer, labor organization, or joint labor management committee controlling apprenticeship or other training or retraining programs to admit or employ any individual in any such program, on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise, and (2) it shall not be an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university, or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school, college, university, or other educational institution or institution of learning is directed toward the propagation of a particular religion.

(f) Members of Communist Party or Communist-action or Communist-front organizations

As used in this subchapter, the phrase "unlawful employment practice" shall not be deemed to include any action or measure taken by an employer, labor organization, joint labor management committee, or employment agency with respect to an individual who is a member of the Communist Party of the United States or of any other organization required to register as a Communist-action or Communist-front organization by final order of the Subversive Activities

Control Board pursuant to the Subversive Activities Control Act of 1950 *[50 U.S.C. 781 et seq.]*.

(g) National security

Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to fail or refuse to hire and employ any individual for any position, for an employer to discharge any individual from any position, or for an employment agency to fail or refuse to refer any individual for employment in any position, or for a labor organization to fail or refuse to refer any individual for employment in any position, if-

> (1) the occupancy of such position, or access to the premises in or upon which any part of the duties of such position is performed or is to be performed, is subject to any requirement imposed in the interest of the national security of the United States under any security program in effect pursuant to or administered under any statute of the United States or any Executive order of the President; and

> (2) such individual has not fulfilled or has ceased to fulfill that requirement.

(h) Seniority or merit system; quantity or quality of production; ability tests; compensation based on sex and authorized by minimum wage provisions

Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, or a system which measures earnings by quantity or quality of production or to employees who work in different locations, provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin, nor shall it be an unlawful employment practice for an employer to give and to act upon the results of any professionally developed ability test provided that such test, its administration or action upon the results is not designed, intended or used to discriminate because of race, color, religion, sex or national origin. It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of Title 29 *[section 6(d) of the Labor Standards Act of 1938, as amended]*.

(i) Businesses or enterprises extending preferential treatment to Indians

Nothing contained in this subchapter shall apply to any business or enterprise

on or near an Indian reservation with respect to any publicly announced employment practice of such business or enterprise under which a preferential treatment is given to any individual because he is an Indian living on or near a reservation.

(j) Preferential treatment not to be granted on account of existing number or percentage imbalance

Nothing contained in this subchapter shall be interpreted to require any employer, employment agency, labor organization, or joint labor-management committee subject to this subchapter to grant preferential treatment to any individual or to any group because of the race, color, religion, sex, or national origin of such individual or group on account of an imbalance which may exist with respect to the total number or percentage of persons of any race, color, religion, sex, or national origin employed by any employer, referred or classified for employment by any employment agency or labor organization, admitted to membership or classified by any labor organization, or admitted to, or employed in, any apprenticeship or other training program, in comparison with the total number or percentage of persons of such race, color, religion, sex, or national origin in any community, State, section, or other area, or in the available work force in any community, State, section, or other area.

(k) Burden of proof in disparate impact cases

(1) (A) An unlawful employment practice based on disparate impact is established under this subchapter only if-

> (i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity; or

> (ii) the complaining party makes the demonstration described in subparagraph (C) with respect to an alternative employment practice and the respondent refuses to adopt such alternative employment practice.

> (B) (i) With respect to demonstrating that a particular employment practice causes a disparate impact as described in subparagraph (A) (i), the complaining party shall demonstrate that each particular challenged employment practice causes a disparate impact, except that if the complaining party can demonstrate to the court that the elements of a respondent's decision making process are not capable of separation for analysis, the decision making process may

be analyzed as one employment practice.

(ii) If the respondent demonstrates that a specific employment practice does not cause the disparate impact, the respondent shall not be required to demonstrate that such practice is required by business necessity.

(C) The demonstration referred to by subparagraph (A)(ii) shall be in accordance with the law as it existed on June 4, 1989, with respect to the concept of "alternative employment practice".

(2) A demonstration that an employment practice is required by business necessity may not be used as a defense against a claim of intentional discrimination under this subchapter.

(3) Notwithstanding any other provision of this subchapter, a rule barring the employment of an individual who currently and knowingly uses or possesses a controlled substance, as defined in schedules I and II of section 102(6) of the Controlled Substances Act (21 U.S.C. 802(6)), other than the use or possession of a drug taken under the supervision of a licensed health care professional, or any other use or possession authorized by the Controlled Substances

Act *[21 U.S.C. 801 et seq.]* or any other provision of Federal law, shall be considered an unlawful employment practice under this subchapter only if such rule is adopted or applied with an intent to discriminate because of race, color, religion, sex, or national origin.

(l) Prohibition of discriminatory use of test scores

It shall be an unlawful employment practice for a respondent, in connection with the selection or referral of applicants or candidates for employment or promotion, to adjust the scores of, use different cutoff scores for, or otherwise alter the results of, employment related tests on the basis of race, color, religion, sex, or national origin.

(m) Impermissible consideration of race, color, religion, sex, or national origin in employment practices

Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

(n) Resolution of challenges to employment practices implementing litigated or consent judgments or orders

(1) (A) Notwithstanding any other provision of law, and except as provided in

Title VII of the Civil Rights Act of 1964 | U.S. Equal Employment Opportunity Commission                    8/14/25, 11:52 PM

paragraph (2), an employment practice that implements and is within the scope of a litigated or consent judgment or order that resolves a claim of employment discrimination under the Constitution or Federal civil rights laws may not be challenged under the circumstances described in subparagraph (B).

> (B) A practice described in subparagraph (A) may not be challenged in a claim under the Constitution or Federal civil rights laws-

>> (i) by a person who, prior to the entry of the judgment or order described in subparagraph (A), had-

>>> (I) actual notice of the proposed judgment or

>>> order sufficient to apprise such person that such judgment or order might adversely affect the interests and legal rights of such person and that an opportunity was available to present objections to such judgment or order by a future date certain; and

>>> (II) a reasonable opportunity to present objections to such judgment or order; or

>> (ii) by a person whose interests were adequately represented by another person who had previously challenged the judgment or order on the same legal grounds and with a similar factual situation, unless there has been an intervening change in law or fact.

> (2) Nothing in this subsection shall be construed to-

>> (A) alter the standards for intervention under rule 24 of the Federal Rules of Civil Procedure or apply to the rights of parties who have successfully intervened pursuant to such rule in the proceeding in which the parties intervened;

>> (B) apply to the rights of parties to the action in which a litigated or consent judgment or order was entered, or of members of a class represented or sought to be represented in such action, or of members of a group on whose behalf relief was sought in such action by the Federal Government;

>> (C) prevent challenges to a litigated or consent judgment or order on the ground that such judgment or order was obtained through collusion or fraud, or is transparently invalid or was entered by a court lacking subject matter jurisdiction; or

(D) authorize or permit the denial to any person of the due process of law required by the Constitution.

(3) Any action not precluded under this subsection that challenges an employment consent judgment or order described in paragraph (1) shall be brought in the court, and if possible before the judge, that entered such judgment or order. Nothing in this subsection shall preclude a transfer of such action pursuant to section 1404 of Title 28 [*United States Code*].

# OTHER UNLAWFUL EMPLOYMENT PRACTICES

SEC. 2000e-3. *[Section 704]*

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on—the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

(b) Printing or publication of notices or advertisements indicating prohibited preference, limitation, specification, or discrimination; occupational qualification exception

It shall be an unlawful employment practice for an employer, labor organization, employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to print or publish or cause to be printed or published any notice or advertisement relating to employment by such an employer or

membership in or any classification or referral for employment by such a labor organization, or relating to any classification or referral for employment by such an employment agency, or relating to admission to, or employment in, any program established to provide apprenticeship or other training by such a joint labor-management committee, indicating any preference, limitation, specification, or discrimination, based on race, color, religion, sex, or national origin, except that such a notice or advertisement may indicate a preference

origin, except that such a notice or advertisement may indicate a preference, limitation, specification, or discrimination based on religion, sex, or national origin when religion, sex, or national origin is a bona fide occupational qualification for employment.

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

SEC. 2000e-4. *[Section 705]*

(a) Creation; composition; political representation; appointment; term; vacancies; Chairman and Vice Chairman; duties of Chairman; appointment of personnel; compensation of personnel

There is hereby created a Commission to be known as the Equal Employment Opportunity Commission, which shall be composed of five members, not more than three of whom shall be members of the same political party. Members of the Commission shall be appointed by the President by and with the advice and consent of the Senate for a term of five years. Any individual chosen to fill a vacancy shall be appointed only for the unexpired term of the member whom he shall succeed, and all members of the Commission shall continue to serve until their successors are appointed and qualified, except that no such member of the Commission shall continue to serve (1) for more than sixty days when the Congress is in session unless a nomination to fill such vacancy shall have been submitted to the Senate, or (2) after the adjournment sine die of the session of the Senate in which such nomination was submitted. The President shall designate one member to serve as Chairman of the Commission, and one

member to serve as Vice Chairman. The Chairman shall be responsible on behalf of the Commission for the administrative operations of the Commission, and, except as provided in subsection (b) of this section, shall appoint, in accordance with the provisions of Title 5 *[United States Code]* governing appointments in the competitive service, such officers, agents, attorneys, administrative law judges *[originally, hearing examiners]*, and employees as he deems necessary to assist it in the performance of its functions and to fix their compensation in accordance with the provisions of chapter 51 and subchapter III of chapter 53 of Title 5 *[United States Code]*, relating to classification and General Schedule pay rates: Provided, That assignment, removal, and compensation of administrative law judges *[originally, hearing examiners]* shall be in accordance with sections 3105, 3344, 5372, and 7521 of Title 5 *[United States Code]*.

(b) General Counsel; appointment; term; duties; representation by attorneys and Attorney General

(1) There shall be a General Counsel of the Commission appointed by the President, by and with the advice and consent of the Senate, for a term of four years. The General Counsel shall have responsibility for the conduct of litigation as provided in sections 2000e-5 and 2000e-6 of this title *[sections 706 and 707]*. The General Counsel shall have such other duties as the Commission may prescribe or as may be provided by law and shall concur with the Chairman of the Commission on the appointment and supervision of regional attorneys. The General Counsel of the Commission on the effective date of this Act shall continue in such position and perform the functions specified in this subsection until a successor is appointed and qualified.

(2) Attorneys appointed under this section may, at the direction of the Commission, appear for and represent the Commission in any case in court, provided that the Attorney General shall conduct all litigation to which the Commission is a party in the Supreme Court pursuant to this subchapter.

(c) Exercise of powers during vacancy; quorum

A vacancy in the Commission shall not impair the right of the remaining members to exercise all the powers of the Commission and three members thereof shall constitute a quorum.

(d) Seal; judicial notice

The Commission shall have an official seal which shall be judicially noticed.

(e) Reports to Congress and the President

The Commission shall at the close of each fiscal year report to the Congress and to the President concerning the action it has taken *[originally, the names, salaries, and duties of all individuals in its employ]* and the moneys it has disbursed. It shall make such further reports on the cause of and means of eliminating discrimination and such recommendations for further legislation as may appear desirable.

(f) Principal and other offices

The principal office of the Commission shall be in or near the District of Columbia, but it may meet or exercise any or all its powers at any other place. The Commission may establish such regional or State offices as it deems necessary to accomplish the purpose of this subchapter.

(g) Powers of Commission

The Commission shall have power-

> (1) to cooperate with and, with their consent, utilize regional, State, local, and other agencies, both public and private, and individuals;

> (2) to pay to witnesses whose depositions are taken or who are summoned before the Commission or any of its agents the same witness and mileage fees as are paid to witnesses in the courts of the United States;

> (3) to furnish to persons subject to this subchapter such technical assistance as they may request to further their compliance with this subchapter or an order issued thereunder;

> (4) upon the request of (i) any employer, whose employees or some of them, or (ii) any labor organization, whose members or some of them, refuse or threaten to refuse to cooperate in effectuating the provisions of this subchapter, to assist in such effectuation by conciliation or such other remedial action as is provided by this subchapter;

> (5) to make such technical studies as are appropriate to effectuate the purposes and policies of this subchapter and to make the results of such studies available to the public;

> (6) to intervene in a civil action brought under section 2000e-5 of this title *[section 706]* by an aggrieved party against a respondent other than a government, governmental agency or political subdivision.

(h) Cooperation with other departments and agencies in performance of educational or promotional activities; outreach activities

> (1) The Commission shall, in any of its educational or promotional activities, cooperate with other departments and agencies in the performance of such educational and promotional activities.

> (2) In exercising its powers under this subchapter, the Commission shall carry out educational and outreach activities (including dissemination of information in languages other than English) targeted to-

>> (A) individuals who historically have been victims of employment discrimination and have not been equitably served by the Commission; and

>> (B) individuals on whose behalf the Commission has

authority to enforce any other law prohibiting
employment discrimination, concerning rights and
obligations under this subchapter or such law, as the
case may be.

(i) Personnel subject to political activity restrictions

All officers, agents, attorneys, and employees of the Commission shall be
subject to the provisions of section 7324 of Title 5 *[originally, section 9 of the Act
of August 2, 1939, as amended (the Hatch Act)]*, notwithstanding any exemption
contained in such section.

(j) Technical Assistance Training Institute

  (1) The Commission shall establish a Technical Assistance Training
  Institute, through which the Commission shall provide technical
  assistance and training regarding the laws and regulations enforced
  by the Commission.

  (2) An employer or other entity covered under this subchapter shall
  not be excused from compliance with the requirements of this
  subchapter because of any failure to receive technical assistance
  under this subsection.

  (3) There are authorized to be appropriated to carry out this
  subsection such sums as may be necessary for fiscal year 1992.

(k) EEOC Education, Technical Assistance, and Training Revolving Fund

(1) There is hereby established in the Treasury of the United States a revolving
fund to be known as the "EEOC Education, Technical Assistance, and Training
Revolving Fund" (hereinafter in this subsection referred to as the "Fund") and
to pay the cost (including administrative and personnel expenses) of providing
education, technical assistance, and training relating to laws administered by
the Commission. Monies in the Fund shall be available without fiscal year
limitation to the Commission for such purposes.

(2)(A) The Commission shall charge fees in accordance with the provisions of
this paragraph to offset the costs of education, technical assistance, and
training provided with monies in the Fund. Such fees for any education,
technical assistance, or training--

  (i) shall be imposed on a uniform basis on persons and entities
  receiving such education, assistance, or training,

  (ii) shall not exceed the cost of providing such education, assistance,

and training, and

(iii) with respect to each person or entity receiving such education, assistance, or training, shall bear a reasonable relationship to the cost of providing such education, assistance, or training to such person or entity.

(B) Fees received under subparagraph (A) shall be deposited in the Fund by the Commission.

(C) The Commission shall include in each report made under subsection (e) of this section information with respect to the operation of the Fund, including information, presented in the aggregate, relating to--

(i) the number of persons and entities to which the Commission provided education, technical assistance, or training with monies in the Fund, in the fiscal year for which such report is prepared,

(ii) the cost to the Commission to provide such education, technical assistance, or training to such persons and entities, and

(iii) the amount of any fees received by the Commission from such persons and entities for such education, technical assistance, or training.

(3) The Secretary of the Treasury shall invest the portion of the Fund not required to satisfy current expenditures from the Fund, as determined by the Commission, in obligations of the United States or obligations guaranteed as to principal by the United States. Investment proceeds shall be deposited in the Fund.

(4) There is hereby transferred to the Fund $1,000,000 from the Salaries and Expenses appropriation of the Commission.

# ENFORCEMENT PROVISIONS

SEC. 2000e-5. *[Section 706]*

(a) Power of Commission to prevent unlawful employment practices

The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e-2 or 2000e-3 of this title *[section 703 or 704]*.

(b) Charges by persons aggrieved or member of Commission of unlawful employment practices by employers, etc.; filing; allegations; notice to

Title VII of the Civil Rights Act of 1964: Equal Employment Opportunity Commission
Case 8:23-cv-02026-FWS-DFM    Document 159-1    Filed 08/15/25    Page 18 of 36   Page
ID #:3117
8/14/25, 11:52 PM

respondent; contents of notice; investigation by Commission; contents of charges; prohibition on disclosure of charges; determination of reasonable cause; conference, conciliation, and persuasion for elimination of unlawful practices; prohibition on disclosure of informal endeavors to end unlawful practices; use of evidence in subsequent proceedings; penalties for disclosure of information; time for determination of reasonable cause

Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labormanagement committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and

shall contain such information and be in such form as the Commission requires. Charges shall not be made public by the Commission. If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action. In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the requirements of subsections (c) and (d) of this section. If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both. The Commission shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge or, where applicable under subsection (c) or (d) of this section, from the date upon which the Commission is authorized to take action with respect to the charge.

(c) State or local enforcement proceedings; notification of State or local authority; time for filing charges with Commission; commencement of proceedings

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (a) of this section by the person aggrieved before the expiration of sixty days after proceedings have been

commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty- day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority.

(d) State or local enforcement proceedings; notification of State or local authority; time for action on charges by Commission

In the case of any charge filed by a member of the Commission alleging an unlawful employment practice occurring in a State or political subdivision of a State which has a State or local law prohibiting the practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, the Commission shall, before taking any action with respect to such charge, notify the appropriate State or local officials and, upon request, afford them a reasonable time, but not less than sixty days (provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective day of such State or local law), unless a shorter period is requested, to act under such State or local law to remedy the practice alleged.

(e) Time for filing charges; time for service of notice of charge on respondent; filing of charge by Commission with State or local agency; seniority system

(1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute

authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

(2) For purposes of this section, an unlawful employment practice occurs, with respect to a seniority system that has been adopted for an intentionally discriminatory purpose in violation of this subchapter (whether or not that discriminatory purpose is apparent on the face of the seniority provision), when the seniority system is adopted, when an individual becomes subject to the seniority system, or when a person aggrieved is injured by the application of the seniority system or provision of the system.

(3)(A) For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

(B) In addition to any relief authorized by section 1977A of the Revised Statutes (42 U.S.C. 1981a), liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge,

where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

(f) Civil action by Commission, Attorney General, or person aggrieved; preconditions; procedure; appointment of attorney; payment of fees, costs, or security; intervention; stay of Federal proceedings; action for appropriate temporary or preliminary relief pending final disposition of charge; jurisdiction and venue of United States courts; designation of judge to hear and determine

case; assignment of case for hearing; expedition of case; appointment of master

(1) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the Attorney General in a case involving a government, governmental agency, or political subdivision. If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the

Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, the court may, in its discretion, permit the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, to intervene in such civil action upon certification that the case is of general public

importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsection (c) or (d) of this section or further efforts of the Commission to obtain voluntary compliance.

(2) Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. Any temporary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with rule 65 of the Federal Rules of Civil Procedure. It shall be the duty of a court having jurisdiction over proceedings under this section to assign cases for hearing at the earliest practicable date and to cause such cases to be in every way expedited.

(3) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28 *[United States Code]*, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

(4) It shall be the duty of the chief judge of the district (or in his absence, the acting chief judge) in which the case is pending immediately to designate a judge in such district to hear and determine the case. In the event that no judge in the district is available to hear and determine the case, the chief judge of the district, or the acting chief judge, as the case may be, shall certify this fact to the chief judge of the circuit (or in his absence, the acting chief judge) who shall then designate a district or circuit judge of the circuit to hear and determine the case.

(5) It shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within one hundred and

twenty days after issue has been joined, that judge may appoint a master pursuant to rule 53 of the Federal Rules of Civil Procedure.

(g) Injunctions; appropriate affirmative action; equitable relief; accrual of back pay; reduction of back pay; limitations on judicial orders

(1) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

(2) (A) No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e-3(a) of this Title *[section 704(a)]*.

(B) On a claim in which an individual proves a violation under section 2000e-2(m) of this title *[section 703(m)]* and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court-

(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title

[section 703(m)]; and

> (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

(h) Provisions of chapter 6 of Title 29 not applicable to civil actions for prevention of unlawful practices

The provisions of chapter 6 of title 29 *[the Act entitled"An Act to amend the Judicial Code and to define and limit the jurisdiction of courts sitting in equity, and for other purposes," approved March 23, 1932 (29 U.S.C. 105-115)]* shall not apply with respect to civil actions brought under this section.

(i) Proceedings by Commission to compel compliance with judicial orders In any case in which an employer, employment agency, or labor organization fails to comply with an order of a court issued in a civil action brought under this section, the Commission may commence proceedings to compel compliance with such order.

(j) Appeals

Any civil action brought under this section and any proceedings brought under subsection (i) of this section shall be subject to appeal as provided in sections 1291 and 1292, Title 28 *[United States Code]*.

(k) Attorney's fee; liability of Commission and United States for costs

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

# CIVIL ACTIONS BY THE ATTORNEY GENERAL

SEC. 2000e-6. *[Section 707]*

(a) Complaint

Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing with it a complaint

(1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described.

(b) Jurisdiction; three-judge district court for cases of general public importance: hearing, determination, expedition of action, review by Supreme Court; single judge district court: hearing, determination, expedition of action

The district courts of the United States shall have and shall exercise jurisdiction of proceedings instituted pursuant to this section, and in any such proceeding the Attorney General may file with the clerk of such court a request that a court of three judges be convened to hear and determine the case. Such request by the Attorney General shall be accompanied by a certificate that, in his opinion, the case is of general public importance. A copy of the certificate and request for a three-judge court shall be immediately furnished by such clerk to the chief judge of the circuit (or in his absence, the presiding circuit judge of the circuit) in which the case is pending. Upon receipt of such request it shall be the duty of the chief judge of the circuit or the presiding circuit judge, as the case may be, to designate immediately three judges in such circuit, of whom at least one

shall be a circuit judge and another of whom shall be a district judge of the court in which the proceeding was instituted, to hear and determine such case, and it shall be the duty of the judges so designated to assign the case for hearing at the earliest practicable date, to participate in the hearing and determination thereof, and to cause the case to be in every way expedited. An appeal from the final judgment of such court will lie to the Supreme Court.

In the event the Attorney General fails to file such a request in any such proceeding, it shall be the duty of the chief judge of the district (or in his absence, the acting chief judge) in which the case is pending immediately to designate a judge in such district to hear and determine the case. In the event that no judge in the district is available to hear and determine the case, the chief judge of the district, or the acting chief judge, as the case may be, shall certify this fact to the chief judge of the circuit (or in his absence, the acting chief judge) who shall then designate a district or circuit judge of the circuit to hear and determine the case.

It shall be the duty of the judge designated pursuant to this section to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited.

(c) Transfer offunctions, etc., to Commission; effective date; prerequisite to transfer; execution of functions by Commission

Effective two years after March 24, 1972 *[the date of enactment of the Equal Employment Opportunity Act of 1972]*, the functions of theAttorney General under this section shall be transferred to the Commission, together with such personnel, property, records, and unexpended balances of appropriations, allocations, and other funds employed, used, held, available, or to be made available in connection with such functions unless the President submits, and neither House of Congress vetoes, a reorganization plan pursuant to chapter 9 of Title 5 *[United States Code]*, inconsistent with the provisions of this subsection. The Commission shall carry out such functions in accordance with subsections (d) and (e) of this section.

(d) Transfer of functions, etc., not to affect suits commenced pursuant to this section prior to date of transfer

Upon the transfer of functions provided for in subsection (c) of this section, in all suits commenced pursuant to this section prior to the date of such transfer, proceedings shall continue without abatement, all court orders and decrees shall remain in effect, and the Commission shall be substituted as a party for the United States of America, the Attorney General, or the Acting Attorney General, as appropriate.

(e) Investigation and action by Commission pursuant to filing of charge of discrimination; procedure

Subsequent to March 24, 1972 *[the date of enactment of the Equal Employment Opportunity Act of 1972]*, the Commission shall haveauthority to investigate and act on a charge of a pattern or practice ofdiscrimination, whether filed by or on behalf of a person claiming to beaggrieved or by a member of the Commission. All such actions shall beconducted in accordance with the procedures set forth in section 2000e-5of this title *[section 706]*.

# EFFECT ON STATE LAWS

SEC. 2000e-7. *[Section 708]*

Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.

# INVESTIGATIONS

SEC. 2000e-8. *[Section 709]*

(a) Examination and copying of evidence related to unlawful employment practices

In connection with any investigation of a charge filed under section 2000e-5 of this title *[section 706]*, the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation.

(b) Cooperation with State and local agencies administering State fair employment practices laws; participation in and contribution to research and other projects; utilization of services; payment in advance or reimbursement; agreements and rescission of agreements

The Commission may cooperate with State and local agencies charged with the administration of State fair employment practices laws and, with the consent of such agencies, may, for the purpose of carrying out its functions and duties under this subchapter and within the limitation of funds appropriated specifically for such purpose, engage in and contribute to the cost of research and other projects of mutual interest undertaken by such agencies, and utilize the services of such agencies and their employees, and, notwithstanding any other provision of law, pay by advance or reimbursement such agencies and their employees for services rendered to assist the Commission in carrying out this subchapter. In furtherance of such cooperative efforts, the Commission may enter into written agreements with such State or local agencies and such agreements may include provisions under which the Commission shall refrain from processing a charge in any cases or class of cases specified in such agreements or under which the Commission shall relieve any person or class of persons in such State or locality from requirements imposed under this section. The Commission shall rescind any such agreement whenever it determines that the agreement no longer serves the interest of effective enforcement of this subchapter.

(c) Execution, retention, and preservation of records; reports to Commission; training program records; appropriate relief from regulation or order for undue hardship; procedure for exemption; judicial action to compel compliance

Every employer, employment agency, and labor organization subject to this subchapter shall (1) make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, (2) preserve such records for such periods, and (3) make such reports there from as the Commission shall prescribe by regulation or order, after public hearing, as reasonable, necessary, or appropriate for the

enforcement of this subchapter or the regulations or orders thereunder. The
Commission shall, by regulation, require each employer, labor organization,
and joint labor-management committee subject to this subchapter which
controls an apprenticeship or other training program to maintain such records
as are reasonably necessary to carry out the purposes of this subchapter,
including, but not limited to, a list of applicants who wish to participate in such
program, including the chronological order in which applications were
received, and to furnish to the Commission upon request, a detailed
description of the manner in which persons are selected to participate in the
apprenticeship or other training program. Any employer, employment agency,
labor organization, or joint labor-management committee which believes that
the application to it of any regulation or order issued under this section would
result in undue hardship may apply to the Commission for an exemption from
the application of such regulation or order, and, if such application for an
exemption is denied, bring a civil action in the United States district court for
the district where such records are kept. If the Commission or the court, as the
case may be, finds that the application of the regulation or order to the
employer, employment agency, or labor organization in question would impose
an undue hardship, the Commission or the court, as the case may be, may
grant appropriate relief. If any person required to comply with the provisions of
this subsection fails or refuses to do so, the United States district court for the
district in which such person is found, resides, or transacts business, shall,
upon application of the Commission, or the Attorney General in a case
involving a government, governmental agency or political subdivision, have
jurisdiction to issue to such person an order requiring him to comply.

(d) Consultation and coordination between Commission and interested State
and Federal agencies in prescribing recordkeeping and reporting requirements;
availability of information furnished pursuant to recordkeeping and reporting
requirements; conditions on availability

In prescribing requirements pursuant to subsection (c) of this section, the
Commission shall consult with other interested State and Federal agencies and
shall endeavor to coordinate its requirements with those adopted by such
agencies. The Commission shall furnish upon request and without cost to any
State or local agency charged with the administration of a fair employment
practice law information obtained pursuant to subsection (c) of this section
from any employer, employment agency, labor organization, or joint labor--
management committee subject to the jurisdiction of such agency. Such
information shall be furnished on condition that it not be made public by the
recipient agency prior to the institution of a proceeding under State or local law
involving such information. If this condition is violated by a recipient agency,
the Commission may decline to honor subsequent requests pursuant to this
subsection.

(e) Prohibited disclosures; penalties

It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information. Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than one year.

# CONDUCT OF HEARINGS AND INVESTIGATIONS PURSUANT TO SECTION 161 OF Title 29

SEC. 2000e-9. *[Section 710]*

For the purpose of all hearings and investigations conducted by the Commission or its duly authorized agents or agencies, section 161 of Title 29 *[section 11 of the National Labor Relations Act]* shall apply.

# POSTING OF NOTICES; PENALTIES

SEC. 2000e-10. *[Section 711]*

(a) Every employer, employment agency, and labor organization, as the case may be, shall post and keep posted in conspicuous places upon its premises where notices to employees, applicants for employment, and members are customarily posted a notice to be prepared or approved by the Commission setting forth excerpts from or, summaries of, the pertinent provisions of this subchapter and information pertinent to the filing of a complaint.

(b) A willful violation of this section shall be punishable by a fine of not more than $100 for each separate offense.

# VETERANS' SPECIAL RIGHTS OR PREFERENCE

SEC. 2000e-11. *[Section 712]*

Nothing contained in this subchapter shall be construed to repeal or modify

any Federal, State, territorial, or local law creating special rights or preference for veterans.

# REGULATIONS; CONFORMITY OF REGULATIONS WITH ADMINISTRATIVE PROCEDURE PROVISIONS; RELIANCE ON INTERPRETATIONS AND INSTRUCTIONS OF COMMISSION

SEC. 2000e-12. *[Section 713]*

(a) The Commission shall have authority from time to time to issue, amend, or rescind suitable procedural regulations to carry out the provisions of this subchapter. Regulations issued under this section shall be in conformity with the standards and limitations of subchapter II of chapter 5 of Title 5 *[originally, the Administrative Procedure Act]*.

(b) In any action or proceeding based on any alleged unlawful employment practice, no person shall be subject to any liability or punishment for or on account of (1) the commission by such person of an unlawful employment practice if he pleads and proves that the act or omission complained of was in good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission, or (2) the failure of such person to publish and file any information required by any provision of this subchapter if he pleads and proves that he failed to publish and file such information in good faith, in conformity with the instructions of the Commission issued under this subchapter regarding the filing of such information. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that (A) after such act or omission, such interpretation or opinion is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect, or (B) after publishing or filing the description and annual reports, such publication or filing is determined by judicial authority not to be in conformity with the requirements of this subchapter.

# APPLICATION TO PERSONNEL OF COMMISSION OF SECTIONS 111 AND 1114 OF TITLE 18;

# PUNISHMENT FOR VIOLATION OF SECTION 1114 OF TITLE 18

SEC. 2000e-13. *[Section 714]*

The provisions of sections 111 and 1114, Title 18 *[United States Code]*, shall apply to officers, agents, and employees of the Commission in the performance of their official duties. Notwithstanding the provisions of sections 111 and 1114 of Title 18 *[United States Code]*, whoever in violation of the provisions of section 1114 of such title kills a person while engaged in or on account of the performance of his official functions under this Act shall be punished by imprisonment for any term of years or for life.

# *TRANSFER OF AUTHORITY*

*[Administration of the duties of the Equal Employment Opportunity Coordinating Council was transferred to the Equal Employment Opportunity Commission effective July 1, 1978, under the President's Reorganization Plan of 1978.]*

# EQUAL EMPLOYMENT OPPORTUNITY COORDINATING COUNCIL; ESTABLISHMENT; COMPOSITION; DUTIES; REPORT TO PRESIDENT AND CONGRESS

SEC. 2000e-14. *[Section 715]*

*[Original introductory text: There shall be established an Equal Employment Opportunity Coordinating Council (hereinafter referred to in this section as the Council) composed of the Secretary of Labor, the Chairman of the Equal*

*Employment Opportunity Commission, the Attorney General, the Chairman of the United States Civil Service Commission, and the Chairman of the United States Civil Rights Commission, or their respective delegates.]*

The Equal Employment Opportunity Commission *[originally, Council]* shall have the responsibility for developing and implementing agreements, policies and practices designed to maximize effort, promote efficiency, and eliminate conflict, competition, duplication and inconsistency among the operations, functions and jurisdictions of the various departments, agencies and branches

functions and jurisdictions of the various departments, agencies and branches
of the Federal Government responsible for the implementation and
enforcement of equal employment opportunity legislation, orders, and
policies. On or before October 1 *[originally, July 1]* of each year, the Equal
Employment Opportunity Commission *[originally, Council]* shall transmit to the
President and to the Congress a report of its activities, together with such
recommendations for legislative or administrative changes as it concludes are
desirable to further promote the purposes of this section.

# PRESIDENTIAL CONFERENCES; ACQUAINTANCE OF LEADERSHIP WITH PROVISIONS FOR EMPLOYMENT RIGHTS AND OBLIGATIONS; PLANS FOR FAIR ADMINISTRATION; MEMBERSHIP

SEC. 2000e-15. *[Section 716]*

*[Original text: (a) This title shall become effective one year after the date of its
enactment.*

*(b) Notwithstanding subsection (a), sections of this title other than sections 703,
704, 706, and 707 shall become effective immediately.*

*(c)]* The President shall, as soon as feasible after July 2, 1964 *[the date of
enactment of this title]*, convene one or more conferences for the purpose of
enabling the leaders of groups whose members will be affected by this
subchapter to become familiar with the rights afforded and obligations
imposed by its provisions, and for the purpose of making plans which will
result in the fair and effective administration of this subchapter when all of its
provisions become effective. The President shall invite the participation in such
conference or conferences of (1) the members of the President's Committee on
Equal Employment Opportunity, (2) the members of the Commission on Civil
Rights, (3) representatives of State and local agencies engaged in furthering
equal employment opportunity, (4) representatives of private agencies
engaged in furthering equal employment opportunity, and (5) representatives
of employers, labor organizations, and employment agencies who will be
subject to this subchapter.

# *TRANSFER OF AUTHORITY*

*[Enforcement of Section 717 was transferred to the Equal Employment Opportunity Commission from the Civil Service Commission (Office of Personnel Management) effective January 1, 1979 under the President's Reorganization Plan No. 1 of 1978.]*

# EMPLOYMENT BY FEDERAL GOVERNMENT

SEC. 2000e-16. *[Section 717]*

(a) Discriminatory practices prohibited; employees or applicants for employment subject to coverage

All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States)

in military departments as defined in section 102 of Title 5 *[United States Code]*, in executive agencies *[originally, other than the General Accounting Office]* as defined in section 105 of Title 5 *[United States Code]* (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Regulatory Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Printing Office, the Government Accountability Office, and the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.

(b) Equal Employment Opportunity Commission; enforcement powers; issuance of rules, regulations, etc.; annual review and approval of national and regional equal employment opportunity plans; review and evaluation of equal employment opportunity programs and publication of progress reports; consultations with interested parties; compliance with rules, regulations, etc.; contents of national and regional equal employment opportunity plans; authority of Librarian of Congress

Except as otherwise provided in this subsection, the Equal Employment Opportunity Commission *[originally, Civil Service Commission]* shall have authority to enforce the provisions of subsection (a) of this section through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section, and shall issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section. The Equal

8/14/25, 11:52 PM

Employment Opportunity Commission *[originally, Civil Service Commission]* shall-

> (1) be responsible for the annual review and approval of a national and regional equal employment opportunity plan which each department and agency and each appropriate unit referred to in subsection (a) of this section shall submit in order to maintain an affirmative program of equal employment opportunity for all such

> employees and applicants for employment;

> (2) be responsible for the review and evaluation of the operation of all agency equal employment opportunity programs, periodically obtaining and publishing (on at least a semiannual basis) progress reports from each such department, agency, or unit; and

> (3) consult with and solicit the recommendations of interested individuals, groups, and organizations relating to equal employment opportunity.

The head of each such department, agency, or unit shall comply with such rules, regulations, orders, and instructions which shall include a provision that an employee or applicant for employment shall be notified of any final action taken on any complaint of discrimination filed by him thereunder. The plan submitted by each department, agency, and unit shall include, but not be limited to-

> (1) provision for the establishment of training and education programs designed to provide a maximum opportunity for employees to advance so as to perform at their highest potential; and

> (2) a description of the qualifications in terms of training and experience relating to equal employment opportunity for the principal and operating officials of each such department, agency, or unit responsible for carrying out the equal employment opportunity program and of the allocation of personnel and resources proposed by such department, agency, or unit to carry out its equal employment opportunity program.

With respect to employment in the Library of Congress, authorities granted in this subsection to the Equal Employment Opportunity Commission *[originally, Civil Service Commission]* shall be exercised by the Librarian of Congress.

(c) Civil action by employee or applicant for employment for redress of grievances; time for bringing of action; head of department, agency, or unit as defendant

Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission *[originally, Civil Service Commission]* upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission *[originally, Civil Service Commission]* on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title *[section 706]*, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

(d) Section 2000e-5(f) through (k) of this title applicable to civil actions

The provisions of section 2000e-5(f) through (k) of this title *[section 706(f) through (k)]*, as applicable, shall govern civil actions brought hereunder, and the same interest to compensate for delay in payment shall be available as in cases involving nonpublic parties.

(e) Government agency or official not relieved of responsibility to assure nondiscrimination in employment or equal employment opportunity

Nothing contained in this Act shall relieve any Government agency or official of its or his primary responsibility to assure nondiscrimination in employment as required by the Constitution and statutes or of its or his responsibilities under Executive Order 11478 relating to equal employment opportunity in the Federal Government.

(f) Section 2000e-5(e)(3) *[Section 706(e)(3)]* shall apply to complaints of

discrimination in compensation under this section.

# PROCEDURE FOR DENIAL, WITHHOLDING, TERMINATION, OR SUSPENSION OF GOVERNMENT CONTRACT SUBSEQUENT TO ACCEPTANCE BY GOVERNMENT

# OF AFFIRMATIVE ACTION PLAN OF EMPLOYER; TIME OF ACCEPTANCE OF PLAN

SEC. 2000e-17. *[Section 718]*

No Government contract, or portion thereof, with any employer, shall be denied, withheld, terminated, or suspended, by any agency or officer of the United States under any equal employment opportunity law or order, where such employer has an affirmative action plan which has previously been accepted by the Government for the same facility within the past twelve months without first according such employer full hearing and adjudication under the provisions of section 554 of Title 5 *[United States Code]*, and the following pertinent sections: Provided, That if such employer has deviated substantially from such previously agreed to affirmative action plan, this section shall not apply: Provided further, That for the purposes of this section an affirmative action plan shall be deemed to have been accepted by the Government at the time the appropriate compliance agency has accepted such plan unless within forty-five days thereafter the Office of Federal Contract Compliance has disapproved such plan.